NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| NUCOR TUBULAR PRODUCTS INC.,<br><br>          **Plaintiff,**<br><br>    v.<br><br>UNITED STATES,<br><br>          **Defendant,**<br><br>    and<br><br>PRODUCTOS LAMINADOS DE MONTERREY S.A. DE C.V., PROLAMSA, INC., and MAQUILACERO S.A. DE C.V.,<br><br>          **Defendant-Intervenors.** |

**Before:  Hon. Jennifer Choe-Groves, Judge**

**Court No. 21-00543**

<u>**NON-CONFIDENTIAL VERSION**</u>

**Business Proprietary Information Removed from Pages 3, 7-9, 16, 17, 24 and Exhibits 1-2**

<u>**PLAINTIFF NUCOR TUBULAR PRODUCTS INC.'S MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff Nucor Tubular Products Inc.*

Dated: February 14, 2022

Ct. No. 21-00543                                          NON-CONFIDENTIAL VERSION

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  RULE 56.2 STATEMENT ................................................................................. 2

    A.  Administrative Decision under Review .................................................... 2

    B.  Issues Presented ....................................................................................... 3

III.  STATEMENT OF FACTS ................................................................................. 4

    A.  Sales Below Cost Errors in Maquilacero's Calculations. ....................... 6

    B.  Currency Conversions Errors in Prolamsa's Calculations .................... 10

IV.  STANDARD OF REVIEW .............................................................................. 13

V.  ARGUMENT .................................................................................................... 15

    A.  Commerce Did Not Properly Conduct the Sales-Below-Cost Test
        for Maquilacero .................................................................................... 16

    B.  Commerce Did Not Explain its Change in Methodology and Failed
        to Calculate Prolamsa's Margin in U.S. Dollars ................................. 18

    C.  Commerce Inappropriately Failed to Consider Nucor Tubular's
        Ministerial Error Comments ................................................................. 20

VI.  CONCLUSION ................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATC Tires Priv. Ltd. v. United States*,
  324 F. Supp. 3d 1355 (Ct. Int'l Trade 2018) ..........................................................15

*Baroque Timber Indus. (Zongshan) Co. v. United States*,
  971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) .....................................13, 15, 17, 25

*Carbon Activated Tianjin Co. v. United States*,
  503 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) .................................................13, 18

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007).............................................................................23

*CS Wind Viet. Co. v. United States*,
  832 F.3d 1367 (Fed. Cir. 2016)....................................................................13, 14, 21

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)...............................................................................................21

*Jacobi Carbons AB v. United States*,
  992 F. Supp. 2d 1360 (Ct. Int'l Trade 2014), *aff'd*, 619 F. App'x 992 (Fed.
  Cir. 2015) .............................................................................................................23

*Jiaxing Brother Fastener Co. v. United States*,
  380 F. Supp. 3d 1343 (Ct. Int'l Trade 2019) .................................................14, 25

*Koyo Seiko Co. v. United States*,
  26 CIT 170, 186 F. Supp. 2d 1332 (2002) .............................................14, 16, 19

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)..........................................................................................14, 21

*Nippon Steel Corp. v. United States*,
  458 F.3d 1345 (Fed. Cir. 2006).............................................................................14

*Qingdao Taifa Grp. Co. v. United States*,
  33 CIT 1090, 637 F. Supp. 2d 1231 (2009), *aff'd*, 467 F. App'x 887 (Fed. Cir.
  2012) ................................................................................................................23, 24

*QVD Food Co. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011)..............................................................................22

*Rhone Poulenc, Inc. v. United States,*
    899 F.2d 1185 (Fed. Cir. 1990)...............................................................15

*Shanghai Foreign Trade Enters. Co. v. United States,*
    28 CIT 480, 318 F. Supp. 2d 1339 (2004) ..............................................13

*SKF USA Inc. v. United States,*
    263 F.3d 1369 (Fed. Cir. 2001)...............................................................14

*Torrington Co. v. United States,*
    82 F.3d 1039 (Fed. Cir. 1996)...........................................................14, 25

*U.S. Steel Corp. v. United States,*
    953 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) .....................................14, 25

*Virej Grp., Ltd. v. United States,*
    26 CIT 585, 206 F. Supp. 2d 1340 (2002) ........................................15, 18

*Yantai Oriental Juice Co. v. United States,*
    26 CIT 605 (2002) ...................................................................................13

*Zhaoqing Tifo New Fibre Co. v. United States,*
    60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) ...........................................22

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..........................................................................13

19 U.S.C. § 1673d(e) ......................................................................................21

19 U.S.C. § 1677b-1 .....................................................................................1, 3

19 U.S.C. § 1677b-1(a).....................................................................16, 18, 19

19 U.S.C. § 1677b(b)(1) .............................................................................1, 3, 7

**Regulations**

19 C.F.R. § 351.224 ......................................................................................21

19 C.F.R. § 351.224(c) ..................................................................................21

19 C.F.R. § 351.224(c)(1) ..............................................................................22

19 C.F.R. § 351.224(e)..........................................................................21, 22, 25

19 C.F.R. § 351.224(f) ..................................................................................21

## I.  <u>INTRODUCTION</u>

The U.S. Department of Commerce's ("Commerce") calculations in the underlying review contained errors that resulted in an erroneous 0% dumping margin as to both Maquilacero S.A. de C.V. ("Maquilacero") and Productos Laminados de Monterrey S.A. de C.V. ("Prolamsa", and together with Maquilacero, the "Respondents").  Both sets of errors occurred in the build-up of normal value, the benchmark against which U.S. sales are compared to calculate the dumping margin.  In the calculations of Maquilacero's margin, Commerce included in normal value sales that were made below cost, contrary 19 U.S.C. § 1677b(b)(1) and Commerce's standard practice. In the calculations of Prolamsa's dumping margin, Commerce made an unexplained change to its calculations, and in doing so, failed to accurately convert a key variable from pesos to dollars, in violation of 19 U.S.C. § 1677b-1.  Commerce essentially applied the exchange rate twice, reducing normal value significantly.

When confronted with these errors, Commerce refused to make the appropriate adjustments on the basis that the errors should have been raised in the administrative case brief as a response to the preliminary results but were not raised.  Commerce is wrong.  Only the error as to Maquilacero was arguably in the preliminary results.  Nucor Tubular Products Inc. ("Nucor Tubular") proposed a correction to the error in its case brief.  In the final results, Commerce acknowledged the error, but attempted to implement a different solution.  Commerce's supposed solution both introduced new problems and exasperated the ill-effect of the existing error. Similarly, changes to Prolamsa's calculations were introduced in the final results through amendments to the preliminary calculations after briefing had been concluded.  Nucor Tubular's first opportunity to address the errors in their final form was after the final results through ministerial error comments, which Nucor Tubular submitted in accordance with the regulations.

To date, Commerce, Prolamsa and Maquilacero have not disputed that errors in the calculations exist. These errors erroneously reduced each of the Respondents' weighted-average dumping margin to zero.

Because Commerce's final results contained material errors and Commerce refused to adjust the errors, this Court should remand the final results to Commerce with instructions to correct the errors.

## II.      RULE 56.2 STATEMENT

### A.      Administrative Decision under Review

The administrative determination challenged herein is Commerce's final results in the third administrative review of the antidumping duty order on *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico*, 86 Fed. Reg. 41,448 (Dep't Commerce Aug. 2, 2021) (final results of antidumping duty admin. rev.; 2018-2019), P.R. 252 ("*Final Results*"). The calculations upon which the determination was made are recorded in the agency's calculation memoranda. Commerce Memorandum, re: *Final Results Margin Calculation for Maquilacero S.A. de C.V.* (July 22, 2021), C.R. 381, P.R. 245 ("Maquilacero Final Calculation Memo"), Commerce Memorandum, re: *Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.* (July 22, 2021), C.R. 391, P.R. 250 ("Prolamsa Final Calculation Memo"). The final results were left unamended after Nucor Tubular's ministerial error comments. Commerce Memorandum, re: *Ministerial Error Allegations* (Aug. 20, 2021) at 1-6, P.R. 259 ("Ministerial Error Memo").

