## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NUCOR TUBULAR PRODUCTS INC., | ) |
| | ) |
| *Plaintiff,* | ) **<u>NON-CONFIDENTIAL VERSION</u>** |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) Court No. 21-00543 |
| | ) |
| *Defendant,* | ) Confidential Business Proprietary |
| | ) Information Deleted from Pages: 4, 9, 10, |
| and | ) 13 and from Exhibits 1-3. |
| | ) |
| PRODUCTOS LAMINADOS DE | ) |
| MONTERREY S.A. DE C.V., | ) |
| PROLAMSA, INC. AND MAQUILACERO | ) |
| S.A. DE C.V. | ) |
| | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

## RESPONSE BRIEF OF DEFENDANT-INTERVENOR MAQUILACERO S.A. DE C.V. TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Diana Dimitriuc Quaia
John M. Gurley
Yun Gao

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6291
Fax: (202) 857-6395

*Counsel to Maquilacero S.A. de C.V.*

April 22, 2022

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT PURSUANT TO RULE 56.2(C)(1) ..............................................2

      A.    The Administrative Determination Under Review .....................................2

      B.    Issue Presented for Review ........................................................................2

III.  SUMMARY OF RELEVANT FACTS .................................................................3

IV.   SUMMARY OF ARGUMENT .............................................................................6

V.    STANDARD OF REVIEW ...................................................................................7

VI.   ARGUMENT .........................................................................................................9

      A.    The Alleged Calculation Error that Nucor Claims It Raised in Its
            Case Brief Is Distinct from the Alleged Ministerial Error........................9

            1.    Commerce Used the Same Universe of Home Market and
                  U.S. Sales in Its Calculations for Both the *Preliminary
                  Results* and the *Final Results* ...................................................10

            2.    The Issue Raised in Nucor's Case Brief Was Addressed by
                  Commerce in the *Final Results* and Was Substantively
                  Different from the Issue in the Ministerial Error Allegation ....12

      B.    Commerce's Decision to Reject Nucor's Untimely Ministerial
            Error Was Reasonable and in Accordance with Law ..............................14

            1.    The Methodological Issue Raised by Nucor Is Not a
                  "Ministerial Error" and as Explained, Commerce's
                  Inclusion of Pre-POR Data in the Cost Calculation Existed
                  in Commerce's Preliminary Margin Program and Remained
                  Unchanged in the *Final Results* ................................................14

            2.    Nucor's Allegations Were Untimely Under Commerce's
                  Regulations ..................................................................................15

            3.    Plaintiff Failed to Exhaust Its Administrative Remedies.............16

VII.  CONCLUSION.....................................................................................................20

AFDOCS/25685711.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
　808 F.2d 1471 (Fed. Cir. 1986)...........................................................................8

*Alloy Piping Products, Inc. v. United States*,
　201 F. Supp. 2d 1267 (Ct. Int'l Trade 2002), *aff'd sub nom. Alloy Piping*
　*Products, Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284 (Fed. Cir. 2003) ...........................15

*Boomerang Tube LLC v. United States*,
　856 F.3d 908 (Fed. Cir. 2017)....................................................................18, 19

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
　467 U.S. 837 (1984).............................................................................9

*Clearon Corp. v. United States*,
　800 F. Supp. 2d 1355 (Ct. Int'l Trade 2011) ........................................................18

*Consol. Edison Co. v. NLRB*,
　305 U.S. 197 (1938).............................................................................8

*Corus Staal BV v. United States*,
　502 F.3d 1370 (Fed. Cir. 2007).....................................................................17

*Dorbest Ltd. v. United States*,
　604 F.3d 1363 (Fed, Cir. 2010)..............................................................16, 17, 19

*Dupont Teijin Films USA, LP v. United States*,
　407 F.3d 1211 (Fed. Cir. 2015)....................................................................8

*Geum Poong Corp. v. United States*,
　163 F. Supp. 2d 669 (Ct. Int'l Trade 2001) ........................................................15

*McKart v. United States*,
　395 U.S. 185 (1969).............................................................................7

*Nakornthai Strip Mill Pub. Co. v. United States*,
　558 F. Supp. 2d 1319 (Ct. Int'l Trade 2008) ....................................................15, 19

*Nippon Steel Corp. v. United States*,
　458 F.3d 1345 (Fed. Cir. 2006).....................................................................8

*In re NuVasive, Inc.*,
   842 F.3d 1376 (Fed. Cir. 2016)...........................................................................8

*QVD Food Co. v. United States*,
   721 F. Supp. 2d 1311 (Ct. Int'l Trade 2010), *aff'd* 658 F.3d 1318 (Fed. Cir.
   2011) .......................................................................................................................17

*QVD Food Co. v. United States*,
   658 F.3d 1318 (Fed. Cir. 2011)..................................................................17, 19

*Sandvik Steel Co. v. United States*,
   164 F.3d 596 (Fed. Cir. 1998)...........................................................................16

*Timken Co. v. United States*,
   354 F.3d 1334 (Fed. Cir. 2004)...........................................................................9

*Union Steel v. United States*,
   713 F.3d 1101 (Fed. Cir. 2013)...........................................................................9

*United States v. L.A. Tucker Truck Lines, Inc.*,
   344 U.S. 33 (1952).........................................................................................16, 17

**Federal Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)...................................................................................7, 8

19 U.S.C. § 1675(h) ........................................................................................................15

19 U.S.C. § 1677b(b)(1) ..................................................................................................9

28 U.S.C. § 2637(d) ................................................................................................16, 17

28 U.S.C. § 2640(b) ........................................................................................................7

Tariff Act of 1930 § 516A ............................................................................................7

Tariff Act of 1930 § 751(h) ........................................................................................14

**Regulations**

19 C.F.R. § 351.224(c).................................................................................................5, 7

