NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| NUCOR TUBULAR PRODUCTS INC., |
| **Plaintiff,** |
| v. |
| UNITED STATES, |
| **Defendant,** |
| and |
| PRODUCTOS LAMINADOS DE MONTERREY S.A. DE C.V., PROLAMSA, INC., and MAQUILACERO S.A. DE C.V., |
| **Defendant-Intervenors.** |

Before:  Hon. Jennifer Choe-Groves, Judge

Court No. 21-00543

<u>NON-CONFIDENTIAL VERSION</u>

Business Proprietary Information Removed from Pages 6–8, 14, 15, Exhibits 1 and 2

## <u>PLAINTIFF NUCOR TUBULAR PRODUCTS INC.'S REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Enbar Toledano, Esq.
Jake R. Frischknecht, Esq.
Nicole C. Hager, Esq.

Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiﬀ Nucor Tubular Products Inc.*

Dated: May 20, 2022

Ct. No. 21-00543                                   NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................... 1

      A.   Commerce Should Not Defend, and the Court Should Not Affirm,
           A Determination Based on Material Errors ........................................... 1

      B.   Nucor Tubular Timely Raised Commerce's Material Ministerial
           Errors to its Calculations of Maquilacero's Dumping Margin ............... 4

           1.   Between the Preliminary and Final Results, Commerce
                Introduced Material Ministerial Errors to its Calculations of
                Maquilacero's Dumping Margin.................................................... 5

           2.   Nucor Tubular Submitted Timely Ministerial Error
                Comments Identifying Commerce's Newly Introduced
                Error ............................................................................................. 8

      C.   Nucor Tubular Timely Raised Commerce's Material Ministerial
           Errors to its Calculations of Prolamsa's Dumping Margin................... 12

           1.   Between the Preliminary and Final Results, Commerce
                Changed Its Currency Conversion Methodology for
                Prolamsa, Introducing New Errors ........................................... 13

           2.   Nucor Tubular Submitted Timely Ministerial Error
                Comments Identifying Commerce's Newly Introduced
                Errors........................................................................................ 15

      D.   Nucor Tubular's Complaint Satisfied USCIT Rule 8 ......................... 17

III.  CONCLUSION.......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*,
  334 F.3d 1284 (Fed. Cir. 2003)........................................................................3, 14

*ATC Tires Priv. Ltd. v. United States*,
  324 F. Supp. 3d 1355 (Ct. Int'l Trade 2018) ...................................................1, 2, 3

*ATC Tires Priv. Ltd. v. United States*,
  324 F. Supp. 3d 1355 (Ct. Int'l Trade 2018) ............................................................1

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................18

*Cap Exp., LLC v. Zinus, Inc.*,
  722 F. App'x 1004 (Fed. Cir. 2018) .......................................................................17

*Catfish Farmers of Am. v. United States*,
  37 CIT 717 (2013) ..................................................................................................11

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007)..............................................................................16

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................................................19

*Gold E. Paper (Jiangsu) Co. v. United States*,
  37 CIT 117 (2013) ..................................................................................................19

*Golden Dragon Precise Copper Tube Grp., Inc.*,
  Consol. Ct. No. 14-00116, slip op. 16-17 (Ct. Int'l Trade Feb 22, 2016) .............15

*Hor Liang Indus. Corp. v. United States*,
  337 F. Supp. 3d 1310 (Ct. Int'l Trade 2018) .........................................................11

*Hyundai Elecs. Indus. Co. v. United States*,
  29 CIT 981, 395 F. Supp. 2d 1231 (2006)........................................................2, 16

*Kaiyuan Grp. Corp. v. United States*,
  28 CIT 698, 343 F. Supp. 2d 1289 (2004) .........................................................2, 3

*Koyo Seiko Co. v. United States*,
  14 CIT 680, 746 F. Supp. 1108 (1990)....................................................................2

*LTV Steel Co. v. United States*,
    21 CIT 838, 985 F. Supp. 95 (1997) ...................................................................10

*Ningbo Dafa Chem. Fiber Co. v. United States*,
    580 F.3d 1247 (Fed. Cir. 2009)..........................................................................10

*POSCO v. United States*,
    337 F. Supp. 3d 1265 (Ct. Int'l Trade 2018) ........................................................3

*Qingdao Taifa Grp. Co. v. United States*,
    33 CT 1090, 637 F. Supp. 2d 1231 (2009) ..........................................................15

*Rood v. U.S. Sec'y of Agric.*,
    29 CIT 1075 (2005) ............................................................................................19

*Thuan An Prod. Trading and Serv. Co. v. United States*,
    348 F. Supp. 3d 1340 (Ct. Int'l Trade 2018) ......................................................18

*Torrington Co. v. United States*,
    21 CIT 1079 (1997) ..............................................................................................1

*U.S. Steel Corp. v. United States*,
    36 CIT 534 (2012) ..........................................................................................2, 12

*US Magnesium LLC v. United States*,
    72 F. Supp.3d 1341 (Ct. Int'l Trade 2015), aff'd, 839 F.3d 1023 (Fed. Cir.
    2016) ..................................................................................................................16

*Zhaoqing Tifo New Fibre Co. v. United States*,
    60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) .........................................4, 10, 15, 16

