Slip Op. 23-6

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR TUBULAR PRODUCTS INC., | |
|     Plaintiff, | |
| v. | |
| UNITED STATES, | **Before:  Jennifer Choe-Groves, Judge** |
|     Defendant, | **Court No. 21-00543** |
| and | |
| PRODUCTOS LAMINADOS DE MONTERREY S.A. DE C.V., PROLAMSA, INC., MAQUILACERO S.A. DE C.V., | |
|     Defendant-Intervenors. | |

## <u>OPINION AND ORDER</u>

[Remanding the final results of the administrative review by the U.S. Department of Commerce in the antidumping duty investigation of heavy walled rectangular welded carbon steel pipes and tubes from Mexico.]

Dated: January 18, 2023

<u>Alan H. Price</u>, <u>Robert E. DeFrancesco, III</u>, <u>Jake R. Frischknecht</u>, <u>Enbar Toledano</u>, and <u>Nicole C. Hager</u>, Wiley Rein LLP, of Washington, D.C., for Plaintiff Nucor Tubular Products Inc.

<u>Claudia Burke</u>, Assistant Director, and <u>Kara M. Westercamp</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of

Washington, D.C., for Defendant United States.  With them on the brief were
Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M.
McCarthy, Director.  Of Counsel on the brief was Ayat Mujais, Attorney,
International Office of the Chief Counsel for Trade Enforcement & Compliance,
U.S. Department of Commerce.

David E. Bond, Allison J.G. Kepkay, and C. Alejandro Dilley, White & Case LLP,
of Washington D.C., for Defendant-Intervenors Productos Laminados de
Monterrey, S.A. de C.V. and Prolamsa, Inc.

Diana Dimitriuc Quaia, John M. Gurley, and Yun Gao, ArentFox Schiff LLP, of
Washington, D.C., for Defendant-Intervenor Maquilacero S.A. de C.V.

Choe-Groves, Judge: This action concerns the import of heavy walled

rectangular welded carbon steel pipes and tubes from Mexico, subject to the final

affirmative determination in an antidumping duty investigation by the U.S.

Department of Commerce ("Commerce").  Heavy Walled Rectangular Welded

Carbon Steel Pipes and Tubes from Mexico ("Final Results"), 86 Fed. Reg. 41,448

(Dep't of Commerce Aug. 2, 2021) (final results of antidumping duty

administrative review; 2018–2019); see also Issues and Decision Mem. for the

Final Results of the Antidumping Duty Administrative Review of Heavy Walled

Rectangular Welded Carbon Steel Pipes and Tubes from Mexico ("Final IDM"),

PR 243.

Before the Court is Plaintiff Nucor Tubular Products Inc.'s Rule 56.2

Motion for Judgment on the Agency Record and Memorandum in Support, filed by

Plaintiff Nucor Tubular Products, Inc. ("Nucor"), challenging Commerce's Final

Results.  Pl.'s R. 56.2 Mot. J. Agency R. ("Plaintiff's Motion" or "Pl.'s Mot."),

ECF No. 32; Pl.'s Mem. Supp. R. 56.2 Mot. J. Agency R. ("Pl.'s Br."), ECF Nos.

33, 34.  Defendant United States ("Defendant") and Defendant-Intervenor

Maquilacero S.A. de C.V. ("Maquilacero" or "Defendant-Intervenor") both

submitted response briefs.  Def.'s Resp. Opp'n Pl.'s R. 56.2 Mot. J. Agency R.

("Def.'s Resp. Br."), ECF No. 36; Def.-Interv.'s Resp. Opp'n Pl.'s R. 56.2 Mot. J.

Agency R. ("Def.-Interv.'s Resp. Br."), ECF Nos. 37, 38.  Nucor submitted a reply

to Defendant and Defendant-Intervenor's briefs.  Pl.'s Reply Br. Supp. R. 56.2

Mot. J. Agency R. ("Pl.'s Reply Br."), ECF Nos. 41, 42, 43.

