A-201-847<br>
Remand<br>
Slip Op. 23-6<br>
POR: 9/1/2018 – 8/31/2019<br>
**Public Document**<br>
E&C/OII: DC

*Nucor Tubular Products Inc. v. United States*
**Court No. 21-00543, Slip Op. 23-6 (CIT January 18, 2023)**
**Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico**
**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.     SUMMARY**

The Department of Commerce (Commerce) prepared these final results of redetermination on remand pursuant to the opinion and remand order from the U.S. Court of International Trade (CIT) in *Nucor Tubular Products Inc. v. United States*, 21-00543, Slip Op. 23-6 (CIT January 18, 2023) (*Remand Order*). This remand concerns the final results of the 2018-2019 antidumping duty (AD) administrative review on certain heavy walled rectangular welded steel pipes and tubes (HWR pipes and tubes) from Mexico.[1] The petitioner in the administrative review is Nucor Tubular Products Inc. The respondents selected for individual examination in the review are Maquilacero S.A. de C.V. (Maquilacero) and Productos Laminados de Monterrey S.A. de C.V. (Prolamsa).

The CIT remanded Commerce's determination that plaintiff Nucor's ministerial error allegations with respect to Prolamsa and Maquilacero were untimely because they were discoverable earlier in the proceeding and Nucor did not raise these issues in its administrative case brief. In light of the *Remand Order*, for these final results of redetermination, Commerce finds that the ministerial errors with respect to both Prolamsa and Maquilacero were timely

---

[1] *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico*, 86 FR 41448 (August 2, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

raised and ministerial in nature, such that the errors must be corrected. Therefore, with these final results of redetermination, Commerce has considered Nucor's ministerial error comments with respect to Maquilacero and has corrected an unintentional error related to its calculation analysis. With respect to Prolamsa, Commerce has corrected all errors in its currency conversions of certain variables used in its calculation analysis.

On March 1, 2023, we released our Draft Results of Redetermination to interested parties.[2] On March 8, 2023, we received comments from Prolamsa, and, on March 9, 2023, we received comments from Maquilacero and Nucor.[3] We respond to these comments below. After considering the comments raised, we have made changes to the Draft Results of Redetermination to correct certain formulas and calculations in Prolamsa's SAS margin program. Specifically, we revised our treatment of home market packing costs (HMPACK), home market inventory carrying costs (HMICC), and the trade adjustment variable (*i.e.*, LOTADJMT) from our changes made in the Draft Results of Redetermination. For further analysis, *see* "Interested Party Comments on Draft Results of Redetermination," section below; and Prolamsa Final Remand Calculation Memorandum.[4]

With respect to Maquilacero, we made no changes to the weight-averaged dumping margin calculated in the Draft Results of Redetermination and, thus, have corrected the ministerial error appropriately, pursuant to the *Remand Order*.

---

[2] *See* Draft Results of Redetermination Pursuant to Court Remand, *Nucor Tubular Products Inc. v. United States*, Court No. 21-00543, Slip Op. 23-6 (CIT January 18, 2023), dated March 1, 2023 (Draft Results of Redetermination).
[3] *See* Prolamsa's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated March 8, 2023 (Prolamsa's Comments); Maquilacero's Letter, "Maquilacero S.A. de C.V.'s Comments on the Draft Remand Redetermination in Court No. 21-00543 (Slip Op. 23-6)," dated March 9, 2034 (Maquilacero's Comments); and Nucor's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand, Slip. Op. 23-6," dated March 9, 2023 (Nucor's Comments).
[4] *See* Memorandum, "Final Remand Redetermination Sales Calculations for Productos Laminados de Monterrey S.A. de C.V.," dated March 17, 2023 (Prolamsa Final Remand Calculation Memorandum), for further analysis.

2

Accordingly, the revised weighted-average dumping margin for Prolamsa is 2.11 percent, and the weighted-average dumping margin for Maquilacero continues to be 3.48 percent, consistent with the Draft Results of Redetermination.[5] The revised rate for the non-selected companies is 2.51 percent.