**Business Proprietary Information Has Been Deleted**

B.   **Issues Presented**

1.   Whether the *Final Results* are unsupported by substantial evidence or otherwise not in accordance with law where Commerce failed to disregard certain sales made below cost, contrary to 19 U.S.C. § 1677b(b)(1) and Commerce's standard practice.

Yes.  The *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law because Commerce failed to properly calculate costs for the sales-below-cost test.  Specifically, Commerce included [          ] costs as part of an average for the cost recovery benchmark, which is a part of the sales-below-cost test.  As a result, sales made below Maquilacero's costs were erroneously included in normal value, which in turn cause Maquilacero to receive a 0.00% margin for the period of review ("POR").

2.   Whether the *Final Results* are unsupported by substantial evidence or otherwise not in accordance with law where Commerce did not explain its changes and incorrectly converted currency pursuant to 19 U.S.C. § 1677b-1.

Yes.  The *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law because Commerce failed to describe and justify its changes to a currency calculation.  In its changes, Commerce failed to accurately convert calculations to dollars, as required by 19 U.S.C. § 1677b-1.  Specifically, in its build up to normal value, Commerce calculated a key variable using both pesos and dollars.  Commerce later applied the currency conversion ratio to essentially convert the variable into dollars twice.  As a result, normal value was calculated at fraction of the correct value.  As a result, Prolamsa erroneously received a 0.00% margin for the POR.

3.   Whether Commerce was justified in rejecting Nucor Tubular's ministerial error comments and refusing to amend the calculation errors within the *Final Results.*

No.  Commerce's mistakenly rejected Nucor Tubular's ministerial error comments on the grounds that Nucor Tubular failed to properly raise the errors in its case brief.  Commerce is

mistaken for two reasons.  First, Nucor Tubular's case brief did raise the cost error that was present in Maquilacero's preliminary results; Nucor Tubular also suggested a correction.  In the *Final Results*, Commerce acknowledged the error from the preliminary results but implemented only a half-solution, which exacerbated the existing error raised by Nucor Tubular in its case brief. Commerce also introduced the currency conversion error after briefing was completed. Commerce's half-solution and currency conversion error did not exist before the *Final Results*. Therefore, it was impossible for Nucor Tubular to raise the errors in its case brief.  Thus, Commerce should have considered Nucor Tubular's ministerial error comments and made the appropriate corrections.

III.   **STATEMENT OF FACTS**

The underlying review proceeded as a standard administrative review at Commerce.  On November 12, 2019, Commerce initiated the review.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 61,011, 61,013 (Dep't Commerce Nov. 12, 2019), P.R. 12.  Commerce selected Prolamsa and Maquilacero as mandatory respondents. Commerce Memorandum, re: *Respondent Selection* (Dec. 19, 2019) at 1, C.R. 5, P.R. 21.  On January 15, 2021, using data provided by Respondents, Commerce reached its preliminary results and later disclosed calculations in support of the preliminary results.  *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 86 Fed. Reg. 7,067 (Dep't Commerce Jan. 26, 2021) (prelim results of antidumping duty admin. rev.; 2018-2019), P.R. 198 ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum, P.R. 191 ("Preliminary Decision Memorandum"). Commerce Memorandum, re: *Preliminary Results Margin Calculation for Maquilacero S.A. de C.V.* (Jan. 15, 2021), C.R. 301, P.R. 192 ("Maquilacero Preliminary Calculation Memo"); Commerce Memorandum, re: *Preliminary Results Sales Calculations for*

*Productos Laminados de Monterrey S.A. de C.V.* (Jan. 15, 2021), C.R. 304, P.R. 196 ("Prolamsa Preliminary Calculation Memo"). Commerce Memorandum, re: *Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Results – Maquilacero S.A. de C.V.* (Jan. 15, 2021), C.R. 309, P.R. 197. On March 9, 2021, Maquilacero and Nucor Tubular each submitted a case brief. Letter from Arent Fox LLP to Sec'y Commerce, re: *Maquilacero S.A. de C.V.'s Case Brief* (Mar. 8, 2021) at 1, C.R. 374, P.R. 230; Letter from Wiley Rein LLP to Sec'y Commerce, re: *Case Brief* (Mar. 8, 2021) at 1, C.R. 375-376, P.R. 231 ("Nucor Tubular's Case Brief"). On March 17, 2021, each party filed a rebuttal brief. Letter from White & Case LLP to Sec'y Commerce, re: *Rebuttal Brief* (Mar. 17, 2021) at 1, C.R. 377, P.R. 235; Letter from Arent Fox LLP to Sec'y Commerce, re: *Maquilacero S.A. de C.V.'s Rebuttal Brief* (Mar. 17, 2021) at 1, C.R. 378-379, P.R. 236 ("Maquilacero's Rebuttal Brief"); Letter from Wiley Rein LLP to Sec'y Commerce, re: *Rebuttal Brief* (Mar. 17, 2021) at 1, C.R. 380, P.R. 237. Commerce reached its final results on July 22, 2021, and again disclosed its calculation methodologies. *Final Results*, 86 Fed. Reg. at 41,448; Maquilacero Final Calculation Memo, Prolamsa Final Calculation Memo; Commerce Memorandum, re: *Cost of Production and Constructed Value Calculation Adjustments for the Final Results – Maquilacero S.A de C.V.* (July 22, 2021), C.R. 382, P.R. 246.

On August 3, 2021, Nucor Tubular filed ministerial error comments affecting the calculations for both Prolamsa and Maquilacero within the deadline specified by the regulations. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Ministerial Error Comments* (Aug. 2, 2021) at 1-7, C.R. 392, P.R. 253 ("Nucor Tubular's Ministerial Error Comments"). Prolamsa and Maquilacero filed rebuttal comments. Letter from White & Case LLP to Sec'y Commerce, re: *Response to Ministerial Error Comments* (Aug. 6, 2021) at 1-4, C.R. 393, P.R. 256 ("Prolamsa's Ministerial Error Response"); Letter from Arent Fox LLP to Sec'y Commerce, re: *Maquilacero*

*S.A. de C.V.'s Reply to Ministerial Error Comments for the Final Results* (Aug. 9, 2021) at 1-8,

C.R. 394, P.R. 257 ("Maquilacero's Ministerial Error Response"). Prolamsa essentially conceded

that the currency conversion error existed in final determination, but proposed an alternative

solution – a solution to which Nucor Tubular has no objection. Maquilacero similarly did not

contest the substance of the ministerial error. Maquilacero's Ministerial Error Response at 1-8.

On August 20, 2021, Commerce rejected Nucor Tubular's ministerial error comments on

the erroneous basis that the alleged errors were available in the preliminary results, not raised in

Nucor Tubular's case brief and unchanged in the final. While Commerce did not dispute the errors

in the calculations, Commerce did find Nucor Tubular's comments to be untimely. Ministerial

Error Memo at 3-4.

Commerce is incorrect. With regard to Maquilacero, Nucor Tubular raised the issue in its

case brief and offered a simple solution. While Commerce acknowledged the error, Commerce

attempted to implement an alternative solution, yet Commerce failed to fully execute its chosen

solution, which exacerbated the existing problem. With regards to Prolamsa, the currency

conversion error first appeared in the final results and was an unexplained change from the

*Preliminary Results*. It was therefore impossible for Nucor Tubular to fully raise the errors because

the errors were first introduced in the calculations for the *Final Results*, as explained in further

detail below.

A.     <u>**Sales Below Cost Errors in Maquilacero's Calculations**</u>

Commerce erred in calculating normal value for Maquilacero. The error in Maquilacero's

calculations was a depression of the cost recovery benchmark. This benchmark is used to

determine whether a home market sale was made above cost, and therefore is to be included in

normal value. As a consequence of this error, Maquilacero's normal value was inappropriately

depressed because lower-value sales that would otherwise have failed the cost test were erroneously included in normal value.

In a period of significant cost volatility, Commerce utilizes a quarterly cost analysis rather than an annual cost analysis. If for some reason, costs are not reported for a specific quarter where sales are reported, Commerce will construct costs for the relevant quarter.

The quarterly cost analysis includes a sales-below-cost test. This test uses two benchmarks: the weighted-average cost by quarter (not relevant to this case), and the cost recovery benchmark. The cost recovery benchmark is an average of all quarterly costs that are available to the computer program and is designed to evaluate whether a respondent was able to fully recover costs between periods where there are significant swings in costs. Constructed costs are incorporated into the calculation of the cost recovery benchmark.