19 C.F.R. § 351.224(c)(1)......................................................................................15, 16

19 C.F.R. § 351.224(c)(2)......................................................................................15, 16

19 C.F.R. § 351.224(f)............................................................................................14, 15

19 C.F.R. § 351.309(c)..................................................................................................16

19 C.F.R. § 351.309(c)(2) ...................................................................................7, 15, 17, 19

19 C.F.R. § 351.309(d) ..........................................................................................................16

**Administrative Determinations**

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*,
    84 Fed. Reg. 63610 (Dep't Commerce Nov. 18, 2019) (prelim. AD results &
    prelim. determ. no shipments; 2017-2018) ...............................................................10

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*,
    85 Fed. Reg. 41962 (Dep't Commerce July 13, 2020) (final AD results & final
    detrem. No shipments; 2017-2018), and accompanying Issues & Decision
    Memorandum ..................................................................................................................11

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*,
    86 Fed. Reg. 7067 (Dep't Commerce Jan. 26, 2021) (prelim results; 2018-
    2019), and accompanying Decision Memorandum ...............................................3, 9

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*,
    86 Fed. Reg. 41448 (Dep't Commerce Aug. 2, 2021) (final results; 2018-
    2019), and accompanying Issues & Decision Memorandum ................................2, 4

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | | |
|---|---|---|
| NUCOR TUBULAR PRODUCTS INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | **NON-CONFIDENTIAL VERSION** |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | Court No. 21-00543 |
| | ) | |
| *Defendant,* | ) | Confidential Business Proprietary |
| | ) | Information Deleted from Pages: 4, 9, 10, |
| and | ) | 13 and from Exhibits 1-3. |
| | ) | |
| PRODUCTOS LAMINADOS DE | ) | |
| MONTERREY S.A. DE C.V., | ) | |
| PROLAMSA, INC. AND MAQUILACERO | ) | |
| S.A. DE C.V. | ) | |
| | ) | |
| *Defendant-Intervenors.* | ) | |
| | ) | |

**RESPONSE BRIEF OF DEFENDANT-INTERVENOR MAQUILACERO S.A. DE C.V.
TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY
RECORD**

**I.      INTRODUCTION**

On behalf of Maquilacero S.A. de C.V. ("Maquilacero"), Defendant-Intervenor in this

action, we respectfully submit this brief in response to Nucor Tubular Products Inc.'s ("Nucor")

Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record filed on

February 14, 2022, ECF Nos. 33 and 34 ("Pl. Br.").  For the reasons stated below, the U.S.

Department of Commerce ("Commerce") acted in accordance with law and evidence when it

rejected Plaintiff's allegation of ministerial errors where the alleged error was not brought to

Commerce's attention until after issuance of the final determination in this proceeding.  We

respectfully request that the Court deny the motion for judgment on the agency record and enter judgment in favor of the United States.

## II.    STATEMENT PURSUANT TO RULE 56.2(C)(1)

### A.    The Administrative Determination Under Review

The administrative determination under review is Commerce's final results determination in the third administrative review of the antidumping duty order on *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 86 Fed. Reg. 41448 (Dep't Commerce Aug. 2, 2021) (final results; 2018-2019), P.R. 252, ECF No. 26-3 ("*Final Results*"), and the accompanying Issues and Decision Memorandum ("*Final I&D Memo*"), P.R. 243, ECF 26-2.

### B.    Issue Presented for Review

Plaintiff's complaint raises a single issue as it pertains to Maquilacero:[1]  whether Commerce's determination to reject as untimely Plaintiff's allegation ministerial errors in the *Final Results* is supported by substantial evidence on the record and in accordance with law where the alleged error was first raised by Plaintiff in comments filed after the issuance of the *Final Results* even though the challenged methodology was present in the Preliminary Results.

While Plaintiff's brief presents two issues as they pertain to Maquilacero's final duty rate, (1) a challenge to the *Final Results* with respect to Commerce's application of the cost test in calculating the final rate for Maquilacero and (2) a challenge to Commerce's determination to reject Plaintiff's ministerial error allegation, the Court needs only address the second issue which

---

[1] Plaintiff's contention in its complaint was as follows:

> Commerce's determination that the ministerial error allegation submitted by Plaintiff as to Maquilacero was untimely was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence, and was otherwise not in accordance with law.

Compl. ¶ 14, ECF No. 6.

is dispositive of Plaintiff's claims in this matter. Pl. Br. at 3.  Plaintiff's argument that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law because Commerce allegedly failed to properly calculate Maquilacero's costs, *id.*, is not an issue properly before the Court.  The Court does not need to reach this issue because Commerce's determination that the ministerial error allegation was untimely and that Plaintiff failed to raise its substantive arguments before the *Final Results* is consistent with law and Commerce's regulations.

## III.    <u>SUMMARY OF RELEVANT FACTS</u>

Maquilacero provides the following summary of salient facts for this appeal in order to correct certain inaccuracies in the Statement of Facts in Plaintiff's brief. Pl. Br. at 4 and 6-9.

In the first supplemental Section C questionnaire, Commerce requested Maquilacero to revise its U.S. sales database and include sales that were made prior to the Period or Review ("POR") but entered the United States during the POR. *See* Letter from Arent Fox to Sec'y Commerce, re: Maquilacero S.A. de C.V.'s Supplemental Section C Questionnaire Response at 2-3 (June 22, 2020) ("Supplemental Section C Response"). C.R. 199, P.R. 130.  Maquilacero amended its U.S. sales database as instructed by Commerce. *Id.*

On January 15, 2021, Commerce announced the preliminary results and disclosed calculations in support of the preliminary results. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 86 Fed. Reg. 7067 (Dep't Commerce Jan. 26, 2021) (prelim results; 2018-2019), P.R. 198 ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum, P.R. 191 ("*Preliminary Decision Memo*").