**Statutes**

19 U.S.C. § 1677b(b)(1)(B) ........................................................................................5

19 U.S.C. § 1677b(6) ................................................................................................13

**Regulations**

19 C.F.R. § 351.224(f) ..........................................................................................2, 12

19 C.F.R. § 351.224(g) ..........................................................................................3, 8

19 C.F.R. § 351.406 ....................................................................................................5

## I.   INTRODUCTION

On behalf of Nucor Tubular Products Inc. ("Nucor Tubular"), we hereby submit the following reply to the response briefs of the U.S. Department of Commerce ("Commerce") and Maquilacero S.A. de C.V. ("Maquilacero") (collectively, "Defendants") in the above-captioned appeal.  Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. Upon the Agency R. (Apr. 22, 2022), ECF No. 36 ("Commerce Br."), Resp. Br. of Def.-Intervenor Maquilacero S.A. de C.V. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Apr. 22, 2022), ECF No. 37 ("Maquilacero Br.").  No party to this appeal asserts that Commerce correctly calculated the margins for either Maquilacero or Productos Laminados de Monterrey S.A. de C.V. ("Prolamsa") in the underlying administrative review. Rather, Commerce and Maquilacero rely on faulty procedural arguments, which are not supported by the record evidence or in accordance with law, to ask the Court to overlook the plain calculation errors in the final determination—errors that are the difference between a *de minimis* determination and assigning the respondents actual dumping margins.  The Court should remand the final determination to Commerce to correct these essentially undisputed calculation errors.

## II.   ARGUMENT

### A.   Commerce Should Not Defend, and the Court Should Not Affirm, A Determination Based on Material Errors

"Commerce has an overriding obligation to calculate antidumping duty margins as accurately as possible."  *ATC Tires Priv. Ltd. v. United States*, 324 F. Supp. 3d 1355, 1362 (Ct. Int'l Trade 2018) (Choe-Groves, J.).[1]  To that end, this Court likewise "has a <u>responsibility</u> to exercise its discretion to prevent knowingly affirming a determination with errors." *Id.*; *accord Torrington Co. v. United States*, 21 CIT 1079, 1082 (1997) (remanding decision to Commerce to

---

[1]     Unless otherwise noted, all emphasis in this Brief has been added, and all internal citations, quotations, and alterations have been omitted.

correct computer programming errors, noting "the Court is loathe to affirm a determination that might be based on a questionable record"); *Koyo Seiko Co. v. United States*, 14 CIT 680, 682, 746 F. Supp. 1108, 1110 (1990) ("{I}t is axiomatic that fair and accurate determinations are fundamental to the proper administration of our dumping laws. Consequently, courts have uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination." (collecting cases)).

Thus, despite a strong interest in the finality of Commerce's decisions, Congress has "established an exception to the general principle of finality" in directing Commerce "to establish a procedure for ministerial errors by statute." *ATC Tires*, 324 F. Supp. 3d at 1362. "Ministerial errors are errors in addition, subtraction, or other arithmetic function; clerical errors that result from inaccurate copying, duplication, or the like; and any other similar types of unintentional or inadvertent errors." *Kaiyuan Grp. Corp. v. United States*, 28 CIT 698, 720, 343 F. Supp. 2d 1289, 1310 (2004); *see also* 19 C.F.R. § 351.224(f). Computer programming errors and calculation errors that result in Commerce expressing variables "in inconsistent units of measure," like the errors at issue in this appeal, are properly considered ministerial. *See, e.g.*, *U.S. Steel Corp. v. United States*, 36 CIT 534, 539 (2012) (noting agency agreement that results should be remanded to allow "correction of a certain ministerial error in computer programming that inadvertently resulted in setting {a particular field} to zero for all sales"); *Hyundai Elecs. Indus. Co. v. United States*, 29 CIT 981, 993, 395 F. Supp. 2d 1231, 1243 (2006) ("{B}ecause the calculation of Hyundai's entered value involved multiplying quantity and value variables that were stated in inconsistent units of measure, the calculation was clearly an error in addition, subtraction, or other arithmetic function, and Commerce therefore correctly regarded the miscalculation as a ministerial error.").

"It is these types of ministerial errors that Commerce must correct, especially if the error is so obvious and egregious that the failure to correct it would be an abuse of discretion and undermine the interests of justice." *Kaiyuan Grp.*, 28 CIT at 720, 343 F. Supp. 2d at 1310; *see also Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1292–93 (Fed. Cir. 2003) ("{W}hen an error is apparent (or should have been apparent) from the face of the calculation or from the final determination itself and goes uncorrected, that error, in effect, becomes a government error and, hence, a ministerial error, and the government is required to correct it."). Notably, Commerce itself considers a ministerial error "significant" when it represents the difference between imposing a dumping margin and crossing the *de minimis* threshold. 19 C.F.R. § 351.224(g).