The Court reviews Commerce's determination to reject Nucor's ministerial

error comments as untimely regarding Maquilacero and Productos Laminados de

Monterrey S.A. de C.V. ("Prolamsa").  For the reasons discussed below, the Court

concludes that Commerce's decision to reject Nucor's ministerial error comments

as untimely is not in accordance with the law and remands the <u>Final Results</u> to

Commerce.

## BACKGROUND

Nucor challenges Commerce's rejection of Nucor's ministerial error

comments as untimely and Commerce's affirmative determination in the <u>Final</u>

<u>Results</u>.  Specifically, Nucor argues that Commerce's calculations in the build-up

of normal value contained errors that resulted in incorrect 0% dumping margins for

both Maquilacero and Prolamsa.  Pl.'s Br. at 1.  Regarding Maquilacero, Nucor

alleges that Commerce included in its normal value calculation sales that were

made below cost, contrary to 19 U.S.C. § 1677b(b)(1) and Commerce's standard

practice.  Id.  Regarding Prolamsa, Nucor alleges that Commerce changed its

calculation program, and in doing so failed to accurately convert a variable from

pesos to dollars, thus violating 19 U.S.C. § 1677b-1.  Id.  Nucor provided

ministerial error comments to Commerce regarding each allegedly erroneous

calculation, but Commerce dismissed Nucor's comments as untimely.  Id.

Commerce published its final determination in the antidumping duty

investigation of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes

from Mexico on July 21, 2016.  Heavy Walled Rectangular Welded Carbon Steel

Pipes and Tubes From Mexico, 81 Fed. Reg. 47,352 (Dep't of Commerce July 21,

2016) (final determination of sales at less than fair value).  Commerce published its

antidumping duty order in the Federal Register.  Heavy Walled Rectangular

Welded Carbon Steel Pipes and Tubes From the Republic of Korea, Mexico, and

the Republic of Turkey, 81 Fed. Reg. 62,865 (Dep't of Commerce Sept. 13, 2016)

(antidumping duty orders).

After receiving requests to conduct administrative reviews of the relevant

antidumping order, Commerce initiated an administrative review of the

antidumping duty order covering hot water return pipe and tube from Mexico.

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84

Fed. Reg. 61,011 (Dep't of Commerce Nov. 12, 2019).  Commerce selected

Maquilacero and Prolamsa as mandatory respondents.  See Commerce

Memorandum, re: Respondent Selection (Dec. 19, 2019) at 1, PR 21, CR 5.

Commerce published the preliminary results and supporting calculations.  Heavy

Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico

("Preliminary Results"), 86 Fed. Reg. 7067 (Dep't of Commerce Jan. 26, 2021)

(preliminary results of antidumping duty administrative review; 2018–2019); see

also Prelim. Decision Mem. accompanying Heavy Walled Rectangular Welded

Carbon Steel Pipes and Tubes from Mexico, 86 Fed. Reg. 7,067 (Jan. 26, 2021)

("Prelim. DM"), PR 191; see also Commerce Memorandum, re: Preliminary

Results Margin Calculation for Maquilacero S.A. de. C.V. (Jan. 15, 2021), PR 192,

CR 301; see also Commerce Memorandum, re: Preliminary Results Sales

Calculations for Productos Laminados de Monterrey S.A. de C.V. (Jan. 15, 2021),

PR 196, CR 304; see also Commerce Memorandum, re: Cost of Production and

Constructed Value Calculation Adjustments for the Preliminary Results –

Maquilacero S.A. de C.V. (Jan. 15, 2021), PR 197, CR 309.