## II.   BACKGROUND

Commerce published the *Final Results* on August 2, 2021.[6] As discussed in the *Final Results*, Commerce continued to use the same home market and U.S. sales for Maquilacero's cost recovery test as in the *Preliminary Results*,[7] and further used the same currency conversion programming for Prolamsa in its final calculations.[8] On August 2, 2021, Nucor submitted ministerial error allegation comments on Commerce's final results.[9] Commerce responded to Nucor's ministerial error allegations, and determined that such allegations were untimely because the alleged errors arose in the *Preliminary Results*, and that Commerce would make no changes to the final results.[10]

In the *Remand Order*, the CIT remanded the *Final Results* to Commerce, concluding that, with respect to Maquilacero, the error raised by Nucor was ministerial in nature and that the error arose after Commerce completed its constructed value calculations for normal value (NV) in the

---

[5] *See* Draft Results of Redetermination at 2 and 9.
[6] *See Final Results*, 86 FR at 41448.
[7] *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 86 FR 7067 (January 26, 2021) (*Preliminary Results*).
[8] *See* Memorandum, "Final Results Margin Calculation for Maquilacero S.A. de C.V.," dated July 22, 2021 (Maquilacero Final Results Calculation Memorandum), at Attachment 1; and Memorandum, "
Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.," dated July 22, 2021 (Prolamsa Final Results Calculation Memorandum), at Attachment II.
[9] *See* Nucor's Letter, "Ministerial Error Comments," dated August 2, 2021 (Nucor Ministerial Error Comments). We note that Prolamsa and Maquilacero submitted responses to Nucor Ministerial Error Comments. *See* Prolamsa's Letter, "Response to Ministerial Error Comments," dated August 6, 2021; and Maquilacero's Letter, "Maquilacero S.A. de C.V.'s Reply to Ministerial Error Comments for the Final Results," dated August 9, 2021.
[10] *See* Memorandum, Ministerial Error Allegation Determination, dated August 20, 2021 (Ministerial Error Determination).

*Final Results*.[11]  Thus, the CIT found that Nucor's ministerial error comment was timely, and remanded the issue to Commerce to reconsider Nucor's ministerial error comments on this issue. With respect to Prolamsa, pursuant to Commerce's request for a voluntary remand at oral argument to reanalyze its calculations to correct double-conversion errors, the CIT granted this voluntary remand request.[12]

### III.   ANALYSIS

In accordance with the *Remand Order*, we have reconsidered the ministerial error allegations raised by Nucor and have corrected the errors with respect to Prolamsa and Maquilacero's respective calculations, as appropriate.  We have also calculated a new rate for the non-selected companies under review based on these corrections.[13]

#### A.  Prolamsa Currency Conversion

In its ministerial error allegation, Nucor alleges that Commerce made inadvertent currency conversion errors in Prolamsa's final calculations that incorrectly lowered the home market net price (HMNETPRI).  Specifically, Nucor alleges that in the SAS margin program, Commerce converted certain home market price fields to U.S. dollars (USD), but failed to do so

---

[11] *See Remand Order* at 12-15.
[12] *Id.* at 15-16.
[13] The Tariff Act of 1930, as amended, (the Act) and Commerce's regulations do not address the rate to be applied to companies not selected for individual examination when Commerce limits its examination in an administrative review pursuant to section 777A(c)(2) of the Act.  Generally, Commerce looks to section 735(c)(5) of the Act, which provides instructions for calculating the all-others rate in a market economy investigation, for guidance when calculating the rate for companies that were not selected for individual examination in an administrative review. Under section 735(c)(5)(A) of the Act, the non-selected company rate is normally "an amount equal to the weighted average of the estimated weighted-average dumping margins established for exporters and producers individually examined, excluding any margins that are zero or *de minimis*, and any margins determined entirely {on the basis of facts available}."  For these draft results of redetermination, we have calculated weighted-average dumping margins for Maquilacero and Prolamsa that are not zero, *de minimis*, or determined entirely on the basis of facts available. Therefore, consistent with section 735(c)(5)(A) of the Act, we determined the weighted-average dumping margin for each of the non-selected companies by using the weighted-average dumping margins calculated for Maquilacero and Prolamsa in this administrative review.  As the weighting factor, we relied on the publicly ranged U.S. sales quantity data reported in the quantity and value charts submitted by Prolamsa and Maquilacero to calculate the non-selected company rate.  The exporters/producers subject to these draft results of redetermination, but not selected for individual review, are listed in section, Final Remand Results, below.