Commerce compares each home market sale to both benchmarks. Pursuant to 19 U.S.C. § 1677b(b)(1), Commerce disregards home market sales that are less than both benchmarks and uses the remaining sales to calculate normal value. Therefore, an artificially low cost recovery benchmark reduces normal value by including home market sales that should have been disregarded in the calculation of normal value.

Here, Commerce found its quarterly methodology was appropriate for calculating Maquilacero's costs. Preliminary Decision Memorandum at 19, *unchanged in* Issues and Decision Memorandum accompanying *Final Results* at 10-11, P.R. 243 ("Issues and Decisions Memo"). [                                                                          ] Commerce specifically asked Maquilacero to report sales that were made prior to the POR but entered the United States during the POR, [

        ].  Letter from Arent Fox LLP to Sec'y Commerce, re: *Maquilacero S.A. de C.V.'s Third*

*Supplemental Section D Questionnaire Response* (June 19, 2020) at 2-3, C.R. 175-179, P.R. 129.

Maquilacero [                                        ].  As a result, Commerce [

                        ].  However, the [                    ] were based on arbitrary numbers

that had no relationship to Maquilacero's experience in the POR. Maquilacero Preliminary

Calculation Memo at Attachment I, lines 8937-8944.   Those arbitrary numbers were then

incorporated into the cost recovery benchmark. As a result, home market sales that should have

been disregarded were nevertheless used to calculate normal value. This result occurred

independent from and despite Commerce disregarding the sales [

                                        ].

        Nucor Tubular's case brief explicitly stated that Commerce used arbitrary values for the

[                    ] and argued Commerce should instead use costs based on Maquilacero's actual

experience.  Nucor Tubular's Case Brief at 49-52.  Maquilacero fundamentally agreed with Nucor

Tubular's proposition, but only disagreed as to the values that reflected Maquilacero's experience.

Maquilacero's Rebuttal Brief at 3-6.  Regardless of whether the values used came from Nucor

Tubular's case brief or Maquilacero's rebuttal brief, the proposed solution would ensure that the

cost recovery test used an appropriate benchmark based on Maquilacero's experience and not

arbitrary values that inappropriately depressed cost.

        In the *Final Results*, Commerce conceded that the preliminary determination incorrectly

used arbitrary values "rather than using Maquilacero's reported quarterly {costs}, in certain

instances" but incorrectly claimed the values did not affect the margin calculations. Issues and

Decisions Memo at 10-11 n.51. Rather than using Maquilacero's costs, as both Nucor Tubular and

Maquilacero advocated, Commerce chose a different path.  Commerce instructed the computer

program to ignore the cost [                    ] values. *Id.* at 11.

While Commerce had removed these arbitrary costs, it did not also address the issue in the cost recovery test. The programing language in that test continued to compare the relative degree of cost recovery for each period where there were sales. For the beginning of the POR, where there were sales that entered the United States whose costs were generated prior to the POR, rather than use either Maquilacero's actual costs as proposed by either Nucor Tubular or Maquilacero, by instructing the program to ignore these costs, it had the effect of [

                              ], further depressing the cost recovery test benchmark. In doing so, Commerce's exacerbated the problem that existed in the preliminary determination. Had Commerce used Nucor's Tubular's proposed solution, the cost recovery benchmark would be the result of appropriate cost averages.

Nucor Tubular filed ministerial error comments to demonstrate that Commerce's modified language introduced a new error into the calculation and did not result in correct cost calculation. . Specifically, Nucor Tubular proposed adding minimal coding language to limit the quarterly costs calculations to the quarters within the POR. Nucor Tubular's Ministerial Error Comments at 2-6. This change would limit the cost recovery benchmark to only the quarters within the POR, thereby completing Commerce's stated intent. Maquilacero filed rebuttal comments that did not dispute the error; rather Maquilacero argued incorrectly that Nucor Tubular's comments were untimely. Maquilacero's Ministerial Error Response at 2-7. Commerce erroneously agreed with Maquilacero and failed to consider Nucor Tubular's ministerial error comments or amend the *Final Results*. Ministerial Error Memo at 1.

**B.    Currency Conversions Errors in Prolamsa's Calculations**

Similar to Commerce's calculations of Maquilacero's data, Commerce erred in calculating normal value for Prolamsa.  In requesting sales data in its standard questionnaire, Commerce instructs respondents to report expenses in the currency in which they are incurred. Consistent with these instructions, in reporting information on its home market prices, Promlamsa reported some variables in pesos, some in dollars, and some in both pesos and dollars. As a result, in the preliminary determination, Commerce took steps to convert the variables reported in USD to pesos in order to attempt to calculate a home market net price in pesos.  Prolamsa Preliminary Calculation Memo at Attachment II, lines 9604-9645.   Excerpts of Prolamsa's preliminary calculation memorandum are provided in **Exhibit 1-A**. The home market net price is the primary component of normal value; normal value is the benchmark against which U.S. sales are compared to determine the dumping margin.  Commerce's coding confirms as much, showing in lines 9604-9645 a clear intent to calculate the home market net price in Mexican pesos. The home market net price ("HMNETPRI") calculation is disclosed in rows 9644-9645 and is the sum of a number of specific data points.[1]  In lines 9605-9639, Commerce attempts to convert those data points into pesos.[2]  Commerce even noted that two variables had already been "reported in MXN pesos, {so} no editing needed."  Prolamsa Preliminary Calculation Memo at Attachment II, line 9642. Thus, by the time the program reached the home market net price calculation in the preliminary results, all the relevant data were supposed to be denominated in pesos.

In the final results, Commerce, without sufficient explanation, changed course and decided to calculate the home market net price in dollars.  Commerce stated "We revised the programming

---

[1]      The calculation is HMNETPRI = HMGUP + H - HMDISREB – HMMOVE - HMCRED - HMDSELL - HMCOMM - HMPACK.

language in the ME macros and margin calculation programs to refine the methodology for

calculating normal value (NV) where the comparison market data is reporting in two or more

currencies" Prolamsa Final Calculation Memo at 2; *See also* Prolamsa Final Calculation Memo at

Attachment II, line 9685 and Attachment IV (denoting "{c}onvert everything into USD").

Relevant excerpts of Prolamsa's Final Calculation Memo are provided in **Exhibits 2-A and 3**.

Accordingly, Commerce instructed the computer program to ignore the language converting data

into pesos from the preliminary results,[3] and inserted new instructions to calculate the same data

in dollars.  Most of the new calculations were done correctly.  In other words, in most cases,

Commerce correctly instructed its program to multiply relevant data points by the exchange rate.

But Commerce failed to convert at least one variable: home market packing expenses

("HMPACK").  Prolamsa Final Calculation Memo at Attachment II, line 9724 ("HMPACK are

---

[2]     For example, lines 9605 to 9607 address the home market gross unit price ("HMGUP") and attempt to put all home market gross unit prices in the basis of pesos.

The calculation is IF (HMGUP_MXN NE 0) AND (HMGUP_USD NE 0) THEN HMGUP = (HMGUP_MXN + (HMGUP_USD / EXRATE_MEXICO)) / 2; ELSE HMGUP = HMGUP_MXN + (HMGUP_USD / EXRATE_MEXICO); - HMDISREB − HMMOVE - HMCRED - HMDSELL - HMCOMM - HMPACK.

Gross unit prices are originally reported in pesos. The "_USD" suffix references instances where certain home market gross unit prices are denominated in U.S. dollars ("USD"). Commerce attempted to convert the instances of the home market gross unit prices in USD to pesos by dividing by the variable "EXRATE_MEXICO," which indicates the exchange rate of USD to Mexican pesos. Similar calculations for most other variables in the home market net price are similarly calculated. *See* Prolamsa Preliminary Calculation Memo at Attachment II, lines 9609-9639, excerpts provided as **Exhibit 1-A**. This method of conversion to pesos is flawed for other reasons not relevant to this case.