In the *Preliminary Results*, Commerce used quarterly costs to calculate Maquilacero Cost of Productions ("COPs"). *Preliminary Decision Memo*, at 18-19, P.R. 191 For the quarter before the POR, corresponding to sales made prior to the POR but entered during the POR, Commerce

used a [                    ]. Memorandum from D. Goldberger to The File, re: Preliminary

Results Margin Calculation for Maquilacero S.A. de C.V. at Attachment 1, SAS program log

lines 8715-8732 (Jan. 15, 2021) ("Maquilacero Preliminary Margin Calculation Memo"), C.R.

301, P.R. 192.

    In its case brief to Commerce, Plaintiff argued that Commerce erred in its calculation of

Maquilacero's costs by applying incorrect values for the quarterly costs of Maquilacero's Hot-

Rolled Coil ("HRC") purchases. *See* Letter from Wiley Rein LLP to Acting Sec'y Commerce, re:

Case Brief at 49-52 (Mar. 8, 2021) ("Nucor's Case Brief"), C.R. 375, P.R. 231.  Among other

arguments, Plaintiff argued that Commerce should make a correction by replacing the sequential

values with Maquilacero's reported quarterly HRC purchase prices, and use Plaintiff's price

estimates for those quarters where Maquilacero did not report quarterly HRC purchase prices. *Id.*

at 52. Notably, Plaintiff raised no objection to Commerce's use of Maquilacero's pre-POR U.S.

sales for purposes of the COPs calculation. *Id.* at 49-52.

    On July 22, 2021, Commerce announced its final results and disclosed calculations in

support of the final results. *Final Results*, P.R. 252, and *Final I&D Memo*, P.R. 243. Commerce

responded to Plaintiff's argument regarding the price data for Maquilacero's HRC costs

explaining that the cost information was unnecessary to the ultimate cost calculation. *Final I&D*

*Memo.* at 10-11. In other words, Commerce disagreed with Nucor's proposed "correction" and

explained why it was not implementing that "correction" to its calculation methodology.  In the

*Final Results*,  Commerce removed the cost language from the program. *Id.*  Absent any

objection from Nucor, Commerce made no change as to the quarterly cost calculation

methodology, *i.e.* for the quarter before the POR, and continued to use a [                    ].

Memorandum from D. Goldberger to The File, re: Final Results Margin Calculation for

Maquilacero S.A. de C.V. at Attachment 1, SAS program log lines 8719-8736 (July 22, 2021) ("Maquilacero Final Margin Calculation Memo"), C.R. 381, P.R. 245.

On August 2, 2021, Plaintiff submitted ministerial error comments arguing for the first time in this proceeding that Commerce erred by inadvertently calculating the COPs for control numbers ("CONNUMs") corresponding to sales made in the quarter preceding the POR. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Ministerial Error Comments at 2-6 (Aug. 2, 2021). ("Nucor's Ministerial Error Comments"), C.R. 392, P.R. 253. Plaintiff argued that the inclusion of the COPs for Maquilacero's sales outside the POR distorted Commerce's cost recovery test employed when Commerce applies the quarterly cost methodology. *Id.*

On August 20, 2021, Commerce issued its ministerial error determination. *See* Memorandum from D. Crespo to J. Pollack, re: Ministerial Error Allegations in the Final Results of the 2018-2019 Antidumping Duty Administrative Review on Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico (Aug. 20, 2021) ("Final Ministerial Error Memo*"*), P.R. 259. Commerce determined that Plaintiff's ministerial error allegations are untimely pursuant to 19 C.F.R. § 351.224(c) because "{t}he alleged ministerial error {Plaintiff} raises was discoverable earlier in the proceeding (*i.e.*, immediately following the *Preliminary Results*) but was not alleged during the time period specified by {Commerce's} regulations" *Id.* at 3-4.

Specifically, Commerce explained that it excluded Maquilacero's reported home market sales made during the Pre-POR window period from the calculation of NV. *Id.* at 3. However, Commerce did not exclude Maquilacero's U.S. sales sold prior to the POR, but entered during the POR from the universe of U.S. sales for purposes of calculating CONNUM-specific COPs on

a quarterly basis. *Id.* Commerce performed the cost recovery test using the same universe of home market and U.S. sales in its calculations for both the *Preliminary Results* and the *Final Results*. *Id.* The corresponding SAS language is *identical* in both the *Preliminary Results* and the *Final Results*, which, in turn, generated almost identical cost recovery test results. *Id.* In other words, even if Commerce had fully adopted Plaintiff's proposed "corrections" presented in its case brief, the SAS programing language later challenged by Plaintiff in its ministerial error comment would have remained unchanged and carried the same results. *Id.*

Plaintiff's assertions that Maquilacero did not dispute the ministerial error, Pl. Br. at 2 and 6, are probably meant to suggest that Maquilacero somehow agreed with Nucor that the *Final Results* include a mathematical error. That is incorrect. In its rebuttal brief before the agency, Maquilacero explained that Nucor's proposed corrections to Commerce's calculations do not reflect Maquilacero's quarterly HRC purchase prices, but rather are further adjustments inconsistent with both Commerce's intent and the record. *See* Letter from Arent Fox LLP to Sec'y Commerce, re: Maquilacero S.A. de C.V.'s Rebuttal Brief at 3-6 (Mar. 8, 2021) ("Maquilacero Rebuttal Brief"), C.R. 378, P.R. 236. Likewise, Plaintiff's statement that Maquilacero "fundamentally agreed" with Nucor's proposed correction in its case brief, Pl. Br. at 8, is an overstatement. Maquilacero simply responded to an argument in Nucor's case brief, without agreeing that Commerce's methodology needs to change in the *Final Results*. Maquilacero Rebuttal Brief at 6.