Commerce rightly notes that, where a party fails to timely file ministerial-error allegations, Commerce may, but is not required to, consider such allegations.[2] *See* Commerce Br. at 10 (citing *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376 (Fed. Cir. 2010) (affirming Commerce's discretion not to correct ministerial errors raised "<u>years later after remand (on an unrelated issue)</u>") and *QVD Food Co. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011) (same where Commerce

---

[2]    Indeed, in situations where Commerce has discovered that it erroneously calculated dumping margins, Commerce has routinely sought a <u>voluntary</u> remand to correct such miscalculations—regardless of when the errors came to light. *See, e.g.*, Def.'s Resp. to Pl.'s Mot. for J. Upon the Agency R. at 31–32, *Nippon Steel Corp. v. United States*, No. 21-533 (Ct. Int'l Trade Apr. 29, 2022), ECF No. 34 ("DOJ *Nippon Steel* Response Brief") (requesting voluntary remand to correct "unintentional programming error" where Commerce "stated that it was using" certain revenue data, but respondent argued on appeal that "the actual computer program used by Commerce did not include all of the revenues"); *ATC Tires*, 324 F. Supp. 3d at 1363 (affirming Commerce's *sua sponte* correction of errors where Commerce discovered "{w}hile analyzing Petitioners' ministerial comments" that the agency had "made <u>other</u> inadvertent errors in its calculations"); *POSCO v. United States*, 337 F. Supp. 3d 1265, 1272 (Ct. Int'l Trade 2018) ("Commerce stated that most of POSCO's arguments were about methodological decisions rather than ministerial errors, but <u>adjusted one of the AFA rates based on an error Commerce discovered itself</u>.").

made "<u>no change</u>" to its calculations between preliminary and final results)).  But Commerce's reliance on *Dorbest* and *QVD Food* is misplaced.

For the reasons explained in Nucor Tubular's opening brief, and further explained below, Nucor Tubular timely raised the ministerial errors at issue in this appeal, and thus exhausted its administrative remedies, by (1) alerting Commerce in a timely case brief that Commerce had dummy values plugged into certain of Maquilacero's cost fields and proposing a correction, and (2) timely filing ministerial-error allegations noting Commerce's did not fully implement its attempted correction to the Maquilacero issue, introducing <u>new</u> errors in the final results, and likewise introduced <u>new</u> errors when changing its currency conversion calculations with regard to Prolamsa's expenses.  *Cf. Zhaoqing T.fo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1346 (Ct. Int'l Trade 2015) (rejecting Commerce's argument that ministerial error allegations were untimely where Commerce changed methodology between preliminary and final results; "Zhaoqing Tifo was not required to exhaust its administrative remedies, because—simply stated— at the time of the Preliminary Results, there was nothing to exhaust").

### B.    <u>Nucor Tubular Timely Raised Commerce's Material Ministerial Errors to its Calculations of Maquilacero's Dumping Margin</u>

Neither Commerce nor Maquilacero denies that there are errors in Commerce's final results. Defendants, however, wrongly claim that these errors arose in Commerce's preliminary results and thus need not be corrected at this juncture.  *See* Commerce Br. at 11–15; Maquilacero Br. at 14–16.  That is both legally incorrect, for the reasons explained above, and also factually incorrect as the record below confirms.  Because Commerce introduced new errors between the preliminary and final results, the errors impacting Commerce's final results did not exist when Nucor Tubular filed its case brief.

> **1.    Between the Preliminary and Final Results, Commerce Introduced Material Ministerial Errors to its Calculations of Maquilacero's Dumping Margin**

Commerce's computer program that calculates a company's dumping margin requires that all reported sales have costs.  If there are sales reported without corresponding costs, Commerce can ask a respondent to report costs for those sales, or it can direct its computer program to estimate or construct costs for those sales based on other cost information the company has already submitted.  The cost of a product (whether sold in the United States or in the comparison market) is used throughout Commerce's dumping calculations such that a cost error can, and likely will, have downstream effects in other parts of Commerce's programming and calculations.

One such downstream application is the sales-below-cost test.  When calculating normal value, Commerce disregards sales that were made below cost as not reflective of normal value. *See* 19 U.S.C. § 1677b(b)(1)(B); 19 C.F.R. § 351.406.  Normally, Commerce considers costs on an annual basis, meaning that, if a product is sold for less than it costs to make the product on a weighted-average annualized basis in the comparison market, Commerce disregards these sales. *See, e.g.*, Preliminary Decision Memorandum accompanying *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 86 Fed. Reg. 7,067 (Dep't Commerce Jan. 26, 2021) (prelim. results of antidumping duty admin. rev.; 2018–2019) at 18, P.R. 191.  When costs are volatile, however, such that they fluctuate largely throughout the year, Commerce may use a shorter cost-averaging period, such as a quarterly cost methodology. *See id.*  When Commerce conducts the sales-below-cost test on a quarterly basis, sales for a particular quarter are compared against costs for that same quarter.  In addition, Commerce conducts a separate cost-recovery test to determine if the company could reasonably recover costs over the course of the period of review ("POR"), even if the product was sold below cost in the relevant quarter.  In other words, sales-

**Business Proprietary Information Has Been Deleted**

below-cost becomes a two-part test when using the quarterly method. To calculate its cost-recovery benchmark, Commerce uses costs from all quarters with reported sales (including, important here, quarters with [                ] and costs for U.S. sales).