　　　Maquilacero and Nucor each submitted an administrative case brief.  Letter

from Arent Fox LLP to Sec'y Commerce, re: Maquilacero S.A. de C.V.'s Case

Brief (Mar. 8, 2021), PR 230, CR 374; Letter from Wiley Rein LLP to Sec'y

Commerce, re: Case Brief (Mar. 8, 2021) ("Nucor's Administrative Case Brief" or

"Nucor's Admin. Case Br."), PR 231, CR 375-376.  Each party submitted a

rebuttal brief.  Letter from White & Case LLP to Sec'y Commerce, re: Rebuttal

Brief (Mar. 17, 2021), PR 235, CR 377; Letter from Arent Fox LLP to Sec'y

Commerce, re: Maquilacero S.A. de C.V.'s Rebuttal Brief (Mar. 17, 2021), PR

236, CR 378-379; Letter from Wiley Rein LLP to Sec'y Commerce, re: Rebuttal

Brief (Mar. 17, 2021), PR 237, CR 380.  Commerce published its <u>Final Results</u> and

supporting calculations.  <u>Final Results</u>, 86 Fed. Reg. 41,448; Final IDM.

Nucor submitted ministerial error comments addressing the margin

calculations for both Prolamsa and Maquilacero.  Letter from Wiley Rein LLP to

Sec'y Commerce, re: Heavy Walled Rectangular Welded Carbon Steel Pipes and

Tubes from Mexico: Ministerial Error Comments (Aug. 2, 2021) ("Ministerial

Error Comments" or "Ministerial Error Cmts.") at 1–7, PR 253, CR 392.  Both

Prolamsa and Maquilacero filed rebuttal comments.  Letter from White & Case

LLP to Sec'y Commerce, re: Response to Ministerial Error Comments (Aug. 6,

2021), PR 256, CR 393; Letter from Arent Fox LLP to Sec'y Commerce, re:

Maquilacero S.A. de C.V.'s Reply to Ministerial Error Comments for the Final

Results (Aug. 9, 2021), PR 257, CR 394.  Commerce issued its ministerial error

determination on August 20, 2021.  <u>See</u> Commerce Memorandum, re: Ministerial

Error Allegations in the Final Results of the 2018-2019 Antidumping Duty

Administrative Review on Heavy Walled Rectangular Welded Carbon Steel Pipes

and Tubes from Mexico (Aug. 20, 2021) ("Ministerial Error Determination"), PR

259.  Commerce determined that Nucor's ministerial error allegations were

untimely because Nucor should have submitted comments concerning any

ministerial errors in Nucor's initial administrative case brief.  Id. at 1.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction under 19 U.S.C. §

1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).  The Court shall hold unlawful any

determination found to be unsupported by substantial evidence on the record or

otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Commerce determines antidumping duties by calculating the amount by

which the normal value of subject merchandise exceeds the export price or the

constructed export price for the merchandise.  19 U.S.C. § 1673.  "Normal value"

is "the price at which the foreign like product is first sold . . . in the exporting

country . . . in the ordinary course of trade[.]"  Id. § 1677b(a)(1)(B)(i).  The

"dumping margin" (i.e., the antidumping duty) is the amount by which normal

value exceeds the export price or constructed export price.  Id. § 1677(35)(A).

When reviewing antidumping duties in an administrative review, Commerce must

determine: (1) the normal value and export price or constructed export price of

each entry of the subject merchandise, and (2) the dumping margin for each such

entry.  Id. § 1675(a)(1)(B), (a)(2)(A).  The statute dictates the steps by which

Commerce may calculate normal value "to achieve a fair comparison" with export

price or constructed export price.  Id. § 1677b(a).

When calculating normal value, the statute specifies the methodology for

Commerce to determine which sales should be considered and disregarded.  Id.

§ 1677b(b)(1).  Specifically, sales outside the "ordinary course of trade" are

disregarded and excluded from normal value.  Id.; id. § 1677(15).  Sales outside

the ordinary course of trade include sales made at less than the cost of production.