4

for HMICC and HMPACK.  Nucor also alleges that in the SAS margin program, HMNETPRI, which was already stated on a USD basis, was converted to USD a second time in Commerce's standard calculation of foreign unit price in dollars (FUPDOL).  Nucor asserts that Commerce should correct the inadvertent errors by revising the calculation of FUPDOL to exclude the double currency conversion of HMNETPRI.

Pursuant to sections 751(h) and 773A(a) of the Act, Commerce has considered whether the error raised by Nucor with respect to Prolamsa's currency conversion was a ministerial error and whether Prolamsa's currency conversion calculation was improperly double converted, as described below.

      *i.*    *Ministerial Error Analysis*

Ministerial errors are defined as "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the administering authority considers ministerial."[14] Errors resulting from a computer programming error in Commerce's antidumping margin calculation computer programs are ministerial in nature.[15]  Pursuant to section 751(h) of the Act, Commerce has established procedures for the correction of ministerial errors in an administrative review within a reasonable period of time after the determinations are issued.  Specifically, Commerce will disclose its calculations to interested parties to the proceeding and interested parties may submit comments concerning any ministerial errors in such calculations within five

---

[14] *See* section 751(h) of the Act; *see also* 19 CFR 351.224(f).
[15] *See Am. Signature Inc. v. United States*, 598 F.3d 816, 823-24 (Fed. Cir. 2010).

days of disclosure.[16]  Comments concerning ministerial errors made in the preliminary results of a review must be included in interested party's case briefs.[17]

Commerce may correct errors that are timely raised.[18]  However, Commerce has the discretion to choose not to respond to ministerial error allegations that are untimely.[19]  Indeed, Commerce's interests in finality and efficiency suffice to allow Commerce to refuse to address untimely ministerial errors.[20]  Further, Commerce may refuse to entertain ministerial error comments "where a ministerial error … was reflected in its preliminary antidumping duty determination … {and} no interested party pointed out the error in a timely manner."[21]

With respect to the currency conversion errors alleged by Nucor for Prolamsa, we have first determined that these errors are ministerial errors.  Indeed, the CIT has held that currency conversion errors are ministerial errors.[22]  Specifically, Commerce made changes to the SAS margin program after the *Preliminary Results* to disregard a certain section of programming language in the SAS margin program.[23]  Commerce's changes to the SAS margin program inadvertently failed to convert HMPACK from Mexican pesos (MXP) to USD correctly.[24]  Thus, HMNETPRI was calculated using a mix of USD- and MXP-denominated expenses.

---

[16] *See* 19 CFR 351.224(b) and (c).
[17] *See* 19 CFR 351.224(c)(1); and *Antidumping Duties; Countervailing Duties*, 62 FR 27296, 27327 ("{W}e will consider comments concerning ministerial errors made in a preliminary results of a review in a party's case brief. The alleged errors, therefore, will be addressed in the final results of a review.").
[18] *See Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006) ("Commerce is free to correct any type of importer error … provided the importer seeks correction before Commerce issues its final results … .").
[19] *See Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376-77 (Fed. Cir. 2010).
[20] *See Jinan Yipin Cor. v. United States*, 774 F. Supp. 2d 1238, 1249 (CIT 2011).
[21] *See QVD Food Co. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011).
[22] *See, e.g.*, *Aramide Maatschappij V.o.F. v. United States*, 901 F. Supp. 353, 361 (CIT 1995) (holding that it was a ministerial error when Commerce failed to convert a respondent's direct selling expenses from German marks and Japanese yen into Dutch guilders).
[23] *See* Prolamsa Final Results Calculation Memorandum at 634-37.
[24] *Id*.  In the Draft Results of Redetermination, we stated that we incorrectly converted the HMICC field.  However, HMICC is not part of the HMNETPRI calculation and is correctly converted for the constructed export price (CEP) offset calculation, *see* footnote (fn) 26, below, for additional information.

Second, the SAS margin program converted the HMNETPRI, level of trade adjustment (LOTADJMT), and difference in merchandise adjustment (DIFMER) variables into USD; however, the HMNETPRI variable, with the exception of HMPACK, was already stated in USD as a result of the programming language changes made after the *Preliminary Results*. Therefore, the double conversion of the variable listed above resulted in an incorrect FUPDOL calculation for the *Final Results*, and a ministerial error.

    ii.    Currency Conversion Correction

When requesting sales data in its questionnaires, Commerce instructs respondents to report expenses in the currency in which they are incurred. Here, in the normal course of business, Prolamsa made home market sales in both MXP and USD and, in response to Commerce's questionnaires, Prolamsa reported its home market prices in the appropriate currency.