[3]     On line 9580, Commerce initiated a macro called "ignore3" and ended the macro on line 9675 with the instruction "%mend ignore3"  Due to this addition, everything between 9580 and 9675 is ignored by the program. The preliminary determination instruction for converting the variables that are used for the home market net price are within these lines of code. These additions are highlighted in Prolamsa's Final Calculation Memo at Attachment IV, which is provided as **Exhibit 3** for the Court's convenience.

reported in MXN pesos"). As a result, the calculated home market net price was inaccurate because it was the sum of data denominated in multiple currencies.

Later in the margin calculation program, Commerce's change of approach resulted in another error related to the foreign unit price in dollars, or "FUPDOL." The main component of the foreign unit price in dollars is the home market net price; the foreign unit price in dollars is one step closer to the normal value benchmark. In its calculation of the foreign unit price in dollars, Commerce multiplied the home market net price by the currency ratio.[4] Prolamsa Final Calculation Memo at Attachment II, line 10030, relevant excerpt provided as **Exhibit 2-B**. However, the home market net price was already in dollars due to the previously described changes. Therefore, the foreign unit price in dollars (and therefore normal value) was significantly reduced to a fraction of its actual value. It appears that when Commerce changed course and switched methodologies from calculating the home market net price from pesos to dollars it failed to update this second conversion which is unnecessary if the home market net price was already in dollars. *Compare* **Exhibit 2-B**, Prolamsa Final Calculation Memo, "Foreign Unit Price in Dollars" (excerpt of Attachment II), *with* **Exhibit 1-B**, Prolamsa Preliminary Calculation Memo, "Foreign Unit Price in Dollars" (excerpt of Attachment II).

After these calculations were disclosed, Nucor Tubular filed ministerial error comments to address the mixed currencies in the home market net price calculation, and the double currency conversion in the foreign unit price in dollars calculation. Nucor Tubular's Ministerial Error Comments at 1-7. Prolamsa filed rebuttal comments that fundamentally agreed with Nucor

---

[4] The formula for the foreign unit price in dollars (FUPDOL). was "FUPDOL = ((HMNETPRI - DIFMER + LOTADJMT) * &XRATE1) + USPACK&SUFFIX;" &XRATE1 is the same as "EXRATE_MEXICO" and therefore is another expression for the dollars to pesos ratio. *See* Prolamsa Final Calculation Memo at Attachment II, "Execution Log", below line 9502 ("Macro variable XRATE1 resolves to EXRATE_MEXICO").

Tubular's allegations that the calculations for both the home market net price and foreign unit price in dollars contained errors.  Prolamsa proposed alternative methodology for correcting the errors. Prolamsa's Ministerial Error Response at 3-4.  Nucor Tubular has no objection to Prolamsa's proposed corrections.  Nevertheless, Commerce erroneously found Nucor Tubular's comments to be untimely, and failed to amend the *Final Results*.  Ministerial Error Memo at 1-6.

## IV.    STANDARD OF REVIEW

The statute requires this Court to hold unlawful Commerce's determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law" 19 U.S.C. § 1516a(b)(1)(B)(i).

The substantial evidence standard requires the agency to "provide a rational connection between the facts found and the choice made" and "articulate a satisfactory explanation for its action." *Baroque Timber Indus. (Zongshan) Co. v. United States*, 971 F. Supp. 2d 1333, 1339-40 (Ct. Int'l Trade 2014) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) and *Yangzhou Besipak G.fts & Cr.fts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).  Commerce may change its position from the *Preliminary Results* to the *Final Results* but must explain "the basis for its change and that explanation must be supported by substantial evidence." *Carbon Activated Tiarjin Co. v. United States*, 503 F. Supp. 3d 1278, 1286-87 (Ct. Int'l Trade 2021) (quotations omitted).  Thus, an agency must do more than offer conclusory statements. *See, e.g.*, *Shanghai Foreign Trade Enters. Co. v. United States*, 28 CIT 480, 488, 318 F. Supp. 2d 1339, 1346 (2004) (rejecting conclusory agency explanation as inconsistent with the substantial evidence standard); *Yantai Oriental Juice Co. v. United States*, 26 CIT 605, 611 (2002) (same). The substantial evidence standard requires Commerce to consider "whatever in the record fairly detracts" from the evidence in support of Commerce's conclusions.  *CS Wind Viet. Co. v. United*

13

*States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016).  A final agency action must be remanded where the agency "fail{s} to consider an important aspect of the problem" before it.  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Where Commerce errs in implementing changes to calculations between the preliminary and final determination, such a determination should be remanded for correction.  *Koyo Seiko Co. v. United States*, 26 CIT 170, 184, 186 F. Supp. 2d 1332, 1346 (2002) (remanding to Commerce to correct errors introduced to the final determination where Commerce determined to revise certain costs, but erred in implementing the changes). Overall, an agency's decision is only supported by substantial record evidence if it is reasonable. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

Furthermore, "{t}o be in accordance with law, a decision must not be arbitrary and capricious . . . and must be supported by substantial evidence and reasoned explanations." *U.S. Steel Corp. v. United States*, 953 F. Supp. 2d 1332, 1336 (Ct. Int'l Trade 2013) (citing *State Farm*, 463 U.S. at 41-43). A determination is considered arbitrary and capricious where the agency "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Jiaxing Brother Fastener Co. v. United States*, 380 F. Supp. 3d 1343, 1356 (Ct. Int'l Trade 2019) (quoting *State Farm*, 463 U.S. at 43).  An agency determination that is grounded in evidentiary or legal sources that are inadequate to support the conclusions is not in accordance with law.  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1378, 1382-83 (Fed. Cir. 2001). Moreover, a determination is not in accordance with law where Commerce failed to follow its own regulations.  *Torrington Co. v. United States*, 82 F.3d 1039, 1049 (Fed. Cir. 1996) (citing *Fort*

*Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990) ("It is a familiar rule of administrative law that an agency must abide by its own regulations.")).

## V.    **ARGUMENT**

Commerce has a basic obligation to determine antidumping duty margins as accurately as possible. *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Where the court is not persuaded that Commerce's calculations reach accurate dumping margins, the court should remand to Commerce for correction. *See, e.g., Virc̦j Gɪp., Ltd. v. United States*, 26 CIT 585, 588, 206 F. Supp. 2d 1340, 1343 (2002). Furthermore, this Court has an independent obligation to "exercise its discretion to prevent knowingly affirming a determination with errors." *ATC Tires Priv. Ltd. v. United States*, 324 F. Supp. 3d 1355, 1362 (Ct. Int'l Trade 2018) (quotations and citations omitted).

Here, the *Final Results* are unsupported by substantial evidence and not in accordance with law because the *Final Results* are based on flawed calculations that are mathematically incorrect and inconsistent with Commerce's statutory obligations and standard practice. Not only are the calculations in violation of Commerce's obligation to accurately calculate dumping margins, but also the errors sever any plausible "rational connection between the facts found and the choice made." *Baroque Timber*, 971 F. Supp. 2d at 1339.

Furthermore, Commerce's failure to consider Nucor Tubular's ministerial error was a violation of Commerce's regulations. Indeed, the basic facts and development of the proceeding contradict Commerce's offered explanation. Moreover, Commerce failed to provide anything more than conclusory statements in support of its determination to reject the ministerial errors. Therefore, this Court should remand the *Final Results* to Commerce with instructions to correct the errors.

### A.   Commerce Did Not Properly Conduct the Sales-Below-Cost Test for Maquilacero

As its standard practice, and consistent with the statute, Commerce disregards home market sales made below cost when calculating normal value. 19 U.S.C. § 1677b-1(a). Under a quarterly cost analysis, this test is conducted by comparing each home market sale against a cost recovery benchmark, *i.e.*, the average of all quarterly costs available to the program. The cost recovery benchmark is designed to evaluate whether a respondent was able to fully recover costs between periods where there are significant swings in costs.

The *Preliminary Results* [          ] costs for a portion of the period based on arbitrary values that had no connection to Maquilacero's experience.  In response, both Nucor Tubular's case brief and Maquilacero's rebuttal brief argued that Commerce should use costs reflective of Maquilacero's experience.  Nucor Tubular's Case Brief at 49-52; Maquilacero's Rebuttal Brief at 6.