## IV. <u>SUMMARY OF ARGUMENT</u>

Plaintiff's entire case rests on whether Commerce's determination to reject an untimely allegation of ministerial errors was lawful and supported by substantial evidence. Plaintiff contends that the *Final Results* contain an error in the margin calculation for Maquilacero due to the fact that Commerce included U.S. sales made outside the POR, but entered during the POR,

which allegedly affected the results of the quarterly cost methodology cost recovery test.  This was not a mathematical error or an error that is ministerial in nature, as Plaintiff seeks to portray it, but a substantive challenge to a methodological choice made by the agency at the time of the *Preliminary Results*.

The corresponding margin program with respect to Commerce's cost recovery test was identical in Commerce's *Preliminary Results* and *Final Results*.  Commerce lawfully rejected this allegation as untimely under its regulations at 19 C.F.R. §§ 351.224(c) and 351.309(c)(2) because at no point during the administrative review did Plaintiff contend that Commerce should have excluded Maquilacero's U.S. sales sold outside the POR for purposes of the cost recovery test.  Final Ministerial Error Memo at 3, P.R. 259. Commerce acted consistent with the statute and its regulations by refusing to consider such an argument, made in the first instance, after the issuance of the *Final Results*.  Generally, "{t}he doctrine {of exhaustion of administrative remedies} provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *McKart v. United States*, 395 U.S. 185, 193 (1969) (citation omitted) (internal quotations omitted). The evidence on the record shows that Plaintiff failed to exhaust its administrative remedies and, therefore, is not entitled to judicial relief on this claim.

## V.     <u>STANDARD OF REVIEW</u>

The authority and scope of the Court's power to review Commerce's determinations in antidumping duty administrative reviews is established by statute. 28 U.S.C. § 2640(b) provides that "{i}n any civil action commenced in the Court of International Trade under section 516A of the Tariff Act of 1930, the court shall review the matter as specified in subsection (b) of such section." 19 U.S.C. § 1516a(b)(1)(B)(i) provides that, with respect to a final determination by the Commerce, the Court "shall hold unlawful any determination, finding, or conclusion found . . .

unsupported by substantial evidence on the record, or otherwise not in accordance with law." By statute, Commerce determinations shall thus be upheld if they are supported "by substantial evidence on the record" and are otherwise "in accordance with law." *Id.*

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2015) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is "reasonable and supported by the record as a whole." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted). To provide a reasoned explanation, Commerce "must make the necessary findings and have an adequate evidentiary basis for its findings," and "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *In re NuVasive, Inc*., 842 F.3d 1376, 1382 (Fed. Cir. 2016) (citations omitted) (internal quotations  omitted); *see* 19 U.S.C. § 1516a(b)(1)(B)(i).

The Court of Appeals for the Federal Circuit ("Federal Circuit") has stated that the "substantial evidence standard does not allow a court to conduct a *de novo* investigation of the evidence on the record before it and reach an independent conclusion; rather, the court's review is limited to deciding whether there is sufficient evidence in the record considered as a whole to support the agency's findings." *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1479 (Fed. Cir. 1986). The "mere fact that a reasonable person might reach some other conclusion is insufficient for this court to overturn the agency's conclusion." *Id.* When reviewing Commerce's statutory interpretations, the Court specifically applies the framework set forth in the Supreme

Court's opinion in *Chevron*.  *Union Steel v. United States*, 713 F.3d 1101, 1106-07 (Fed. Cir.

2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

Where the antidumping statute does not directly address the question before the agency,

the Court will defer to Commerce's construction of its authority if it is reasonable. *Timken Co. v.*

*United States*, 354 F.3d 1334, 1341 (Fed. Cir. 2004) (relying on *Chevron*, 467 U.S. at 842-43).

## VI.   ARGUMENT

Commerce's *Final Results*, including its calculation with respect to Maquilacero's

dumping margin and its rejection of Nucor's ministerial error comments are supported by

substantial record evidence and otherwise in accordance with law.

### A.   The Alleged Calculation Error that Nucor Claims It Raised in Its Case Brief Is Distinct from the Alleged Ministerial Error

In the *Preliminary Results*, Commerce relied on quarterly costs to calculate

Maquilacero's margin.  *Preliminary Decision Memo* at 18-19, P.R. 191.  Throughout the

administrative review, Nucor did not object to Commerce's choice of using a quarterly

comparison methodology to calculate Maquilacero's margin. *Id.* at 7.  Nor did Nucor object to

Commerce's choice of using a [                                                      ]. *Id.* at 8.

Before the Court, Nucor argues that Commerce "erred in calculating normal value" for

Maquilacero with respect to the calculation of the cost recovery benchmark pursuant to 19

U.S.C. § 1677b(b)(1). Pl. Br. at 6-7.  According to Plaintiff, "Commerce's {sic} exacerbated the

problem that existed in the preliminary determination" and "{h}ad Commerce used Nucor's

{sic} Tubular's proposed solution, the cost recovery benchmark would be the result of

appropriate cost averages." *Id.* at 9. Notably, however, Nucor conveniently omits to explain the

alleged errors and proposed "corrections" raised in its case brief to Commerce, but appears to

blame Commerce for not adopting its proposed methodology in the *Final Results*. *Id.* at 16-17.

Nucor's claim is not supported by the evidence on the record.  Nucor's argument conflates Commerce's inclusion of "pre-POR" sales in the cost recovery benchmark calculation with a separate issue raised in Nucor's case brief before the agency regarding Commerce's choice of the value used for the [                              ].  Therefore, the issue raised in Nucor's case brief and the proposed "correction" provided therein are distinct from the alleged error Nucor now seeks the Court to review.