In this proceeding, Maquilacero [                                    ]. Specifically, Maquilacero reported [

                ]. Letter from Arent Fox LLP to Sec'y Commerce, re: *Maquilacero S.A. de C.V.'s Third Supplemental Section D Questionnaire Response* (June 19, 2020) at 2–3, C.R. 175–179, P.R. 129. Accordingly, in its preliminary calculations, Commerce calculated [                ] for those sales, which should have been based on costs Maquilacero reported for other sales. Commerce Memorandum, re: *Preliminary Results Margin Calculation for Maquilacero S.A. de C.V.* (Jan. 15, 2021) at Attachment I, lines 8937–8944, C.R. 301, P.R. 192. Instead, as Nucor Tubular explained in its case brief, Commerce left in dummy variables where Maquilacero's quarterly costs of hot-rolled coil were supposed to go. *Id.*; *see also* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Case Brief* (Mar. 8, 2021) at 49–52, C.R. 375–376, P.R. 231 ("Nucor Tubular's Case Brief"). This was a major error given that hot-rolled coil [

                ] to produce subject pipe and tube. The error caused a domino effect in Commerce's preliminary calculations that led to an understated dumping margin: because of the initial error, the costs for Maquilacero's pre-POR U.S. sales were artificially deflated; these artificially deflated costs were then included in the cost-recovery benchmark; and because the cost-recovery benchmark was lower than it should have been, sales that would otherwise have failed the cost-recovery prong of the sales-below-cost test were improperly used to calculate normal value. As a result, normal value was also lower than it should have been.

**Business Proprietary Information Has Been Deleted**

In its case brief, Nucor Tubular described the problem and provided an obvious solution: replace the dummy variables in Commerce's calculations with Maquilacero's average quarterly hot-rolled coil costs.  Nucor Tubular's Case Brief at 49–52.  Doing so would have fixed the [          ] cost issue, which would have fixed the deflated cost-recovery benchmark, which would have fixed the understated normal value.  Even Maquilacero accepted the premise of the problem as Nucor Tubular described it, and merely proposed an alternative way to calculate its costs.  Letter from Arent Fox LLP to Sec'y Commerce, re: *Maquilacero S.A. de C.V.'s Rebuttal Brief* (Mar. 17, 2021) at 3–6, C.R. 378–379, P.R. 236 ("Maquilacero's Rebuttal Brief").

In its final results, Commerce did not accept either Nucor Tubular or Maquilacero's proposed solutions.  Commerce explained that, instead of plugging in actual costs for pre-POR sales, Commerce would tell its computer program to disregard the dummy costs and rely only on sales and costs made within the POR.  Commerce stated this would solve the issue because it believed the dummy variables would only be used in two scenarios, including home market sales made before the POR.  Issues and Decision Memorandum accompanying *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico*, 86 Fed. Reg. 41,448 (Dep't Commerce Aug. 2, 2021) (final results of antidumping duty admin. rev.; 2018-2019) at 10–11 n.51, P.R. 243 ("Final I&D Memorandum").  Commerce was mistaken.  As noted above, Maquilacero [

                    ].  Those sales continued to be used to calculate the cost-recovery benchmark.  And sales, as also noted above, must have costs.  Accordingly, when the home market program looked for costs for those pre-POR sales to use in its cost-recovery benchmark, the original dummy variables were gone, which resulted in the program now plugging in zeros.  Thus, whereas the hot-

**Business Proprietary**
                          **Information Has Been Deleted**

rolled coil costs for pre-POR sales were artificially deflated in the preliminary results, in the final

results they were entirely costless, which further depressed the cost-recovery benchmark.

Notably, Commerce also incorrectly believed that its original "programming error" of

relying on the dummy values had no effect on Maquilacero's margin.  Final I&D Memorandum at

10–11 n.51.  That, too, was inaccurate.  Had Commerce used actual costs instead of dummy

variables, Maquilacero's weighted average dumping margin would have been [     ]% rather than

the *de minimis* margin assigned in the final results.  *See* **Exhibit 1**; *cf.* 19 C.F.R. § 351.224(g)

(defining a "significant material error" as one that differentiates between a weighted-average

dumping margin and a zero or *de minimis* margin).  Commerce's <u>new</u> error (*i.e.*, plugging in zeros

in lieu of the dummy variables) likewise resulted in an erroneously *de minimis* dumping margin.

> ### 2.     Nucor Tubular Submitted Timely Ministerial Error Comments Identifying Commerce's Newly Introduced Error

Nucor Tubular submitted timely ministerial error comments explaining that Commerce had

not fully implemented its intended methodology and thus introduced a new error in the process.

Nucor Tubular did not challenge Commerce's methodology, which was ostensibly to cease relying

on pre-POR costs and sales.  But Nucor Tubular explained that, to effectuate that methodology,

Commerce needed to ensure that <u>every</u> part of its computer program ceased to rely on pre-POR

costs and sales.  In other words, Commerce needed to eliminate the pre-POR quarter ("quarter 0")

from its computer program, so that the cost-recovery benchmark did not continue to rely on these

values.  Letter from Wiley Rein LLP to Sec'y Commerce, re: *Ministerial Error Comments* (Aug.

2, 2021) at 1–7, C.R. 392, P.R. 253 ("Nucor Tubular's Ministerial Error Comments").  In response,

Commerce did not dispute that an error existed in Maquilacero's final calculations.  *See* Commerce

Memorandum, re: *Ministerial Error Allegations* (Aug. 20, 2021) at 1–6, P.R. 259.  But Commerce

rejected Nucor Tubular's allegation as untimely because the agency had relied on pre-POR U.S. sales in its preliminary results, which Nucor Tubular had not challenged at the time.

In the same vein, Defendants raise two primary challenges to Nucor Tubular's appeal. *First*, Defendants argue that Nucor Tubular's identification of Commerce's error is untimely because Commerce included pre-POR sales in the cost-recovery benchmark in both the preliminary and final results without earlier objection. Maquilacero Br. at 10; Commerce Br. at 12. *Second*, Maquilacero separately argues that Nucor Tubular's ministerial error comments speak to a methodological, rather than a ministerial, issue. Defendants misconstrue Nucor Tubular's arguments and are wrong on both counts.