Id. § 1677(15)(A).  To determine whether "sales . . . have been made at prices

which represent less than the cost of production[,]" the statute directs Commerce to

conduct the sales-below-cost test.  Id. § 1677b(b)(1).  The cost of production is

defined by statute to include the cost of materials and processing, amounts for

selling, general, and administrative expenses, and the cost of all containers and

expenses incidental for shipment.  Id. § 1677b(b)(3).  Upon applying the sales-

below-cost test, sales that Commerce determines were made at prices below the

cost of production are outside the ordinary course of trade and are disregarded

from the calculation of normal value.  See id. § 1677b(b)(1), (a)(1)(B)(i).

"Whenever such sales are disregarded, normal value shall be based on the

remaining sales of the foreign like product in the ordinary course of trade."  See id.

§ 1677b(a)(1)(B)(i), (b)(1); id. § 1677(15)(A).  Determining which sales are

included in the normal value calculation is therefore multi-faceted and

fundamentally important to Commerce's determination of an antidumping duty

rate.  This determination must be calculated correctly and consistently to avoid any

subsequent inaccuracy in Commerce's determination.

I.      **Nucor's Ministerial Error Comments Regarding Maquilacero**

Nucor challenges Commerce's rejection of Nucor's ministerial error

comments as untimely with respect to Maquilacero.

The Court first examines whether the errors raised by Nucor are ministerial

in nature.  Nucor argues that in the administrative proceeding, Commerce issued a

preliminary decision memorandum that included a normal value calculation for

Maquilacero using "arbitrary" placeholder numbers for cost construction.  Pl.'s Br.

at 6–8.  Nucor contends that Maquilacero's normal value was inappropriately

depressed because lower-value sales that would have failed the sales-below-cost

test were subsequently included in normal value.  Id. at 6–9.  Commerce applied a

quarterly methodology to determine costs for Maquilacero in the Preliminary

Results.  Id. at 7.  Nucor submitted an administrative case brief regarding

Maquilacero, in which Nucor argued that Commerce used "arbitrary" placeholder

numbers for cost construction in the Preliminary Results (i.e., .1, .2, .3, etc.) and

that Commerce should have used Maquilacero's actual costs instead in the Final

Results.  Nucor's Admin. Case Br. at 49–52.

In the <u>Final Results</u>, Commerce used the same quarterly methodology, but rather than using "placeholder" cost values as it did in the <u>Preliminary Results</u>, Commerce used "zero values" for the quarterly cost calculations in the <u>Final Results</u>.  Pl.'s Br. at 9.  After Commerce published the <u>Final Results</u>, Nucor submitted Ministerial Error Comments.  <u>See</u> Ministerial Error Cmts.  Nucor argued in its Ministerial Error Comments that in the <u>Final Results</u>, Commerce unintentionally and incorrectly calculated Maquilacero's constructed costs for the quarter prior to the period of investigation.  <u>Id.</u> at 2.  Nucor contends that the use of zero values in the <u>Final Results</u> was a ministerial error that unintentionally reduced Maquilacero's cost calculation because the placeholder sequential numbers from the <u>Preliminary Results</u> were removed by Commerce and zeros were unintentionally inserted by the computer program.  Pl.'s Br. at 8–9.

Defendant and Defendant-Intervenor argue that Commerce determined correctly that Nucor's Ministerial Error Comments were filed untimely, and Nucor failed to exhaust its administrative remedies.  Def.'s Resp. Br. at 11–14, 16–18; Def.-Interv.'s Resp. Br. at 15–19.  In addition, Defendant-Intervenor argues that the issue raised by Nucor was methodological, not ministerial.  Def.-Interv.'s Resp. Br. at 14–15.  Nucor counters that Commerce's mistake was ministerial, not methodological, and because the mistake of inserting zero values did not occur until the <u>Final Results</u>, Commerce's ministerial errors in its calculations of

Maquilacero's dumping margin were not discoverable until the publication of the

Final Results and Nucor's comments were thus timely.  Pl.'s Reply Br. at 4–12.

Ministerial errors are errors "in addition, subtraction, or other arithmetic

function, clerical error[s] resulting from inaccurate copying, duplication, or the

like, and any other similar type of unintentional error[.]"  19 C.F.R. § 351.224(f).