To account for the differences in currency in the SAS margin program, Commerce intended to convert Prolamsa's home market prices and expenses reported in MXP to USD, as appropriate.[25] However, expense field HMPACK was reported in MXP and not converted to USD, appropriately, before calculating the HMNETPRI in USD; thus, HMNETPRI was calculated using a mix of MXP and USD-denominated expenses. The standard FUPDOL equation then, incorrectly, applied an additional USD exchange rate conversion to HMNETPRI.

Thus, to correct these errors, in our Draft Results of Redetermination, Commerce: (1) converted HMPACK and HMICC to USD before calculating HMNETPRI; and (2) corrected the FUPDOL equation to only convert the LOTADJMT and DIFMER variables to USD. Therefore, for the Draft Remand Redetermination, we revised the: (1) HMPACK and HMICC currency

---

[25] *Id.*

conversions to convert these variables into USD; and (2) FUPDOL equation to remove the conversion of the HMNETPRI variable to USD and, instead, only convert the LOTADJMT and DIFMER variables into USD, appropriately.

After analyzing comments received by interested parties, for these final results of redetermination, we revised certain corrections made in the Draft Results of Redetermination and removed the double conversion of the HMPACK and LOTADJMT variables into USD for Prolamsa's margin calculation.[26]  We now rely on the following formulas for calculating HMNETPRI and FUPDOL:

> RHMPACK = HMPACK * EXRATE_MEXICO;
>
> HMNETPRI = HMGUP + HMGUPADJ - HMDISREB – HMMOVE
>
> – HMCRED – HMDSELL – HMCOMM – RHMPACK; and
>
> FUPDOL = HMNETPRI + LOTADJMT – (*DIFMER*&XRATE1) +
>
> USPACK&SUFFIX;.

### B.  Maquilacero Quarterly Cost Methodology

In its ministerial error allegation, Nucor alleges that Commerce inadvertently included Maquilacero's sales prior to the window period for purposes of calculating a cost of production (COP) for any products sold but not produced.  Nucor asserts that Commerce intended to exclude these sales but failed to effectuate this intent in its programming language.  According to Nucor, Commerce should fix this error by excluding U.S. sales sold outside the period of review (POR) when identifying product control number/quarter combinations needed for cost records.

---

[26] *See* "Interested Party Comments on Draft Results of Redetermination" section below, for a complete analysis.  We note that we are no longer converting HMICC into USD, as was performed in the Draft Results of Redetermination, since it is automatically converted appropriately in the CEP offset calculation. *See* Prolamsa Final Remand Calculation Memorandum, for further analysis.

Pursuant to sections 751(h) and 773(b)(1) of the Act, Commerce has considered whether the error raised by Nucor with respect to Maquilacero's quarterly cost methodology was a ministerial error and whether Maquilacero's quarterly cost methodology calculation required correction, as discussed below.

    i.   *Ministerial Error Analysis*

As discussed above, errors resulting from a computer programming error in Commerce's antidumping duty margin calculation are ministerial in nature. Moreover, in the *Remand Order*, the CIT held that the errors alleged by Nucor with respect to Maquilacero resemble "arithmetic errors in a computer programming mistake (*i.e.*, unintentional errors) because there is no evidence that Commerce deliberately chose to use zeros in its cost calculations that would support methodological or factual considerations … ."[27] Additionally, the CIT "conclude{d} that the alleged mistake constitutes a ministerial error pursuant to {19 CFR} 351.224(f)."

Thus, in reconsidering Nucor's ministerial error comments, consistent with the *Remand Order*, we find that the programming error described in Nucor's ministerial allegation constitutes a ministerial error because we did not intend to include pre-POR window period sales in our full POR averaging calculation (*i.e.*, covering only the four quarters contained within the POR). In our analysis of Maquilacero's data, we inadvertently included pre-POR U.S. sales in determining the quarters for which costs would be needed; however, we did not rely on pre-POR U.S. sales in our margin calculations and thus did not intend to calculate costs for any pre-POR sales. Due to an inadvertent programming error, the costs associated with the pre-POR quarters were incorrectly assigned a zero value. As a result, this error inappropriately resulted in undervaluing the total cost of manufacturing used in the cost recovery test.