In the *Final Results*, Commerce agreed to remove the arbitrary costs associated with sales for a portion of the period from the calculations supporting the *Final Results*, but used a methodology that was not advocated by either interested party.  Issues and Decisions Memo at 10-11.  The methodology that Commerce chose had the effect of continuing to allow these transactions with costs that were selected as arbitrary plugs to continue to affect the cost recovery test.  As such, the chosen methodology cannot be supported by substantial evidence and otherwise in accordance with law where Commerce's methodology creates a scenario that recognizes the error but does not fix it despite a stated desire to fix it.  *Koyo Seiko*, 26 CIT at 184, 186 F. Supp. 2d at 1346 (remanding to Commerce to correct errors introduced to the final determination where Commerce determined to revise certain costs, but erred in implementing the changes).  Commerce stated explicitly that it did not want to include the transactions with arbitrary costs plugs in its analysis

but chose a methodology that continued to maintain the distortion these transactions have on the test itself.  As such there is no "rational connection between the facts found and the choice made" nor is there a satisfactory explanation for Commerce's action. *See Baroque Timber*, 971 F. Supp. 2d at 1339-40 (quoting *Burlington Truck Lines*, 371 U.S. at 168 and *Yangzhou Besipak*, 716 F.3d at 1378).

Here, Commerce's chosen methodology was an incomplete fix and exacerbated the problem.  While Commerce did remove the arbitrary values from the calculation, it did not stop the cost [          ] programming.  Because Commerce instructed Maquilacero to report sales entered but not sold during the POR, Commerce's program attempted to [          ] the costs. Thus, when the program looked for values to input, the program used [     ] costs, which is even less accurate than the arbitrary costs in the preliminary results (which Commerce already acknowledged were incorrect).  Issues and Decisions Memo at 10. Those [     ] costs were included in the cost recovery benchmark, which distorted the calculation and resulted in an inaccurate margin.

Commerce failed to implement a methodology that adequately addressed the cost [          ] issue.  While Commerce was free to choose a methodology to address the errors, Commerce is not free to choose a methodology that that undermines the very reason Commerce determined it was necessary to make the change in the first place. The resulting distortion caused by either not also correcting the cost [          ] program or using Maquilacero's actual costs as advocated by both Nucor Tubular and Maquilacero sever any plausible rational connection between Commerce's *Final Results* and the calculations upon which those results are based.  *See Baroque Timber*, 971 F. Supp. 2d at 1339.  Commerce's claim that the arbitrary values did not alter the margin calculations is both a conclusory statement, and factually wrong.  The arbitrary

values decreased the cost recovery benchmark, which permitted lower value sales to artificially and incorrectly decrease normal value. Commerce's statement, however, implicitly acknowledges that if the transactions with arbitrary values did alter the margin calculation, which it clearly does, that its final decision cannot be supported by substantial record evidence because there is no rational connection between the Final Results and the calculation on which it is based. This Court should not affirm a determination with material errors resulting in no connection between the conclusion drawn and the calculation itself. *Viraj Grp.*, 26 CIT at 588, 206 F. Supp. 2d at 1343.

**B.     Commerce Did Not Explain its Change in Methodology and Failed to Calculate Prolamsa's Margin in U.S. Dollars**

The statute requires Commerce to accurately "convert foreign currencies into United States dollars" in antidumping proceedings. 19 U.S.C. § 1677b-1(a). In its *Preliminary Results*, Commerce attempted to comply with this requirement by calculating each of the components of home market net price in pesos, and then converting to dollars in the calculation for the foreign unit price in dollars variable.

Commerce, unprompted and without any explanation in the calculation memorandum or Issues and Decision Memorandum, altered its methodology for converting to U.S. dollars. While Commerce is allowed to alter its methodology, it is required to give a reasoned explanation. *Carbon Activated Tianjin Co.*, 503 F. Supp. 3d at 1286-87 (noting that "although Commerce has the flexibility to change its position from the Preliminary Results to the Final Results, the agency must explain the basis for its change and that explanation must be supported by substantial evidence." (quotations omitted)). Commerce only provided a conclusory statement that it further refined "the methodology for calculating normal value". Because Commerce only provided a conclusory statement and not a reasoned explanation, the *Final Results* must be remanded. Commerce did not explain why it was necessary to no longer calculate each of the home market

components that comprise net home market price in pesos first and then convert the total foreign unit price to dollars.  Neither did Commerce explain why it believed it was now necessary to convert each of the home market components of net home market price to dollars first.

Not only did Commerce fail to explain its change in methodology, Commerce yet again failed to fully implement the change.  This failure results in a violation of Commerce's obligation to convert accurately "convert foreign currencies into United States dollars" in at least two respects. 19 U.S.C. § 1677b-1(a).  When calculating Prolamsa's margin, Commerce failed to comply with this provision of the statute in two respects.

First, despite intending to now convert each of the home market components into U.S. dollars, Commerce failed to convert the home market packing expenses into U.S. dollars.  Because Commerce introduced errors into the calculations in the final determination, this Court should remand to Commerce to correct the errors.  *Koyo Seiko*, 26 CIT at 184, 186 F. Supp. 2d at 1346 (remanding to Commerce to correct errors introduced to the final determination where Commerce determined to revise certain costs, but erred in implementing the changes).

In the calculations supporting the *Final Results*, Commerce attempted to calculate the home market net price in U.S. dollars and therefore undertook to convert variables reported in pesos into U.S. dollars. However, Commerce did not convert HMPACK into U.S. dollars despite acknowledging that it was reported in pesos.  Indeed, Commerce's program both states that it sought to "convert everything into USD" but also that "HMPACK {is} reported in MXN pesos, no editing needed."  Prolamsa Preliminary Calculation Memo at Attachment II, line 9642.  Other than packing expenses, all other elements of home market net price were converted to U.S. dollars. Therefore, the home market net price calculation did not comply with the statutory mandate to convert foreign currencies into U.S. dollars for antidumping calculations.  This error filtered

through all the way to the ultimate calculation of normal value. Moreover, because the home market net price was not calculated on the basis of a single currency, there is no mathematical formula that can be applied to the home market net price to correct the error; the only option is to calculate the home market net price on the basis of a single currency. Furthermore, the home market net price cannot be supported by substantial evidence because the calculation is fundamentally disconnected from the record. There is no evidence whatsoever to that supports leaving packing expenses in pesos while all other expenses are calculated in dollars as such the final home market calculation in the final results is unsupported by the record.

Second, as part of the calculation of the foreign unit price in dollars, Commerce applied a currency conversion to convert the home market net price into U.S. dollars, but home market net price was ostensibly already in U.S. dollars. Thus, when Commerce applied the currency conversion ratio, Commerce essentially "double converted" the home market net price, thereby significantly reducing its value, and ultimately normal value, to a fraction of the correct amount. These calculations are neither consistent with Commerce's obligation to accurately calculate dumping margins nor convert foreign currencies to U.S. dollars. Therefore, the *Final Results* are not in accordance with law and should be remanded to Commerce.

### C.   Commerce Inappropriately Failed to Consider Nucor Tubular's Ministerial Error Comments

Finally, by inappropriately rejecting the ministerial error comments, Commerce intentionally blinded itself to these flaws in its margin calculation and essentially acknowledged that its final determination cannot be supported by the record evidence because there is no rational connection between the record which in this case is the margin calculation itself and Commerce's stated reasoning. Had Commerce accepted the ministerial error comments and corrected these flaws, its margin calculation would have been appropriately supported by the record. Instead,

knowing that these flaws both existed and altered the margin calculation such that the results could not accurately reflect Commerce's intended rational or its statutory obligation, Commerce willfully blinded itself to correcting the problems and supporting its final determination. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2011) ("{A} willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."). Willful blindness to material errors in the *Final Results* must be remanded because Commerce failed to take into account "whatever in the record fairly detracts" from the evidence in support of the *Final Results*, *CS Wind Viet. Co*., 832 F.3d at 1373, and demonstrates Commerce "entirely failed to consider an important aspect of the problem" before it. *State Farm*, 463 U.S. at 43. At bottom, the *Final Results* are not reasonable because the *Final Results* are contaminated with errors that were introduced by Commerce, and which Commerce failed to address.