Specifically, in its case brief to Commerce, Nucor argued that Commerce erred in its calculation of Maquilacero's costs by applying incorrect values for the quarterly costs of Maquilacero's HRC purchases. *See* Nucor's Case Brief, at 49-52, C.R. 375, P.R. 231. In contrast, in its ministerial error comments, Nucor argued for the first time in this proceeding that Commerce erred by inadvertently calculating the COPs for U.S. sales made in the quarter preceding the POR, and that such alleged error resulted in a distortion of Commerce's cost recovery test when Commerce applied the quarterly cost methodology. Nucor's Ministerial Error Comments, at 5-6, C.R. 392, P.R. 253.

1.    **Commerce Used the Same Universe of Home Market and U.S. Sales in Its Calculations for Both the *Preliminary Results* and the *Final Results***

In this review, Commerce specifically requested Maquilacero to report sales that were made prior to the POR but entered the United States during the POR. Supplemental Section C Response at 2-3,  C.R. 199, P.R. 130. In the *Preliminary Results*, Commerce excluded Maquilacero's reported home market sales made during the Pre-POR window period from the calculation of NV. Maquilacero Preliminary Margin Calculation Memo at 2, C.R. 301, P.R. 192. This is consistent with Commerce's practice in previous segments of this proceeding where it calculated quarterly costs. *See e.g. Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 84 Fed. Reg. 63610 (Dep't Commerce Nov. 18, 2019) (prelim. AD results

& prelim. determ. no shipments; 2017-2018) and Memorandum from J. Garten to The File, re: Calculations for Maquilacero S.A. de C.V. (Maquilacero) for the Preliminary Results at 3 (Nov. 6, 2019); the methodology is unchanged in *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 85 Fed. Reg. 41962 (Dep't Commerce July 13, 2020) (final AD results & final detrem. No shipments; 2017-2018), and accompanying Issues & Decision Memorandum at 6 (cmt. 2).  However, Commerce did not exclude *U.S. sales* sold prior to the POR, but entered during the POR, from the universe of U.S. sales for purposes of calculating CONNUM-specific cost of productions ("COPs") on a quarterly basis. *See* Final Ministerial Error Memo at 3, P.R. 259. Commerce performed the cost recovery test using the same universe of home market and U.S. sales in its calculations for both the *Preliminary Results* and the *Final Results*. *Id.* The corresponding SAS language is *identical* in both the *Preliminary Results* and the *Final Results*.[2]  Relevant excerpts of the SAS output pages in both the *Preliminary Results* and the *Final Results* are attached as **Exhibit 1**.

Nowhere in its case brief to the agency did Nucor contest Commerce's inclusion of the Pre-POR window period sales for purposes of calculating a cost recovery benchmark for any products sold but not produced during the POR.  Contrary to Nucor's claim that Commerce's *Final Results* "introduced a new error into the calculation and did not result in correct cost calculation" Pl. Br. at 9, the alleged error is a methodological issue that existed at the time of the *Preliminary Results*.  The inclusion of pre-POR sales in the cost recovery benchmark calculation and Commerce's corresponding margin program were identical and unchanged in the *Preliminary Results* and the *Final Results*. Final Ministerial Error Memo at 3, P.R. 259. Nucor

---

[2] Maquilacero Preliminary Margin Calculation Memo, Attachment 1, at 14. C.R. 301, P.R. 192; *see also* Maquilacero Final Margin Calculation Memo, Attachment 1, at 14, C.R. 381, P.R. 245.

did not properly contest this issue until after the *Final Results* were issued, raising it under the guise of a ministerial error. *Id.* at 3. Nucor's attempt to conflate the alleged ministerial error with an unrelated calculation methodology raised in its case brief should be rejected.

   2.     **The Issue Raised in Nucor's Case Brief Was Addressed by Commerce in the *Final Results* and Was Substantively Different from the Issue in the Ministerial Error Allegation**

In its case brief to the agency, Nucor pointed to alleged programming errors in calculating Maquilacero's quarterly prices for HRC. *See* Nucor's Case Brief at 49-52, C.R. 375, P.R. 231. Nucor's proposed "correction" was that Commerce should replace the sequential values with Maquilacero's reported quarterly HRC purchase prices, and use Nucor's price estimates for those quarters where Maquilacero did not report quarterly HRC purchase prices. *Id.* at 52.  Ironically, in its case brief, Nucor explicitly compared Commerce's calculation of the pre-POR window period (*i.e.* "Q0") price for HRC with the first quarter price for HRC (*i.e.* "Q1"), thereby explicitly acknowledging Commerce's intended inclusion of the Pre-POR sales data in its quarterly comparison analysis. *Id.* at 51 and 51 n.175.

Contrary to Nucor's *post hoc* explanation that the proposed correction presented in its case brief "would ensure that the cost recovery test used an appropriate benchmark based on Maquilacero's experience and not arbitrary values that inappropriately depressed cost," Pl. Br. at 8, the issue raised in Nucor's ministerial error comment was substantively different and nowhere discussed in Nucor's case brief. Specifically, in the ministerial error comments, Nucor for the first time claimed that Commerce's Home Market ("HM") program inadvertently includes Maquilacero's pre-POR window period sales that results in a depression in calculating Maquilacero's costs. Nucor's Ministerial Error Comments at 2-6, C.R. 392, P.R. 253.

Without any factual basis, Nucor contends that "{t}he methodology that Commerce chose {in the *Final Results*} had the effect of continuing to allow these transaction with costs

that were selected as arbitrary plugs to continue to affect the cost recovery test." Pl. Br. at 16. As

discussed above, Commerce's chosen methodology in calculating the quarterly HRC price data

in the *Final Results* is irrelevant as to Commerce's choice of inclusion of pre-POR window

period sales data in the cost recovery benchmark calculation.  Indeed, Commerce intended to

include the pre-POR sales for purposes of calculating the quarterly COPs. *See* Final Ministerial

Error Memo at 3, P.R. 259.  Commerce performed the cost recovery test using the same universe

of home market and U.S. sales for both the *Preliminary Results* and the *Final Results* with

identical SAS programming language. *Id.* Absent Nucor's objection in the case brief, the SAS

language was unchanged, which in turn, "generated almost identical cost recovery test results."