*First*, Nucor Tubular timely raised the relevant issues at both the preliminary and final phases. Defendants are correct that Commerce included pre-POR sales in the cost-recovery benchmark in both the preliminary and final results. And Defendants are also correct that Nucor Tubular did not object to the universe of sales included in that benchmark prior to the final results. Maquilacero Br. at 11; Commerce Br. at 12. But they are wrong to suggest that Nucor Tubular sat on its hands with regard to the relevant issues. At the preliminary phase, Nucor Tubular clearly identified the then-problem with Commerce's calculation of Maquilacero's costs, which was the use of dummy variables rather than real data for certain sales. Nucor Tubular's Case Brief at 49–52. And Nucor Tubular proposed an alternative to resolve this issue: replace the dummy variables with Maquilacero's actual costs. *Id.* Had Commerce accepted Nucor Tubular's proposal, the issue of Commerce's computer program plugging in zeros for the missing costs would never have arisen, as Maquilacero concedes. Maquilacero Br. at 6. It is only because Commerce implemented a different approach between the preliminary and final phases, and implemented it incompletely, that the zero values in Maquilacero's pre-POR sales became an issue.

In other words, before the final results, there was no reason to object to Commerce's inclusion of pre-POR sales in the calculation of the cost-recovery benchmark: Nucor Tubular's proposed solution would have obviated the issue entirely, and Nucor Tubular could not have foreseen that Commerce would introduce a <u>new</u> error between the preliminary and final results in the course of its own re-calculations. *Cf. Zhaoqing Tifo*, 60 F. Supp. 3d at 1346[3] ("{Defendants} seek to make much of the fact that Commerce included coal in the factors of production database at the Preliminary results stage.... What {Defendants} fail to appreciate, however, is the significance of Commerce's decision to change the financial statements on which it relied for calculating surrogate financial ratios between the Preliminary results … and the Final Results{.}"); *LTV Steel Co. v. United States*, 21 CIT 838, 869, 985 F. Supp. 95, 120 (1997) (finding respondent did not have an opportunity to challenge Commerce's methodology until "Commerce articulated that methodology and applied it to the program at issue"). Nucor Tubular's case brief, alerting Commerce to an error in its calculation of Maquilacero's costs and proposing a viable solution, adequately put the agency on notice of the problem. *See, e.g.*, *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1259 (Fed. Cir. 2009) (finding issue preserved where Commerce

---

[3]  *Zhaoqing Tifo* is instructive. In *Zhaoqing Tifo*, this Court considered whether the doctrine of exhaustion barred certain claims that arose after Commerce changed its methodology between the preliminary and final results of an administrative review. 60 F. Supp. 3d at 1340. Specifically, Commerce changed the financial statements on which it relied to value a company's factors of production. *Id.* at 1338. Because the replacement financial statements did not break out certain costs, Commerce explained in the final results that it did not separately account for those costs. *Id.* But Commerce's calculations revealed that, in certain circumstances, that was not the case. *Id.* at 1339. Noting the disconnect between Commerce's stated intent and its actual calculations, Zhaoqing Tifo filed ministerial error comments alerting Commerce to the issue. *Id.* On appeal, this Court rejected Commerce's argument that the alleged error was "methodological" rather than "ministerial," *id.*, and likewise rejected the argument that it was not preserved because the later-used set of financial statements had been on the record from the beginning, *id.* at 1346 ("Zhaoqing Tifo was not required to exhaust its administrative remedies, because—simply stated—at the time of the Preliminary Results, there was nothing to exhaust.").

had the opportunity to consider party's "alternative methodology" in course of agency proceeding);

*see also Hor Liang Indus. Corp. v. United States*, 337 F. Supp. 3d 1310, 1325 (Ct. Int'l Trade 2018)

(finding, if plaintiffs had filed a rebuttal brief "presenting arguments to the agency as to how it

<u>should</u> determine the all-others rate," such an argument "would clearly" have been enough to

preserve ministerial error allegations).  Indeed, Commerce itself timely acknowledged the original

problem when it attempted to fix it in its final results.  Nucor Tubular was under no obligation to

foretell that Commerce would not accept the proposed solution, come up with an alternative

solution, but then not fully implement it in the agency's computer program.

*Second*, at the final phase, Nucor Tubular timely and appropriately flagged Commerce's

ministerial error.   Nucor Tubular explained that, in response to Nucor Tubular's case brief,

Commerce attempted to implement its own preferred methodology, which was to instruct the

program to ignore the problematic dummy variables and to rely only on POR costs and sales.  Final

I&D Memorandum at 10–11 n.51.  And Nucor Tubular did not object to the methodology.  But

Nucor Tubular pointed out that to make the correction Commerce intended, Commerce needed to

ensure that its program stopped relying on pre-POR costs and sales throughout its calculations—

and not only in the two scenarios that Commerce had identified.  Here, that meant excluding sales

that matched to the dummy variables from the cost-recovery benchmark.