Errors resulting from a computer programming error in Commerce's antidumping

margin calculation computer program are ministerial in nature.  Am. Signature,

Inc. v. United States, 598 F.3d 816, 823–24 (Fed. Cir. 2010).  Conversely, errors

resulting from considerations involving factual components are not ministerial in

nature.  See Nakornthai Strip Mill Pub. Co. v. United States, 32 CIT 1272, 1281–

82, 587 F. Supp. 2d 1303, 1311–12 (2008) (holding that Commerce's choice of a

particular invoice date over potential alternatives involved factual components and

was therefore not within the regulation's meaning of "ministerial").

The Government does not argue that the errors were methodological rather

than ministerial; the Government merely repeats its argument that Nucor's

ministerial error comments were filed untimely.  See Def.'s Resp. Br. at 11–14.

The Government explains that in the Preliminary Results, Commerce excluded

Maquilacero's reported home market sales made during the quarter preceding the

period of review, but Commerce did not exclude U.S. sales made during the

quarter preceding the period of review for the purpose of calculating costs of

production.  Id. at 11.  The Government explains further that Commerce performed

the cost recovery test using "almost identical" calculations in the Preliminary

Results and Final Results, with a "small difference" of "certain adjustments to the

calculations."  Id.

   This "small difference" is the crux of Nucor's ministerial error allegation:

Nucor argues that the "small difference" of using zeros instead of the sequential

placeholder values resulted in an incorrect reduced quarterly cost for Maquilacero,

while the Government offers no explanation of why it used zeros as the cost values

in the Final Results.  The Government does not argue, for example, that it

deliberately chose to use zeros as the correct cost values and therefore any error is

methodological or factual in nature rather than ministerial.  The Government does

not dispute Nucor's contention that the zeros used in the cost calculations resulted

from a computer programming error, but rather repeats its arguments that Nucor's

allegations were untimely and should be disregarded.

   It is apparent to the Court that the errors alleged by Nucor more closely

resemble arithmetic errors in a computer programming mistake (i.e., unintentional

errors) because there is no evidence that Commerce deliberately chose to use zeros

in its cost calculations that would support methodological or factual considerations

outside the meaning of "ministerial."  Absent any contrary argument from the

Government, it is reasonable to conclude that Commerce intended in the Final

Results to disregard the placeholder numbers that had been used to calculate

Maquilacero's quarterly costs in the Preliminary Results, and that the

Government's lack of explanation for why it used zeros for the values in

calculating quarterly costs for Maquilacero requires further inquiry.  Because

Nucor has sufficiently raised the question of whether an unintentional error

resulted in the use of zeros for the cost calculations, and the Government has failed

to contest this allegation adequately, the Court concludes that the alleged mistake

constitutes a ministerial error pursuant to 19 C.F.R. § 351.224(f).

Defendant and Defendant-Intervenor argue that Nucor's Ministerial Error

Comments were untimely.  Def.'s Resp. Br. at 10–14; Def.-Interv.'s Resp. Br. at

15–16.  Comments concerning ministerial errors in the preliminary results of a

review should generally be included in a party's administrative case brief.  19

C.F.R. § 351.224(c)(1).  A party is precluded from making arguments on appeal

that were omitted before the agency.  See Carpenter Tech. Corp. v. United States,

30 CIT 1373, 452 F. Supp. 2d 1344 (2006).  An exception to the general rule

exists, however, when the comments address an error in the final results that was

not present in the preliminary results.  See U.S. Steel Corp. v. United States, 36

CIT 534, 539, 2012 WL 1259085 at **4 (2012) (remanding Commerce's final

results "to allow for correction of a certain ministerial error in computer

programming" which became apparent only after publication of the final results);

see also LTV Steel Co. v. United States, 21 CIT 838, 869, 985 F. Supp. 95, 97, 120

(1997) (holding that comments following the final results were timely when the

respondent could not challenge Commerce's methodology until Commerce

articulated that methodology and applied it to the program at issue).  This

exception helps to ensure that Commerce meets its obligation to calculate

antidumping duty rates as accurately as possible.  Rhone Poulenc, Inc. v. United

States, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

Defendant and Defendant-Intervenor argue that Nucor's allegations of

ministerial errors should have been raised in Nucor's Administrative Case Brief

and were properly rejected as untimely pursuant to 19 C.F.R. § 351.224(c)(1).