---

[27] *See Remand Order* at 12.

> *ii.* *Quarterly Cost Methodology Correction*

Commerce uses the cost recovery benchmark to determine whether a home market sale was made "above cost" (*i.e.*, where the reported costs incurred to produce the sale of a certain product is higher than the price of that same (or similar) product), and, thus, whether to include that sale as part of Commerce's NV calculation. The cost recovery benchmark is an average of all POR quarterly costs and is designed to evaluate whether sales that had been determined to be "below cost" in a particular quarter would be "above cost" when compared to the POR average.[28] Commerce compares each quarter-specific "below-cost" home market sale to the benchmark and, pursuant to section 773(b)(1) of the Act, may disregard home market sales that are below this benchmark.

To correct the error described above, for these final results of redetermination, we revised our programming language to limit the quarters under consideration to only those within the POR.

**IV.   INTERESTED PARTY COMMENTS ON DRAFT RESULTS OF REDETERMINATION**

On March 1, 2023, Commerce released the Draft Results of Redetermination to all interested parties and invited parties to comment.[29] On March 8, 2023, we received comments from Prolamsa, and, on March 9, 2023, we received comments from Maquilacero and Nucor.[30] We address the parties' comments below.

---

[28] *See Final Results* IDM at 10-11.
[29] *See* Draft Results of Redetermination.
[30] *See* Prolamsa's Comments; Maquilacero's Comments; and Nucor's Comments.

*Nucor's Comments*

- Commerce's Draft Results of Redetermination comply with the CIT's order.[31]
- Commerce correctly found that the ministerial errors alleged were timely and ministerial in nature.[32]

*Prolamsa's Comments*

- Commerce's changes to Prolamsa's SAS margin program based on Nucor's ministerial error comments resulted in certain currency conversion errors.[33]
- Specifically, Commerce's treatment of HMPACK in its Draft Results of Redetermination resulted in packing costs being converted to USD more than once, decreasing packing costs.[34]
- In addition, Commerce's treatment of Prolamsa's level of trade adjustment (*i.e.*, LOTADJMT variable) in its Draft Results of Redetermination was incorrect.[35] Because the LOTADJMT variable is already stated in USD, no additional USD conversion is needed.[36]
- Alternative programming language to correct the above is as follows:

  HMNETPRI = HMGUP + HMGUPADJ - HMDISREB – HMMOVE – HMCRED – HMDSELL – HMCOMM – HMPACK*EXRATE_MEXICO; and FUPDOL = ((HMNETPRI - DIFMER*&XRATE1 + LOTADJMT)) + USPACK&SUFFIX.[37]

*Maquilacero's Comments*

- Nucor's ministerial error allegation should be rejected because: (1) it was submitted untimely as the alleged error was discoverable at the *Preliminary Results*; and (2) the alleged error was not ministerial but methodological, and did not fit the definition of ministerial errors in the 19 CFR 351.224(f).[38] Therefore, Commerce's applied revisions to Maquilacero's final calculations, in response to the *Remand Order*, attempts to correct an error that is methodological and not ministerial in nature.[39]
- Even though Commerce incorrectly assigned a zero value to Maquilacero's pre-POR costs, it still intended to include pre-POR costs in addition to including pre-POR U.S. sales. Therefore, the inclusion of these pre-POR data points relates to an initial methodological decision to include pre-POR window period sales in the full POR-averaging calculation and analysis.[40]

---

[31] *See* Nucor's Comments at 2.
[32] *Id.*
[33] *See* Prolamsa's Comments at 2.
[34] *Id.* at 3-4.
[35] *See* Prolamsa's Comments at 4-5.
[36] *Id.*
[37] *Id.*
[38] *See* Maquilacero's Comments at 3.
[39] *Id.* at 3.
[40] *Id.* at 4.