The U.S. Congress required Commerce to establish "procedures for the correction of ministerial errors in final {antidumping duty} determinations." *See* 19 U.S.C. § 1673d(e). Commerce fulfilled this statutory obligation by promulgating 19 C.F.R. § 351.224, which requires Commerce to "analyze any {ministerial error} comments received and, if appropriate, . . . correct any ministerial error by amending the final determination or the final results of review." 19 C.F.R. § 351.224(e).

Commerce's regulations permit interested parties to file ministerial error comments after the disclosure of calculations made in support of a determination. *Id.* § 351.224(c). A ministerial error is "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error." *Id.* § 351.224(f) The regulations require Commerce to "analyze any comments received and, if

appropriate, . . . correct any ministerial error by amending . . . the final results of review." *Id.* § 351.224(e).

The errors described above might also be considered to be ministerial in nature because they are related to the arithmetic of how the margin itself is calculated. When Commerce applied a currency conversion ratio to Prolamsa's home market net price that was already ostensibly in U.S. dollars, it appeared to be an arithmetic mistake – one that could be easily addressed by changing a set of parentheses in the formula. Indeed, it appeared to stem from "inaccurate copying, duplication, or the like," of the preliminary calculations.

Similarly, Commerce's error as to Maquilacero's cost recovery benchmark was essentially dividing the costs by the wrong denominator because there was an extra quarter included in the denominator.

Notwithstanding the ministerial nature of these errors, Commerce, in violation of its regulations, refused to consider the comments, or to make an appropriate amendment. Under the doctrine of exhaustion of administrative remedies, Commerce may refuse to entertain ministerial error comments "where a ministerial error . . . was reflected in its preliminary antidumping duty determination . . . {and} no interested party pointed out the error in a timely manner" through its case brief. *QVD Food Co. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011) (citing *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376-77 (Fed. Cir. 2010)); *see also* 19 C.F.R. § 351.224(c)(1) (requiring interested parties to raise ministerial errors from the preliminary determination in the party's case brief).

This exception does not apply where Commerce amended the relevant calculations in the final results "because – simply stated – at the time of the {p}reliminary {r}esults there was nothing to exhaust." *Zhaoqing T fo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1346-47 n.23

(Ct. Int'l Trade 2015) (holding ministerial error claim that Commerce failed to follow practice to exclude certain selling, general, and administrative expense items not untimely where Commerce changed financial statements from the preliminary to the final determination and collecting cases where exhaustion is unnecessary where an error did not appear until the final determination or where the agency altered something from the preliminary to the final determination); *see also Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007) (observing that doctrine of exhaustion does not apply in situations where "the agency change{s} its position . . . after {a} party's case brief {has} been filed"); *Jacobi Carbons AB v. United States*, 992 F. Supp. 2d 1360, 1367 (Ct. Int'l Trade 2014), *aff'd*, 619 F. App'x 992 (Fed. Cir. 2015) (stating that "party . . . may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance, the party would not have had a full and fair opportunity to raise the issue at the administrative level" (citation omitted)); *Qingdao Ta.fa Grp. Co. v. United States*, 33 CIT 1090, 1092-93, 637 F. Supp. 2d 1231, 1236-37 (2009), *aff'd*, 467 F. App'x 887 (Fed. Cir. 2012) (non-precedential) (same).   Moreover, the exhaustion doctrine does not require an interested party to predict how Commerce may respond to the arguments in a case brief and alter its calculations.   *Qingdao Ta.fa*, 33 CIT at 1092-93, 637 F. Supp. 2d at 1237.

Commerce's determination that Nucor Tubular's ministerial error comments were untimely because the calculations existed in the preliminary results is wrong.   With regard to Prolamsa, Commerce claimed it "relied on this same programming language regarding these variables as {it} did in the *Final Results*."   Ministerial Error Memo at 5.   Yet, as demonstrated above, the programming language was significantly altered from the preliminary results, where home market net price was calculated in pesos, to the final results, where home market net price

was calculated in dollars.  Commerce itself admitted to a change in programming for the relevant language.  Prolamsa Final Calculation Memo at Attachment IV.  This change fundamentally altered the foreign unit price in dollars calculation because it included an error that did not exist in the preliminary results.

With regard to Maquilacero, Nucor Tubular raised ministerial errors present in the preliminary results in its case brief and Commerce agreed that a fix needed to be made and made a modification to the program.  However, Commerce did not implement the fix Nucor Tubular proposed; Instead, when implementing its intended fix, Commerce indirectly altered other portions of the program that caused a result that could not be rationally connected to the intended purpose of the correction in the first instance.  Either of these facts, on their own, is sufficient to render inapplicable Commerce's rationale for not considering Nucor Tubular's ministerial error comments on the final results.

Nucor Tubular raised the issue of inappropriate cost [          ] values in its case brief, which Commerce acknowledged.  Issues and Decisions Memo at 10.  However, rather than implement Nucor Tubular's suggested amendment, Commerce used a half measure to supposedly negate the relevant programming.  In doing so, Commerce exacerbated the error.  Nucor Tubular could not have predicted that Commerce would choose a different methodology to fix the problem, one that would ultimately exacerbate the problem rather than actually fix the issue that Commerce recognized distorted the below cost analysis.  *Qingdao Ta₁fa*, 33 CIT at 1092-93, 637 F. Supp. 2d at 1237.

For these reasons, Commerce's final results are unsupported by substantial evidence and otherwise note in accordance with law and must be remanded back to the agency.  Commerce's determination was arbitrary and capricious, and therefore not in accordance with law.  Commerce

claimed both its *Preliminary Results* and *Final Results* were unaffected by the arbitrary values and Commerce's revision to ignore those values. *See* Issues and Decision Memorandum at 10-11. These claims are demonstrably incorrect. Furthermore, Commerce's claim that Nucor Tubular failed to address the errors that existed in the preliminary results is also demonstrably incorrect. Therefore, Commerce "offered an explanation for its decision that runs counter to the evidence before the agency" and Commerce's explanation is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Jiaxing Brother Fastener Co.*, 380 F. Supp. 3d at 1356. Therefore, there is no "rational connection between the facts found and the choice made" by Commerce. *Baroque Timber*, 971 F. Supp. 2d at 1339. Thus, the failure to consider the ministerial errors based on this faulty reasoning cannot be considered to be "supported by substantial evidence and reasoned explanations." *See U.S. Steel Corp.*, 953 F. Supp. 2d at 1336.

Because Commerce had no appropriate rationale to reject Nucor Tubular's ministerial error comments, Commerce was obligated, under its regulations to analyze Nucor Tubular's comments "and, if appropriate, . . . correct any ministerial error by amending . . . the final results of review." 19 C.F.R. § 351.224(e). Commerce failed to abide by these regulations, therefore rendering the final results not in accordance with law where Commerce failed to follow its own regulations. *See Torrington Co.*, 82 F.3d at 1049.

## VI.    <u>CONCLUSION</u>

Because Commerce's *Final Results* are incorrect and in violation of Commerce's statutory obligations and standard practice, the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law. Moreover, Commerce had no basis to refuse to consider the ministerial error comments because Nucor Tubular did not fail to exhaust its administrative

remedies.   Therefore, Nucor Tubular respectfully requests this Court remand the final results to Commerce with instructions to correct the errors in calculation.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaint₍,₎f Nucor Tubular Products Inc.*

Dated: February 14, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Nucor Tubular Products Inc.'s Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 7,677 words.