*Id.* Therefore, had Commerce fully adopted Nucor's proposed "corrections" presented in its case

brief, the SAS programing language later challenged by Nucor in the ministerial error comments

would have remained in effect and carried the same results.

This is obvious from Nucor's own Ministerial Error comments. Specifically, Nucor

argued for the first time in this review that

> {t}he portion of the SAS program that the Department deactivated is used to
> calculate a hot-rolled coil ("HRC") cost for CONNUMs in periods for which no
> costs are reported. With the language deactivated, costs for the period prior to the
> POR, period "0", are assigned a zero for HRC costs . . . . Thus, due to the
> Department's revision, the calculated TOTCOM for CONNUMs in quarter /
> period '0' are understated by the [          ] amount of the HRC used for the
> observation.

Nucor's Ministerial Error Comments at 4, C.R. 392, P.R. 253.

However, Commerce proved this claim to be incorrect.  Nucor speculated that the final

program set the period "0" direct material costs to zero, which influenced the cost recovery test.

*Id.*  In addressing the ministerial error allegation, Commerce found that notwithstanding the

adjustment made to the calculation of COP in the *Final Results*, Commerce's programs used in

the *Preliminary Results* and Final Results "***generated almost identical cost recovery test***

*results*." Final Ministerial Error Memo at 3 and 3 n.20 (emphasis added), P.R. 259. Excerpts of

relevant SAS output language for the cost recovery test performed in the *Preliminary Results* and

*Final Results* are attached at **Exhibit 2**.

Finally, in proposing a fix to the alleged calculation error, Nucor requested that

Commerce "exclude U.S. CONNUMs sold outside the POR when identifying CONNUM /

quarter combinations needed for cost records," and insert certain SAS language immediately

following line 8723 of the SAS log. Nucor's Ministerial Error Comments at 5, C.R. 392, P.R.

253.   This is a methodological change raised for the first time after the *Final Results*, but that

existed in the *Preliminary Results*.  The relevant SAS language in the *Final Results* (lines 8719 -

8736 of the final HM program)[3] is identical to the language in the *Preliminary Results* (lines

8715 – 8732 of the prelim HM program[4]) for which Nucor raised no objection earlier in this

proceeding. Excerpt of the relevant SAS output pages are provided at **Exhibit 3**.

> **B.**   **Commerce's Decision to Reject Nucor's Untimely Ministerial Error Was Reasonable and in Accordance with Law**

> **1.**   **The Methodological Issue Raised by Nucor Is Not a "Ministerial Error" and as Explained, Commerce's Inclusion of Pre-POR Data in the Cost Calculation Existed in Commerce's Preliminary Margin Program and Remained Unchanged in the *Final Results***

Section 751(h) of the Tariff Act of 1930, as amended, and section 351.224(f) of the

Department's regulations define a ministerial error as that which involves an error "in addition,

subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying,

duplication, or the like, and any other type of unintentional error which {the Secretary} considers

ministerial." 19 U.S.C. §1675(h); *see also*, 19 C.F.R. § 351.224(f). An issue raised by a party

---

[3] Maquilacero Final Margin Calculation Memo, at Attachment 1, home market program log. C.R. 381, P.R. 245.
[4] Maquilacero Preliminary Margin Calculation Memo, at Attachment 1, home market program log, C.R. 301, P.R. 192

that results from a methodological decision does not meet the statutory definition of "ministerial error." *See Alloy Piping Products, Inc. v. United States*, 201 F. Supp. 2d 1267, 1285 (Ct. Int'l Trade 2002), *aff'd sub nom. Alloy Piping Products, Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284 (Fed. Cir. 2003); *Geum Poong Corp. v. United States*, 163 F. Supp. 2d 669, 677 (Ct. Int'l Trade 2001) (asserting that the phrase "any other similar type of unintentional error which the Secretary considers ministerial" in 19 C.F.R. § 351.224(f) "makes clear that intentional choices by Commerce fall outside the purview of the regulation.").

Before the Court, Nucor argues that the issue is "ministerial" in nature and constitutes an "arithmetic" error. Pl. Br. at 22. However, as discussed in Section VI.A. above, the issue raised in Nucor's belated ministerial error comments objects to Commerce's choice to include pre-POR sales data in the calculation of the cost recovery benchmark on a quarterly basis. As the proposed "correction" to the alleged "error" involves changing the universe of sales considered by Commerce and thus would be equivalent to a methodological change, it cannot be addressed as a ministerial error. *Geum Poong Corp.*, 163 F. Supp. 2d at 677.

## 2. Nucor's Allegations Were Untimely Under Commerce's Regulations

Commerce's regulation at 19 C.F.R. § 351.224(c)(2) provides that when Commerce discloses its antidumping calculations to a party, the party has five days thereafter to file comments concerning any ministerial error. Further, 19 C.F.R. § 351.224(c)(1) provides that comments concerning ministerial errors in the preliminary results of a review should be included in a party's case brief. Commerce requires that parties submit a case brief that "present{s} *all* arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results." *Nakornthai Strip Mill Pub. Co. v. United States*, 558 F. Supp. 2d 1319, 1329 (Ct. Int'l Trade 2008) (emphasis added), quoting 19 C.F.R. § 351.309(c)(2).