Contrary to Maquilacero's contention, this is not a methodological problem but rather a

ministerial error in carrying out Commerce's stated methodology.[4]  *See* Maquilacero Br. at 14–15;

*cf. Catfish Farmers of Am. v. United States*, 37 CIT 717, 745 n.19 (2013) (rejecting Commerce's

argument that challenge was methodological rather than ministerial when Commerce decided on

---

[4]     Even if the error is not "ministerial," the Court should nevertheless remand the final results
because the 0% margin is based on erroneous math and thus not supported by substantial evidence.

its own to change the calculation at issue between the preliminary and final results).  By way of analogy, there are multiple ways to calculate the circumference of a circle.  Circumference can be stated as "2π(r)," where "r" refers to the circle's radius.  Or, alternatively, circumference can be stated as "π(d)," where "d" refers to the circle's diameter.  The choice of which formula to use is a methodological decision.  But once that decision is made, calculating circumference correctly simply requires accurately plugging in the relevant variables.  If the wrong variables are plugged in, or if the formula is incorrectly written, the fault is not with the chosen methodology but rather reflects a clerical/mathematical error.  The issue, in other words, is ministerial.  *See* 19 C.F.R. § 351.224(f).  Here, Commerce gave its computer program erroneous (or, more accurately, incomplete) instructions to effectuate an otherwise viable methodology.  As a result, the issue here was likewise ministerial.  *See, e.g.*, *U.S. Steel Corp.*, 36 CIT at 539 (noting agency agreement that results should be remanded to allow "correction of a certain ministerial error in computer programming (that inadvertently resulted in setting {a particular field} to zero for all sales").

For the reasons above, Maquilacero's final argument, that Nucor Tubular raised a substantively <u>different</u> issue/solution in its ministerial error allegations from its case brief, misses the mark.  *See* Maquilacero Br. at 12–14.  The <u>way</u> that Commerce addressed the error identified in Nucor Tubular's case brief is precisely what caused the different, but related, error in the final results.  Because Nucor Tubular appropriately raised each set of issues with regard to Maquilacero's costs, at the specific time that they arose, Commerce was wrong to reject Nucor Tubular's ministerial error allegations as untimely.

### C.  <u>Nucor Tubular Timely Raised Commerce's Material Ministerial Errors to its Calculations of Prolamsa's Dumping Margin</u>

Commerce argues that Nucor Tubular was likewise foreclosed from raising as ministerial errors miscalculations in Prolamsa's home market price computations because the errors were

purportedly discoverable after the preliminary results.  Commerce Br. at 15 ("The fact that part of the programming language was changed does not give Nucor … another bite at the apple when the specific issue was apparent in the preliminary results.").  But once again, there was no apple to bite at the preliminary stage because the errors were introduced by Commerce's extensive revamp of the currency conversion in the final determination.  Commerce's defense of undisputed conversion errors on formulistic, and incorrect, procedural grounds should be denied.

      1.     **Between the Preliminary and Final Results, Commerce Changed Its Currency Conversion Methodology for Prolamsa, Introducing New Errors**

To calculate home market price, which is used to compute normal value, Commerce takes into account various expenses, such as packing or freight expenses, to ensure that U.S.-to-home market price comparisons are made on an apples-to-apples basis.  *See* 19 U.S.C. § 1677b(6).  When requesting home market sales data, Commerce directs respondents to report expenses in the currency in which they are incurred and later converts those expenses to one uniform currency when performing its calculations.  *See, e.g.*, Antidumping Request for Information, *Heavy Walled Rectangular Welded Carbon Steel Pipe and Tube from Mexico* (Dec. 19, 2019) at G-4, P.R. 23.

Here, Prolamsa reported some expenses in U.S. dollars, some in Mexican pesos, and some in both dollars and pesos.  In its preliminary results, Commerce converted, expense by expense, each of Prolamsa's expenses that were reported in dollars into pesos so that, at the point the computer calculated home market net price, the figure was universally derived from pesos.  Commerce Memorandum, re: *Preliminary Results Sales Calculations for Productos Laminados de Monterrey S.A. de C.V.* (Jan. 15, 2021) at Attachment II, lines 9604–9645, C.R. 304, P.R. 196 ("Prolamsa Preliminary Calculation Memo").  Commerce later converted home market price from pesos to dollars to facilitate its subsequent calculations.  *Id.* at Attachment II, lines 9605–9639.

**Business Proprietary Information Has Been Deleted**

In the final results, Commerce *sua sponte*, and without warning, changed its methodology. Specifically, Commerce opted to calculate Prolamsa's home market net price in dollars instead of pesos. Commerce Memorandum, re: *Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.* (July 22, 2021) at 2, Attachment II, line 9685, Attachment IV, C.R. 391, P.R. 250 ("Prolamsa Final Calculation Memo"); *see also* Pl. Nucor Tubular Products Inc.'s Mem. in Supp. of Rule 56.2 Mot. for J. on the Agency R. at Exhibit 3 (Feb. 14, 2022), ECF No. 33 ("Nucor Tubular's Opening Br.") (highlighting the change in methodology in Prolamsa's calculation memorandum). In carrying out the change, Commerce introduced two new errors into its calculations. *First*, Commerce failed to convert home market <u>packing</u> expenses to dollars. As a result, Prolamsa's costs were expressed in different currencies (pesos for packing expenses and dollars for everything else), resulting in a mathematically erroneous home market price. Prolamsa Final Calculation Memo at Attachment II, line 9724. *Second*, Commerce took the newly calculated home market price (now expressed in dollars) and continued to multiply it by the pesos-to-dollars currency conversion ratio, as it had in its preliminary determination. *Id.* at Attachment II, line 10030. In other words, Commerce neglected to remove the final step of its original analysis, thereby <u>doubly</u> applying the pesos-to-dollars conversion. *Id.*