Def.-Interv.'s Resp. Br. at 9; Def.'s Resp. Br. at 6, 7, 10.  Because the

unintentional errors became apparent only in the Final Results, the Court concludes

that the exception applies here, and Nucor was permitted to address new

ministerial errors that arose after Commerce completed its constructed cost

calculations for normal value in the Final Results.  See U.S. Steel Corp., 36 CIT at

539, 2012 WL 1259085 at **4.

Nucor filed timely Ministerial Error Comments and the Court concludes that

Nucor did not fail to exhaust its administrative remedies.  Because Nucor should

have been allowed to raise ministerial error concerns regarding Maquilacero in

response to apparent unintentional mistakes in Commerce's Final Results, the

Court remands for Commerce to reconsider Nucor's ministerial error comments and respond accordingly.

## II.    Nucor's Ministerial Error Comments Regarding Prolamsa

The second issue raised by Nucor is a challenge to Commerce's rejection of Nucor's ministerial error comments with respect to Prolamsa.  Defendant requests a remand to reconsider information in Commerce's calculation of normal value for Prolamsa in the <u>Final Results</u>.  Oral Arg. at 1:13:08, Dec. 20, 2022, ECF Nos. 49, 50.  During oral argument, Defendant explained that after analyzing the information highlighted by Nucor regarding calculations of home market prices using faulty currency conversions, Commerce wished to reanalyze its calculations to correct any potential double-conversion errors.  <u>Id.</u>

The Court has considerable discretion in deciding whether to grant a request for remand by the Government.  <u>See</u> <u>SKF USA Inc. v. United States</u>, 254 F.3d 1022, 1029 (Fed. Cir. 2001); <u>Home Prod. Int'l, Inc. v. United States</u>, 633 F.3d 1369, 1378 (Fed. Cir. 2011).  If the agency's concern is substantial and legitimate, a remand may be appropriate.  <u>SKF USA Inc.</u>, 254 F.3d at 1029.  This Court has concluded that an agency's concerns are substantial and legitimate if: (1) the agency has provided compelling justification for its remand request, (2) the need for finality does not outweigh the agency's justification, and (3) the scope of the remand request is appropriate.  <u>See, e.g.,</u> <u>Sea Shepherd N.Z. v. United States</u>, 44

CIT __, __, 469 F. Supp. 3d 1330, 1335–36 (2020) (quoting Shakeproof Assembly

Components Div. of Ill. Tool Works, Inc. v. United States, 29 CIT 1516, 1522–26,

412 F. Supp. 2d 1330, 1336–39 (2005)).

Remand of Commerce's determination regarding Prolamsa will allow

Commerce to reassess its home market price calculations and correct any potential

errors in its currency conversions.  Commerce has an obligation to calculate

dumping margins as accurately as possible.  See Rhone Poulenc, Inc., 899 F.2d at

1191.  The Court concludes that Defendant has provided a compelling justification

for its remand request, the need for finality does not outweigh the agency's

justification, and the scope of Defendant's remand request is appropriate.  The

Court grants Defendant's remand request regarding Prolamsa.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that this action is remanded to Commerce for reconsideration

consistent with this opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1) Commerce shall file its remand determination on or before March

17, 2023;

(2) Commerce shall file the administrative record on or before March

31, 2023;

(3) Comments in opposition to the remand determination shall be

filed on or before April 28, 2023;

(4) Comments in support of the remand determination shall be filed

on or before May 26, 2023; and

(5) The joint appendix shall be filed on or before June 23, 2023.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: January 18, 2023
New York, New York