- Nucor raised no objection to Commerce's use of Maquilacero's pre-POR U.S. sales for purposes of the cost recovery calculation, which remained unchanged from the *Preliminary Results*.[41]
- Further, in response to the *Remand Order*, Commerce, in recalculating Maquilacero's dumping margin, changed its quarterly cost methodology and reduced the number of quarters used in the analysis.[42] Commerce's correction of its error in this manner, is methodological because it falls outside of the scope of 19 CFR 351.224(f).[43]
- However, the CIT's remand order did not direct Commerce to recalculate Maquilacero's final dumping margin.[44] Commerce maintains the ability to review the substance of Nucor's ministerial error allegation as it pertains to Maquilacero and assess whether it is minor and warrants a correction.[45]
- While the CIT concluded that Nucor's allegation was ministerial by nature, it did so only because of Commerce's lack of engagement on the issue.[46]
- The CIT's conclusion that Nucor's ministerial error comments were timely is incorrect. For the final remand redetermination, Commerce should reconsider its finding that Nucor's ministerial error allegation is ministerial and; instead, decline to make a correction to the quarterly cost methodology used in Maquilacero's final dumping margin calculation.[47] This approach would be consistent with the *Remand Order*, which only directed Commerce to reconsider Nucor's allegation and response, accordingly.

*Commerce's Position:*

Prolamsa's Currency Conversion

We agree with Prolamsa that we made certain errors in Prolamsa's margin calculation in the Draft Results of Redetermination, such that we did not state the HMPACK and LOTADJMT variables in the correct currency. Therefore, for these final results of redetermination, we revised Prolamsa's margin calculation to remove the double conversion of these variables into USD.[48] Specifically, in order to correct the errors in the calculation of Prolamsa's HMNETPRI and FUPDOL, we used the following formulas:

$$\text{RHMPACK} = \text{HMPACK} * \text{EXRATE\_MEXICO};$$

---

[41] *Id*. at 3 (citing Draft Results of Redetermination at 2).
[42] *Id*. (citing Draft Results of Redetermination at 1-2).
[43] *Id*. at 5.
[44] *Id*. at 3 (citing *Remand Order* at 15).
[45] *Id*.
[46] *See* Maquilacero's Comments at 2 (citing *Remand Order* at 13).
[47] *Id*.
[48] *See* Prolamsa Final Remand Calculation Memorandum.

$$\text{HMNETPRI} = \text{HMGUP} + \text{HMGUPADJ} - \text{HMDISREB} - \text{HMMOVE}$$
$$- \text{HMCRED} - \text{HMDSELL} - \text{HMCOMM} - \text{RHMPACK; and}$$
$$\text{FUPDOL} = \text{HMNETPRI} + \text{LOTADJMT} - (\text{DIFMER} * \&\text{XRATE1}) +$$
$$\text{USPACK\&SUFFIX;}.$$

Maquilacero's Quarterly Cost Methodology

We disagree with Maquilacero that Commerce's recalculation of Maquilacero's dumping margin was inappropriate. We continue to find that Nucor's ministerial error allegation was timely, in line with the CIT's *Remand Order*.[49] Indeed, the CIT stated that "{b}ecause the *unintentional errors* became apparent only in the *Final Results*, the Court concludes that…Nucor was permitted to address new ministerial errors that arose after Commerce completed its constructed costs calculations…"[50] Further, the CIT remanded for Commerce to reconsider Nucor's ministerial error comments and respond accordingly.[51]

Pursuant to the *Remand Order*, Commerce reconsidered Nucor's ministerial error allegations and found that an inadvertent error was made in Maquilacero's final margin calculations that required a revision of Maquilacero's final margin calculations.[52] As an initial matter, while we recognize that Maquilacero disagrees with the CIT's conclusion that the error in question is ministerial in nature, any arguments pertaining to that conclusion are appropriately raised before the CIT and not Commerce. Nonetheless, we agree that the error in Maquilacero's final margin calculation was ministerial in nature and continue to find that the revisions made in the Draft Results of Redetermination correct this ministerial error, because we did not intend to

---

[49] *See Remand Order* at 14-15 ("Nucor filed timely Ministerial Error Comments and the Court concludes that Nucor did not fail to exhaust its administrative remedies.").
[50] *Id.* at 14 (emphasis added).
[51] *Id.* at 15.
[52] *See* Memorandum, "Remand Redetermination Sales Calculations for Maquilacero S.A. de C.V.," dated February 28, 2023 (Maquilacero Remand Calculation Memorandum).

use pre-POR costs in the cost recovery test, pursuant to our established quarterly cost methodology,[53] which is explained in further detail below.