<u>*/s/ Robert E. DeFrancesco, III*</u>
(Signature of Attorney)

<u>  Robert E. DeFrancesco, III  </u>
(Name of Attorney)

<u>  Nucor Tubular Products Inc.  </u>
(Representative Of)

<u>  February 14, 2022  </u>
(Date)

NON-CONFIDENTIAL VERSION

| EXHIBIT LIST | | |
|---|---|---|
| **Exhibit No.** | **Description** | **Security** |
| 1-A | Commerce Memorandum, re: *Preliminary Results Sales Calculations for Productos Laminados de Monterrey S.A. de C.V.* (Jan. 15, 2021), "Home Market Net Price Calculation" (excerpt of Attachment II) | Public Version |
| 1-B | Commerce Memorandum, re: *Preliminary Results Sales Calculations for Productos Laminados de Monterrey S.A. de C.V.* (Jan. 15, 2021), "Foreign Unit Price in Dollars Calculation" (excerpt of Attachment II) | Public Version |
| 2-A | Commerce Memorandum, re: *Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.* (July 22, 2021), "Home Market Net Price Calculation" (excerpt of Attachment II) | Public Version |
| 2-B | Commerce Memorandum, re: *Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.* (July 22, 2021), "Foreign Unit Price in Dollars Calculation" (excerpt of Attachment II) | Public Version |
| 3 | Commerce Memorandum, re: *Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.* (July 22, 2021), (excerpt of Attachment IV) | Public |

# EXHIBIT 1-A

# ENTIRE EXHIBIT NOT CAPABLE OF PUBLIC SUMMARY

# EXHIBIT 1-B

# ENTIRE EXHIBIT NOT CAPABLE OF PUBLIC SUMMARY

# EXHIBIT 2-A

# ENTIRE EXHIBIT NOT CAPABLE OF PUBLIC SUMMARY

# EXHIBIT 2-B

# ENTIRE EXHIBIT NOT CAPABLE OF PUBLIC SUMMARY

# EXHIBIT 3

Barcode:4146786-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

**SAS Program Changes for the Final Results**
**Resetting Mixed-Currency Math Back**

**Changes from the preliminary results in the ME Macros and the Margin program are <mark>highlighted below</mark>.**

**Prolamsa AR3 Final ME Macros.sas**

The '%macro ignore;' '%mend ignore' pairs effectively suppress the code between them.  Accordingly, these macro instructions are not run.

```
/*********************************************************/
/* HM-7: WEIGHT AVERAGE HM DATA                          */
/*                                                       */
/* Rename control number, VCOM, manufacturer, prime/non-prime, */
/* where applicable, using standardized names.           */
/*********************************************************/

%MACRO HM7_WTAVG_DATA;
    %GLOBAL MANUF_RENAME PRIME_RENAME TIME_PER_RENAME TIME_PERIOD_RENAME;

    %IF %UPCASE(&COMPARE_BY_TIME) EQ NO %THEN
    %DO;
        %LET TIME_PER_RENAME = ;
            %MACRO TIME_PERIOD_RENAME;
            %MEND TIME_PERIOD_RENAME;
    %END;
    %ELSE
    %IF %UPCASE(&COMPARE_BY_TIME) EQ YES %THEN
    %DO;
        %LET TIME_PER_RENAME = &HM_TIME_PERIOD=HM_TIME_PERIOD;
            %MACRO TIME_PERIOD_RENAME;
                RENAME &HM_TIME_PERIOD=HM_TIME_PERIOD;
            %MEND TIME_PERIOD_RENAME;
    %END;

    %IF %UPCASE(&HMMANUF) NE NA %THEN
    %DO;
        %MACRO MANUF_RENAME;
            RENAME &HMMANF = HMMANF;
        %MEND MANUF_RENAME;
    %END;
    %ELSE
    %IF %UPCASE(&HMMANUF) EQ NA %THEN
    %DO;
        %MACRO MANUF_RENAME;
        %MEND MANUF_RENAME;
    %END;

    %IF %UPCASE(&HMPRIME) EQ NA %THEN
    %DO;
        %MACRO PRIME_RENAME;
        %MEND PRIME_RENAME;
    %END;
    %ELSE
    %IF %UPCASE(&HMPRIME) NE NA %THEN
    %DO;
        %MACRO PRIME_RENAME;
```

Filed By: David Crespo, Filed Date: 7/27/21 2:20 PM, Submission Status: Approved

Barcode:4146786-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

```
                RENAME &HMPRIM = HMPRIME;
            %MEND PRIME_RENAME;
        %END;

/**/ %macro ignore;
        /******************************************************************/
        /* Set zero values to missing so that the weight average of non-zero */
        /* values for the model won't be reduced by the zero values.        */
        /******************************************************************/

        DATA HM_TO_WTAVG;
            SET HM;
            ARRAY SET_TO_MISSING(*) &WGTAVGVARS;
            DO I = 1 TO DIM(SET_TO_MISSING);
                IF SET_TO_MISSING(I) = 0 THEN
                    SET_TO_MISSING(I) = .;
            END;
        RUN;
/**/ %mend ignore;

/**/ PROC MEANS NWAY DATA = HM /* _TO_WTAVG */ NOPRINT;
        CLASS &HMMANF &HMPRIM HMLOT &MONTH &HMCONNUM &HM_TIME_PERIOD;
        ID &HMCHAR AVGVCOM;
        VAR &WGTAVGVARS;
        WEIGHT &HMQTY;
        OUTPUT OUT = HMAVG (DROP = _:) MEAN = &WGTAVGVARS;
    RUN;

/**/ %macro ignore2;
        /******************************************************************/
        /* Set missing values to zero so that missing values won't be generated */
        /* in the Margin program.                                          */
        /******************************************************************/

        DATA HMAVG;
            SET HMAVG;
            ARRAY SET_TO_ZERO(*) &WGTAVGVARS;
            DO I = 1 TO DIM(SET_TO_ZERO);
                IF SET_TO_ZERO(I) = . THEN
                    SET_TO_ZERO(I) = 0;
            END;
        RUN;
/**/ %mend ignore2;

    DATA COMPANY.&RESPONDENT._&SEGMENT._&STAGE._HMWTAV;
        SET HMAVG;
        RENAME &HMCONNUM = HMCONNUM AVGVCOM = HMVCOM;
            %MANUF_RENAME
            %PRIME_RENAME
            %TIME_PERIOD_RENAME
    RUN;

    PROC PRINT DATA = COMPANY.&RESPONDENT._&SEGMENT._&STAGE._HMWTAV (OBS = &PRINTOBS);
        TITLE3 "SAMPLE OF WEIGHT-AVERAGED HM VALUES FOR PRICE-TO-PRICE COMPARISON WITH
U.S. SALES";
    RUN;
%MEND HM7_WTAVG_DATA;
```

Barcode:4146786-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

## Prolamsa AR3 Margin Final.sas

The programming between the "ignore3" lines, was used in the preliminary results, but is not invoked for the final results. This programming is replaced with the highlighted programming.

```
/********************************************************************/
/* PART 5: CONVERT HOME MARKET NET PRICES AND ADJUSTMENTS INTO HM   */
/*         CURRENCY, IF REQUIRED                                    */
/*                                                                  */
/*     If HM sales data has more than one currency, the HMDATA macro */
/*     immediately following will create another macro called,     */
/*     MULTIPLE_CURR, which will get executed in the US10_P2PCALC below */
/*     in Part 8. Accordingly, you will not see anything in your log */
/*     about the calculation of HM net price, etc., at this point.  */
/********************************************************************/

%MACRO HMDATA;
    %IF %UPCASE(&NV_TYPE) = P2P %THEN
    %DO;
        %MACRO MULTIPLE_CURR;
            %IF %UPCASE(&HM_MULTI_CUR) = YES %THEN
            %DO;
/**/        %macro ignore3;
/*----------------------------------------------------------------*/
/* 5-A: If the Home Market database is reported in more than one   */
/*      currency, the HM net price needs to be recalculated in HM  */
/*      currency using an exchange rate based on the sale date of the */
/*      matching U.S. sale. HM sales have been weight averaged in the */
/*      HM Program so the HM net price will be calculated on a model */
/*      (HMCONNUM) basis.                                          */
/*                                                                */
/*      Edit the formula for HM net price (HMNETPRI) and, if required, */
/*      inventory carrying costs (HMICC), indirect selling expenses */
/*      (HMISELL), commissions (HMCOMM), and surrogate commissions */
/*      (HMINDCOM). Make sure HMNETPRI, HMICC, HMISELL, HMCOMM, and */
/*      HMINDCOM are calculated all in HM currency.               */
/*                                                                */
/*      If the currency denominated variables are reported only in one */
/*      currency, sum the currency dominated variables together,   */
/*      converting the non-HM currency variable(s) to HM currency. */
/*                                                                */
/*      In mixed-currency situations a HM adjustment (such as MOVEH) */
/*      can be reported in different currencies for different sales. */
/*      In the HM Program, the adjustment has been split into currency */
/*      denominated variables (such as MOVEH_EURO and MOVEH_USD).  */
/*                                                                */
/*      If the currency denominated variables are reported in different */
/*      currencies, calculate a simple average of the currency     */
/*      denominated variables, converting the non-HM currency       */
/*      variable(s) to HM currency.                               */
/*                                                                */
/*      For example, HMCONNUM 20-2-2 has sales with movement expenses */
/*      in two currencies, Euros and U.S. Dollars. HMCONNUMs 10-1-1 and */
/*      30-3-3 have sales with movement expenses in one currency. Use */
/*      the following language to insure HMMOVE is calculated properly: */
/*                                                                */
```