15

In this administrative review, Commerce released its *Preliminary Results* and the margin calculation programs on January 15, 2021. Maquilacero Preliminary Margin Calculation Memo, C.R. 301, P.R. 192. As discussed above, the alleged ministerial error regarding the inclusion of pre-POR sales data in the calculation of the cost recovery benchmark was part of Commerce's methodology in the *Preliminary Results*. Final Ministerial Error Memo at 3, P.R. 259. Nucor was put on notice of Commerce's methodology but it failed to raise any objection to the *Preliminary Results* within five days of Commerce's release of the margin program pursuant to 19 §351.224(c)(2). Nor did it file any comments on this methodological issue in its case brief pursuant to 19 § 351.224(c)(1) to cause Commerce to reconsider.  Nucor thus had a full opportunity to challenge this methodology in the *Preliminary Results*.  19 C.F.R. §§ 351.309(c), (d).  By failing to raise this argument in its case brief, Plaintiff failed to object "at the time appropriate under {Commerce's} practice," as required to exhaust administrative remedies. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

As discussed below, a failure to exhaust administrative remedies would "preclude" Plaintiff from making any arguments before this Court regarding Commerce's use of Maquilacero's pre-POR sales.  *See Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (holding that Commerce has discretion not to correct a clerical error where the error was discoverable, but not pointed out to Commerce during the time period specified in the regulations).

### 3.   Plaintiff Failed to Exhaust Its Administrative Remedies.

By statute, the Court of International Trade "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d); *see also Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998).  Courts have generally taken a "strict view" of the requirement that parties exhaust their administrative remedies before the Department of

16

Commerce in trade cases. *Corus Staal BV v. United States,* 502 F.3d 1370, 1379 (Fed. Cir. 2007). This is because "{s}imple fairness" requires "that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Dorbest*, 604 F. 3d at 1375, quoting *L.A. Tucker Truck Lines, Inc*., 344 U.S. at 37.  Section 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the {trade} court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV*, 502 F.3d at 1379.

As noted above, Commerce's regulations "specifically address the exhaustion requirement, as applied to challenges to antidumping determinations{.}" *Id.*  Those regulations "require a challenger to submit a case brief to Commerce that contains all the arguments that the submitter deems relevant{.}" *Id*. (citing 19 C.F.R. § 351.309(c)(2)).

The Federal Circuit has instructed that interested parties "must point out any ministerial errors {concerning the preliminary results of a review} in their case brief" filed with Commerce following the issuance of preliminary results. *QVD Food Co. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011) (holding that Commerce's refusal to correct an alleged ministerial error is not an reversible error when the alleged error was discoverable during earlier proceedings but was not pointed out to Commerce during the time period specified by the regulation.). "{A} ministerial error made by Commerce that was reflected in its preliminary antidumping duty determination need not be corrected when no interested party pointed out the error in a timely manner." *QVD Food*, 658 F.3d at 1328 (citing *Dorbest*, 604 F.3d at 1376-77).

*QVD Food Co. v. United States* is directly on point in the instant case. The use of Maquilacero's pre-POR sales was "squarely in play" and required exhaustion of administrative remedies. 721 F. Supp. 2d 1311, 1320-21 (Ct. Int'l Trade 2010), *aff'd* 658 F.3d 1318 (Fed. Cir.

2011).  Nucor's attempts to distinguish *QVD Food* and argue that the exhaustion doctrine does not apply is unavailing. Pl. Br. at 22-23. The Court in *Clearon* explained that the exhaustion requirement is appropriate where "{p}laintiffs unfortunately did not present . . . arguments to Commerce when they had the opportunity." *Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1362 (Ct. Int'l Trade 2011).

The exhaustion doctrine does not require that "Commerce must expressly notify interested parties any time it intends to change its methodology between its preliminary and final determination." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 913 (Fed. Cir. 2017). (holding that domestic steel producers failed to exhaust their administrative remedies before Commerce by not arguing that Commerce failed to collapse distributor into mandatory respondent in antidumping duty investigation when calculating constructed value profit).  In *Boomerang*, a case contesting Commerce's negative determination that oil country tubular goods from Saudi Arabia was sold at less than fair value, the Federal Circuit made clear that the domestic producers were required to raise that argument in their case brief to the agency.  The Federal Circuit in *Boomerang* held that exhaustion applied because the domestic producers had the opportunity to raise the argument if they "either knew or should have known that Commerce may consider those data during its calculations." *Id.*

Here, Nucor was put on notice of Commerce's choice of inclusion of pre-POR window period sales data in the calculation of the cost recovery benchmark in the margin program at the time of the *Preliminary Results*.  Nucor obscures the issue when it claims that it "raised ministerial errors present in the preliminary results in its case brief and Commerce agreed that a fix needed to be made and made a modification to the program." Pl. Br. at 24. As discussed above, record evidence demonstrates to the contrary. Not only did Commerce intentionally

include the pre-POR sales for purposes of calculating the quarterly cost recovery benchmark, the computer program remained unchanged from the *Preliminary Results* to the *Final Results*.  Final Ministerial Error Memo at 2-3, P.R. 259.

By failing to raise the argument in its case brief, Nucor failed to exhaust its administrative remedies because it knew or should have known that Commerce would use the same methodology in calculating the quarterly cost recovery benchmark in the *Final Results*. *Boomerang*, 856 F.3d at 913. Describing the ministerial error as relevant to a different issue argued in the case brief is plainly inconsistent with the record.  The fact remains that Nucor's case brief did not present *all* the arguments that, in Nucor's view, continued to be relevant to the final results. *Nakornthai*, 558 F. Supp. 2d at 1329; *see also* 19 C.F.R. § 351.309(c)(2).

Because Nucor failed to raise its methodological challenge  at the proper stage of the proceeding and instead tried to raise it under the guise of a ministerial error, Commerce's decision to reject Nucor's untimely comments was supported by the evidence on the record and in accordance with law. *QVD Food*, 658 F.3d at 1328; *see also Dorbest*, 604 F.3d, at 1376-1377.

## VII.   <u>CONCLUSION</u>

For the reasons stated above, Commerce's rejection of Plaintiff's ministerial error allegation was supported by substantial evidence and in accordance with law.  Defendant-Intervenor Maquilacero respectfully requests that this honorable Court deny Plaintiff's Motion for Judgment on the Agency Record and affirm the portions of Commerce's final results in the third administrative review of *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico* challenged by the Plaintiff.