As a result of these errors, Commerce erroneously assigned Prolamsa a [  ]% dumping margin, instead of the [    ]% margin that would have resulted from accurate conversions. *Compare* **Exhibit 2**, *with* Prolamsa Final Calculation Memo at 6. Notably, [  ]% is not even the dumping margin that resulted from Commerce's erroneous math—the actual calculated dumping margin for Prolamsa was [     ]%, which demonstrates the magnitude and obviousness of Commerce's ministerial error. *See Alloy Piping*, 334 F.3d at 1292–93 (explaining that Commerce has an obligation to fix errors that are apparent, or should have been apparent, from the face of its

**Business Proprietary**
                    **Information Has Been Deleted**

calculations).  Commerce's final results assigned Prolamsa a [  ]% rate because the agency does

not assign [                    ].

### 2.    Nucor Tubular Submitted Timely Ministerial Error Comments Identifying Commerce's Newly Introduced Errors

Nucor Tubular alerted Commerce to its conversion errors at the first possible opportunity.

In particular, Nucor Tubular filed timely ministerial error comments notifying Commerce that, in

the course of changing its currency conversion methodology, Commerce introduced two obvious

and material mathematical errors.  *See* Nucor Tubular's Ministerial Error Comments at 1–7.  Once

again, Commerce contends that Nucor Tubular's comments—though correct—should be

disregarded because "Commerce used the same programming language with the same currency

conversion variables" in both the preliminary and final results, and Nucor Tubular "did not raise

any concerns regarding currency conversion in its case brief."  Commerce Br. at 14.  But given

Commerce's change of methodology between the preliminary and final results, introducing new,

unforeseeable errors, Commerce's position is simply not true.  *See* Prolamsa Final Calculation

Memo at Attachment IV (underline highlighting the changes to Commerce's currency conversions from the

preliminary to the final determination) (provided in Nucor Tubular's Opening Br. at Exhibit 3).

Commerce argues, essentially, that Nucor Tubular's "administrative case brief should have

anticipated the determinations that Commerce reached in the Final Results.  But the law does not

mandate that litigants be prescient."  *Zhaoqing T. fo*, 60 F. Supp. 3d at 1349; *see also Golden

Dragon Precise Copper Tube Grp., Inc.*, Consol. Ct. No. 14-00116, slip op. 16-17 at 6 (Ct. Int'l

Trade Feb 22, 2016).  To the contrary, where Commerce changes its methodology between the

preliminary and final results, a party cannot be faulted for failing to anticipate a resulting issue

before the final results.  *See Qingdao Ta. fa Grp. Co. v. United States*, 33 CIT 1090, 1093, 637 F.

Supp. 2d 1231, 1236 (2009) (holding a party "may seek judicial review of an issue that it did not

raise in a case brief if Commerce did not address the issue until its final decision, because … the party would not have had a full and fair opportunity to raise the issue at the administrative level"), *aff'd*, 467 F. App'x 887 (Fed. Cir. 2012); *see also US Magnesium LLC v. United States*, 72 F. Supp. 3d 1341, 1358 (Ct. Int'l Trade 2015), *aff'd*, 839 F.3d 1023 (Fed. Cir. 2016) (finding, because Commerce changed methodology "between the draft remand results and the final Remand Results, Tianjin cannot be faulted for not exhausting its administrative remedies"); *cf. Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007) ("This is not a case, for example, in which … the agency changed its position … after the party's case brief would have been filed.").

Here, the errors that Nucor Tubular identified in the final results plainly arose from Commerce's change in methodology.  Commerce is correct that it used the same programming language to convert home market price from pesos to dollars in the preliminary results, but at that point in time, it was appropriate to do so—home market price had been calculated in pesos and thus needed to be converted to dollars.  Using the <u>same</u> conversion on a home market price that had already been expressed in dollars is plainly erroneous.  Commerce's argument that Nucor Tubular should have somehow anticipated this error after the preliminary results simply does not hold water.  *See Zhaoqing Tifo*, 60 F. Supp. 3d at 1349.  Nucor Tubular's ministerial error comments with regard to Commerce's miscalculations were thus appropriate and timely.  *See Hyundai Elecs. Indus. Co.*, 29 CIT at 993, 395 F. Supp. 2d at 1243 (classifying computations carried out in inconsistent units of measure as ministerial errors).

Notably, Commerce's brief focuses on the pre-existing pesos-to-dollars formula, and does not appear to address the separate mixed-currency issue at all.  Throughout, Commerce's brief refers to a single "error" with respect to Prolamsa.  *See, e.g.*, Commerce Br. at 14 (arguing "the alleged error was evident, and therefore discoverable"); *id.* at 15 ("the specific error Nucor refers

to was discoverable in the preliminary results").  Commerce has thus waived any defense of the separate error introduced between the preliminary and final results, relating to the mixed conversion of Prolamsa's expenses.  *See, e.g.*, *Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1009 (Fed. Cir. 2018) (recognizing general principle that "{i}n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").  But, in any event, it is clear that this issue could not have been raised at the preliminary stage, when Commerce correctly converted each expense individually into a single currency.  Commerce's failure to convert one set of expenses, in the final results, from pesos to dollars was timely raised.