In order to calculate Maquilacero's final dumping margin, we relied on two SAS programs (*i.e.*, the comparison market and margin programs). A review of Commerce's SAS margin program and the *Final Results* indicates that Commerce did not intend to use pre-POR costs in any part of its analyses because Commerce did not include pre-POR U.S. sales with which to assign pre-POR costs. In the *Preliminary Results*, Commerce removed all reported pre-POR U.S. sales (*i.e.*, sales that had a sale date before September 1, 2018, but entered the United States during the POR) from its analysis in the SAS margin program because these sales had previously been examined in the prior administrative review.[54] Additionally, we stated that because we "assigned costs to Maquilacero's sales on a quarterly basis and all reviewed U.S. sales have sale dates within the POR, we excluded the reported home market sales during the window period from the NV calculation."[55] Because Commerce excluded these pre-POR sales, there were no sales on which to calculate any corresponding pre-POR costs. As a result, because Commerce removed the pre-POR U.S. sales from the SAS margin program, no pre-POR costs should have been used in the weight-averaged quarterly cost calculations; instead, only weight-average quarterly costs would be calculated for quarters 1 through 4.[56] Indeed, the intent to exclude pre-POR costs is clear from the *Final Results*, where Commerce addressed a programing

---

[53] *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 86 FR 7067 (January 26, 2021) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum at 18-19.
[54] *See* Memorandum, "Preliminary Results Margin Calculation for Maquilacero S.A. de C.V.," dated January 15, 2021 (Maquilacero Preliminary Results Calculation Memorandum) at 4.
[55] *Id.* at 2.
[56] *See* Maquilacero Final Results Calculation Memorandum at Attachment 2.

error in the *Preliminary Results* and noted that the error "did not affect the calculation of COP" because window period (*i.e.*, pre-POR) costs were not used to calculate COP.[57]

However, to ensure that no pre-POR costs were used in its calculations, Commerce also needed to exclude the pre-POR U.S. sales, referenced above, in Maquilacero's comparison market program, which Commerce failed to do. When working with correct data, the SAS comparison market and margin programs work in concert to calculate Maquilacero's dumping margin based on a consistent universe of U.S. sales. Because Commerce inadvertently failed to exclude the same pre-POR U.S. sales from the SAS comparison market program that were excluded the SAS margin program, the programs were incorrectly running on different universes of U.S. sales, in direct contradiction to Commerce's intended results. As a result, because the SAS comparison market program was based on a universe of U.S. sales that included sales made prior to the POR, it incorrectly created a corresponding pre-POR cost record to assign to these sales. Therefore, the SAS comparison market program created unnecessary cost data in that it calculated costs for a pre-POR time period (*i.e.,* quarter 0), and it also incorrectly calculated Commerce's cost recovery test by including the pre-POR cost data (*i.e.*, quarter 0) which resulted in an undervaluing of the total cost of manufacturing used in the cost recovery test.

Therefore, for these final results of remand redetermination, we revised Maquilacero's SAS comparison market program to limit the universe of U.S. sales to include only those made in the POR, which follows the same universe of sales defined in the SAS margin program.[58] By

---

[57] *See Final Results* IDM at fn 51 ("We note that this programming error did not affect the calculation of COP in the *Preliminary Results*. Specifically, these sequential values would be used only to calculate the COP for: (1) home market sales made during the window periods, either before or after the four quarters of the POR; or (2) a CONNUM sold in a quarter in which no products are produced. Because Commerce did not use Maquilacero's window period sales to calculate NV (*see* {Maquilacero Preliminary Results Calculation Memorandum} at 2), the first situation did not apply. Moreover, because Maquilacero produced HWR pipes and tubes in each quarter of the POR (*see, e.g.*, Maquilacero's September 10 SQR at COP database), the second situation also did not apply.").
[58] *See* Maquilacero Remand Calculation Memorandum at 1-2; and Maquilacero Preliminary Results Calculation Memorandum at 2, 4 and Attachment 2.

fixing this inadvertent error, pre-POR cost records are no longer being created in the SAS comparison market program and it removes any pre-POR costs used in the cost recovery test.