Filed By: David Crespo, Filed Date: 7/27/21 2:20 PM, Submission Status: Approved

Barcode:4146786-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

```
/*     IF (MOVEH_EURO NE 0) AND (MOVEH_USD NE 0) THEN            */
/*        HMMOVE = (MOVEH_EURO + (MOVEH_USD / EXRATE_EURO)) / 2; */
/*     ELSE                                                      */
/*        HMMOVE = MOVEH_EURO + (MOVEH_USD / EXRATE_EURO);       */
/*                                                               */
/*     Example results:                                          */
/*                                                               */
/*     HMCONNUM    MOVEH_EURO    MOVEH_USD    EXRATE_EURO   HMMOVE */
/*     10-1-1          500            0           2.6         500  */
/*     20-2-2          600         1600           2.0         700  */
/*     30-3-3            0         1000           2.5         400  */
/*---------------------------------------------------------------*/


    /*  HMGUP = (HMGUP_USD/EXRATE_MEXICO) + HMGUP_MXN;
        HMGUPADJ = (HMGUPADJ_USD/EXRATE_MEXICO) + HMGUPADJ_MXN;
        HMDISREB = (HMDISREB_USD/EXRATE_MEXICO) + HMDISREB_MXN;
        HMMOVE = (HMMOVE_USD/EXRATE_MEXICO) + HMMOVE_MXN;
        HMDSELL = (HMDSELL_USD/EXRATE_MEXICO) + HMDSELL_MXN;
        HMCRED = (HMCRED_USD/EXRATE_MEXICO) + HMCRED_MXN;
        HMISELL = (HMISELL_USD/EXRATE_MEXICO) + HMISELL_MXN;
        HMCOMM = (HMCOMM_USD/EXRATE_MEXICO) + HMCOMM_MXN;
        HMINDCOM = (HMINDCOM_USD/EXRATE_MEXICO) + HMINDCOM_MXN;*/

  IF (HMGUP_MXN NE 0) AND (HMGUP_USD NE 0) THEN
     HMGUP = (HMGUP_MXN + (HMGUP_USD / EXRATE_MEXICO)) / 2;
 ELSE HMGUP = HMGUP_MXN + (HMGUP_USD / EXRATE_MEXICO);

  IF (HMGUPADJ_MXN NE 0) AND (HMGUPADJ_USD NE 0) THEN
     HMGUPADJ = (HMGUPADJ_MXN + (HMGUPADJ_USD / EXRATE_MEXICO)) / 2;
 ELSE HMGUPADJ = HMGUPADJ_MXN + (HMGUPADJ_USD / EXRATE_MEXICO);

  IF (HMDISREB_MXN NE 0) AND (HMDISREB_USD NE 0) THEN
     HMDISREB = (HMDISREB_MXN + (HMDISREB_USD / EXRATE_MEXICO)) / 2;
 ELSE HMDISREB = HMDISREB_MXN + (HMDISREB_USD / EXRATE_MEXICO);

  IF (HMMOVE_MXN NE 0) AND (HMMOVE_USD NE 0) THEN
     HMMOVE = (HMMOVE_MXN + (HMMOVE_USD / EXRATE_MEXICO)) / 2;
 ELSE HMMOVE = HMMOVE_MXN + (HMMOVE_USD / EXRATE_MEXICO);

  IF (HMDSELL_MXN NE 0) AND (HMDSELL_USD NE 0) THEN
     HMDSELL = (HMDSELL_MXN + (HMDSELL_USD / EXRATE_MEXICO)) / 2;
 ELSE HMDSELL = HMDSELL_MXN + (HMDSELL_USD / EXRATE_MEXICO);

  IF (HMCRED_MXN NE 0) AND (HMCRED_USD NE 0) THEN
     HMCRED = (HMCRED_MXN + (HMCRED_USD / EXRATE_MEXICO)) / 2;
 ELSE HMCRED = HMCRED_MXN + (HMCRED_USD / EXRATE_MEXICO);

  IF (HMISELL_MXN NE 0) AND (HMISELL_USD NE 0) THEN
     HMISELL = (HMISELL_MXN + (HMISELL_USD / EXRATE_MEXICO)) / 2;
 ELSE HMISELL = HMISELL_MXN + (HMISELL_USD / EXRATE_MEXICO);

  IF (HMCOMM_MXN NE 0) AND (HMCOMM_USD NE 0) THEN
     HMCOMM = (HMCOMM_MXN + (HMCOMM_USD / EXRATE_MEXICO)) / 2;
 ELSE HMCOMM = HMCOMM_MXN + (HMCOMM_USD / EXRATE_MEXICO);

  IF (HMINDCOM_MXN NE 0) AND (HMINDCOM_USD NE 0) THEN
```

Barcode:4146786-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

```
        HMINDCOM = (HMINDCOM_MXN + (HMINDCOM_USD / EXRATE_MEXICO)) / 2;
     ELSE HMINDCOM = HMINDCOM_MXN + (HMINDCOM_USD / EXRATE_MEXICO);
/**/ %mend ignore3;


/*-----------------------------------------------------------------*/
/* 5-A: If the HM database has more than one currency, edit the formula   */
/*  for HM net price and, if required, inventory carrying costs (HMICC),  */
/*  indirect selling expenses (HMISELL), commissions (HMCOMM) and         */
/*  surrogate commissions (HMINDCOM). Calculate all in HM currency.       */
/*-----------------------------------------------------------------*/

    /*******************************/
    /* CONVERT EVERYTHING INTO USD */
    /*******************************/

    /* Gross unit price. */

    HMGUP = HMGUP_USD + (HMGUP_MXP * EXRATE_MEXICO);

    /* Price adjustments to be added to HMGUP */

    HMGUPADJ = HMGUPADJ_USD + (HMGUPADJ_MXN * EXRATE_MEXICO);

    /* Discounts, rebates & other price adjustments to be subtracted from HMGUP */

    HMDISREB = HMDISREB_USD + (HMDISREB_MXN * EXRATE_MEXICO);

    /* Movement expenses */

    HMMOVE = HMMOVE_USD + (HMMOVE_MXN * EXRATE_MEXICO);

    /* Imputed credit expense */

    HMCRED = HMCRED_USD + (HMCRED_MXN * EXRATE_MEXICO);

    /* Direct selling expenses, excluding HMCRED */

    HMDSELL = HMDSELL_USD + (HMDSELL_MXN * EXRATE_MEXICO);


    /* Indirect selling expenses, excluding HMICC */

    HMISELL = HMISELL_USD + (HMISELL_MXN * EXRATE_MEXICO);

    /* Commissions  */

    HMCOMM = HMCOMM_USD + (HMCOMM_MXN * EXRATE_MEXICO);

      /* HMICC AND HMPACK ARE REPORTED IN MXN PESOS, NO EDITING NEEDED */

            HMNETPRI = HMGUP + HMGUPADJ - HMDISREB - HMMOVE
                 - HMCRED - HMDSELL - HMCOMM - HMPACK;

               /*<HMICC = ???;>*/     /* deactivate or delete if */
                                      /* editing not required.   */

               /*<HMISELL = ???;>*/
```

Filed By: David Crespo, Filed Date: 7/27/21 2:20 PM, Submission Status: Approved

Barcode:4146786-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

```
                                          /* deactivate or delete if */
                               /* editing not required.   */
                /*<HMCOMM = ???;>*/
                                               /* deactivate or delete if */
                               /* editing not required.   */
                /*<HMINDCOM = ???;>*/
                                               /* deactivate or delete if */
                               /* editing not required.   */
            %END;
        %MEND MULTIPLE_CURR;
    %END;
%MEND HMDATA;
```