<div style="margin-left:40%">

Respectfully submitted,

**/s/ Diana Dimitriuc Quaia**
Diana Dimitriuc Quaia
John M. Gurley
Yun Gao

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6291
Fax: (202) 857-6395

*Counsel to Maquilacero S.A. de C.V.*

</div>

April 22, 2022

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Response to Plaintiff's 56.2 Motion for Judgment on the Agency Record filed on April 22, 2022 complies with the word limitation requirement. The word count for Maquilacero's Response Brief, as computed by ArentFox Schiff LLP's word processing system is 5,714.

**/s/ Diana Dimitriuc Quaia**
Diana Dimitriuc Quaia

*Counsel to Maquilacero S.A. de C.V.*

**EXHIBIT LIST**

| Exhibit | Description |
|---------|-------------|
| Exhibit 1 | Excerpts (Attachment 1, p. 14, SAS output language regarding the universe of sales and costs used in the quarterly comparison analysis, home market program log) of Preliminary & Final Margin Calculation Memoranda |
| Exhibit 2 | Excerpts (Attachment 1, SAS output language for the cost recovery test, home market program log) of Preliminary & Final Margin Calculation Memoranda |
| Exhibit 3 | Excerpts from Attachment 1, SAS output language of home market program log regarding inclusion of Pre-POR sales for purposes of calculating quarterly FOPs) of Preliminary Margin Calculation Memorandum (lines 8715 – 8732) & Final Margin Calculation Memorandum (lines 8719 -8736) |

# EXHIBIT 1

**This Exhibit Is Not Susceptible to Public Summarization**

# EXHIBIT 2

**This Exhibit Is Not Susceptible to Public Summarization**

# EXHIBIT 3

Barcode:4076834-01 A-201-847 REV - Admin Review 9/1/2018 - 8/31/2019

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-201-847
AR: 9/1/2018 – 8/31/2019
~~Business Proprietary~~
E&C OpsII: DJG
*PUBLIC VERSION*

DATE:                    January 15, 2021

MEMORANDUM TO:           The File

THROUGH:                 Elizabeth Eastwood
                         Program Manager
                         AD/CVD Operations, Office II
                         Enforcement & Compliance

FROM:                    David Goldberger
                         Senior International Trade Analyst
                         AD/CVD Operations, Office II
                         Enforcement & Compliance

RE:                      2018- 2019 Antidumping Duty Administrative Review of Heavy-
                         Walled Rectangular Welded Carbon Steel Pipes and Tubes
                         from Mexico

SUBJECT:                 Preliminary Results Margin Calculation for Maquilacero S.A. de
                         C.V.

This memorandum transmits the Department of Commerce's (Commerce's) preliminary results
margin calculation for Maquilacero S.A. de C.V. (Maquilacero). Attachments 1 and 2 to this
memorandum consists of the comparison market and margin calculation program logs and
outputs, respectively. The public version of this memorandum does not include the contents of
Attachments 1 and 2.

Commerce used the following databases for calculating Maquilacero's margin: 1) home market
sales database, named maqhm03 (ACCESS barcode 4049514-04); 2) U.S. sales database, named
maqus02 (ACCESS barcode 3989757-04); 3) and cost of production database, named
maqcop04q (ACCESS barcode 4024824-09).

I.       **Adjustments to the Comparison Market Program**

   1.  Maquilacero reported two sets of product control numbers: CONNUMH and
       CONNUM2H. CONNUM2H is based on all nine product characteristics, while
       CONNUMH does not include FURPROCESSH (customization). We relied on
       CONNUMH in our product comparisons because none of Maquilacero's home market

Filed By: David Goldberger, Filed Date: 1/19/21 4:12 PM, Submission Status: Approved

Barcode:4076834-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

# ATTACHMENT 1

## Comparison Market SAS Program Log and Output
## Business Proprietary
### (*omitted in public version*)

Barcode:4146415-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-201-847
AR: 9/1/2018 – 8/31/2019
~~Business Proprietary~~
E&C OpsII: DJG
*PUBLIC VERSION*

DATE:                July 22, 2021

MEMORANDUM TO:       The File

THROUGH:             Elizabeth Eastwood
                     Program Manager
                     AD/CVD Operations, Office II
                     Enforcement & Compliance

FROM:                David Goldberger
                     Senior International Trade Analyst
                     AD/CVD Operations, Office II
                     Enforcement & Compliance

RE:                  2018- 2019 Antidumping Duty Administrative Review of Heavy-
                     Walled Rectangular Welded Carbon Steel Pipes and Tubes
                     from Mexico

SUBJECT:             Final Results Margin Calculation for Maquilacero S.A. de C.V.

This memorandum transmits the Department of Commerce's (Commerce's) final results margin calculation for Maquilacero S.A. de C.V. (Maquilacero).  Attachments 1 and 2 to this memorandum consists of the comparison market and margin calculation program logs and outputs, respectively.  The public version of this memorandum does not include the contents of Attachments 1 and 2.

We relied on the same databases and methodology used in the *Preliminary Results*,[1] except as discussed below.

## I.      SAS Program Changes

1.   We revised the programming language in the ME macros and margin calculation programs to refine the methodology for calculating normal value (NV) where the comparison market data is reported in two or more currencies.  The programming changes are outlined in Attachment 3.

---

[1] *See* Memorandum, "Preliminary Results Margin Calculation for Maquilacero S.A. de C.V.," dated January 15, 2021.



INTERNATIONAL
**T R A D E**
ADMINISTRATION

Barcode:4146415-01 A-201-847 REV - Admin Review 9/1/18 - 8/31/19

# ATTACHMENT 1
## Comparison Market SAS Program Log and Output
## Business Proprietary
### (*omitted in public version*)