Contrary to Commerce's contention, Prolamsa never "urged Commerce to reject Nucor's comments as untimely filed." *See* Commerce Br. at 5.  Indeed, Prolamsa filed comments that fundamentally agreed with Nucor Tubular's ministerial error allegation and simply proposed an alternative methodology to address them.  Letter from White & Case LLP to Sec'y Commerce, re: *Response to Ministerial Error Comments* (Aug. 6, 2021) at 1–4, C.R. 393, P.R. 256.  As noted in its opening brief, Nucor Tubular has no objection to Prolamsa's proposal as another way to correct Commerce's errors.  Nucor Tubular's Opening Br. at 5.  Prolamsa did not file a response brief defending Commerce's final results.

### D.    **Nucor Tubular's Complaint Satisfied USCIT Rule 8**

As a final aside, Defendants assert that Nucor Tubular's complaint did not challenge the <u>results</u> underlying Nucor Tubular's ministerial error allegations, and only challenged Commerce's decision not to accept those allegations.  Commerce Br. at 17; Maquilacero Br. at 2.  In other words, Defendants argue that Nucor Tubular filed a complaint challenging Commerce's decision not to accept its ministerial error allegations—without putting Commerce on notice that Nucor Tubular

believes its ministerial error allegations are correct.  That does not follow, and Nucor Tubular's complaint satisfies this Court's notice pleading requirements.

A complaint is sufficient if it adequately notifies the defendant of what the claim is and the grounds upon which it rests.  USCIT R. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "{a}s long as the complaint contains a reference to the relevant administrative determination, a statement of the issues presented, and a demand for judgment, the complaint provides Defendant with sufficient notice." *Thuan An Prod. Trading and Serv. Co. v. United States*, 348 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2018).

Here, Nucor Tubular's complaint clearly articulated the errors underlying Commerce's final results.  The complaint described Commerce's preliminary results, in which Commerce (1) erroneously calculated normal value for Macquilacero by plugging in inappropriate cost values, and (2) calculated Prolamsa's home market adjustments in Mexican pesos without issue.  Compl. ¶ 7 (Sept. 27, 2021), ECF No. 6.  The complaint then described Nucor Tubular's case brief, identifying the Maquilacero issue and suggesting that Commerce replace the dummy values used with actual costs.  *Id.* ¶ 8.  It also described Commerce's resulting recognition that it did "incorrectly assign{} sequential values, rather than using Maquilacero's reported quarterly {hot-rolled coil} price data," and decision not to accept Nucor Tubular's proposed fix but to use a differently methodology that introduced a different set of issues.  *Id.* ¶ 9.  The complaint further described Commerce's decision in the final results to change the way it calculated Prolamsa's home market prices, introducing still more errors.  *Id.* ¶ 10.  And it finally described Nucor Tubular's submission of timely ministerial error comments with regard to both concerns, which Commerce erroneously rejected.  *Id.* ¶¶ 11–12.

Commerce cannot genuinely assert that it was not on notice that Nucor Tubular takes issue with the errors identified in its ministerial error allegations and believes those errors require redress. To the contrary, by arguing in Counts I and II that Commerce was wrong to reject Nucor Tubular's ministerial error comments, Nucor Tubular necessarily reiterated the correctness of its ministerial error allegations. *Cf. Rood v. U.S. Sec'y of Agric.*, 29 CIT 1075, 1077 (2005) ("This Court acknowledges the axiom that the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

Nevertheless, should the Court have any concerns regarding the sufficiency of Nucor Tubular's complaint, Nucor Tubular respectfully seeks leave to amend it to make clear that Nucor Tubular appeals from both Commerce's decision to reject its ministerial error allegations and, thus, the ministerial errors that underlie them. The Court's rules provide that "{t}he court should freely give leave when justice so requires." USCIT R. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given."). And the Court has recognized that such leave may be appropriate where the parties have in fact had an opportunity to brief the relevant issues and thus amendment poses no real prejudice. *See, e.g.*, *Gold E. Paper (Jiangsu) Co. v. United States,* 37 CIT 117, 119 (2013) (expressing doubt that amendment is required where all parties briefed the issue, but allowing it because the rules instruct a court to permit amendment liberally).

## III.     **CONCLUSION**

Because Commerce's Final Results are rendered inaccurate by material ministerial errors, which Nucor Tubular timely raised and Commerce wrongly disregarded, Nucor Tubular respectfully requests this Court remand the Final Results to Commerce with instructions to correct the errors in calculation.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Enbar Toledano, Esq.
Jake R. Frischknecht, Esq.
Nicole C. Hager, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaint\u0001f Nucor Tubular Products Inc.*

Dated: May 20, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Nucor Tubular Products Inc.'s Reply Brief in Support of Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 6,330 words.

*/s/ Robert E. DeFrancesco, III*
(Signature of Attorney)

  Robert E. DeFrancesco, III  
(Name of Attorney)

  Nucor Tubular Products Inc.  
(Representative Of)

  May 20, 2022  
(Date)

# EXHIBIT 1

# ENTIRE EXHIBIT NOT CAPABLE OF PUBLIC SUMMARY

# EXHIBIT 2

# ENTIRE EXHIBIT NOT CAPABLE OF PUBLIC SUMMARY