We disagree with Maquilacero that Commerce made a methodological decision to include pre-POR window period sales in the full POR averaging calculation. Rather, as explained above, Commerce intended to exclude pre-POR costs by its exclusion of pre-POR U.S. sales in the SAS margin program. Thus, Commerce's inclusion of pre-POR U.S. sales in Maquilacero's SAS comparison market program was an unintentional programming error that constitutes a ministerial error within the meaning of the Act and Commerce's regulations.[59]

Based on the above analysis of Commerce's error and the necessary steps taken to remedy it, we disagree with Maquilacero's contention that Commerce intended to include pre-POR costs and sales. To the contrary, Commerce excluded pre-POR U.S. sales in Maquilacero's SAS margin program.[60] Similarly, Commerce excluded all home market window period sales (which includes pre-POR home market sales) in the SAS comparison market program.[61] In fact, Commerce explicitly stated in the *Final Results* that "{it} did not use Maquilacero's window period sales to calculate NV."[62] Yet Commerce's intention to exclude pre-POR costs and pre-POR U.S. sales was not correctly implemented in our programming language because the same exclusion of Maquilacero's pre-POR U.S. sales was inadvertently overlooked and not reflected correctly in the SAS comparison market program.

Although the CIT did not specifically direct Commerce to recalculate Maquilacero's rate, the CIT did direct Commerce to reconsider Nucor's ministerial error allegation. Here, such a reconsideration and determination that the error was ministerial required a correction to the SAS

---

[59] *See Remand Order* at 14; *see also* section 751(h) of the Act; 19 CFR 351.224(f).
[60] *See* Maquilacero Preliminary Results Calculation Memorandum at 4.
[61] *Id.* at 2.
[62] *See Final Results* IDM at Comment 2, fn 51.

programming language, as well as a recalculation of Maquilacero's rate. As discussed at length above, we examined the record and concluded that the error was not in line with our intended results or with Commerce's quarterly cost methodology. Thus, our finding here is consistent with the *Remand Order*.

In sum, we reconsidered the evidence on the record, in accordance with the *Remand Order*, and find that, for these final results of redetermination, appropriate revisions have been taken to correct certain ministerial errors made with respect to Maquilacero and Prolamsa's final dumping margin calculations.

V.      **FINAL REMAND RESULTS**

As a result of our reconsideration of the evidence on remand, we have recalculated the weighted-average dumping margins for Prolamsa and Maquilacero, correcting ministerial errors for both companies. As a result, the estimated weighted-average dumping margins for Prolamsa and Maquilacero become 2.11 and 3.48 percent, respectively.[63] Further, the revised dumping margin for the non-selected companies is 2.51 percent.[64]

| Company | *Final Results* Margin (percent) | Revised Margin (percent) |
|---|---|---|
| Maquilacero | 0.29 (*de minimis*) | 3.48 |
| Prolamsa | 0.00 | 2.11 |
| Arco Metal S.A. de C.V. | 0.00 | 2.51 |
| Forza Steel S.A. de C.V. | 0.00 | 2.51 |
| Industrias Monterrey, S.A. de C.V. | 0.00 | 2.51 |
| Perfiles y Herrajes LM S.A. de C.V. | 0.00 | 2.51 |
| PYTCO S.A. de C.V. | 0.00 | 2.51 |
| Regiomontana de Perfiles y Tubos S.A. de C.V. | 0.00 | 2.51 |
| Ternium S.A. de C.V. | 0.00 | 2.51 |
| Tuberia Nacional, S.A. de C.V. | 0.00 | 2.51 |
| Tuberias Procarsa S.A. de C.V. | 0.00 | 2.51 |

---

[63] *See* Memorandum, "Remand Redetermination Sales Calculations for Productos Laminados de Monterrey S.A. de C.V.," dated March 9, 2022.

[64] The calculation for the revised margin for the non-selected companies is as follows: $((6{,}876{,}000 \times 3.48\%) + (16{,}623{,}100 \times 2.11\%)) / (6{,}876{,}000 + 16{,}623{,}100) = 2.51\%$.

Because Prolamsa's and Maquilacero's margins are different from the rates in the *Final Results*, we intend to publish an amended final results *Federal Register* notice should the CIT sustain these final results of redetermination.

3/17/2023

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

18