## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NUCOR TUBULAR PRODUCTS INC., ) | |
| Plaintiff, ) | |
| v. ) | |
| UNITED STATES, ) | |
| Defendant, ) | Court No. 21-00543 |
| and ) | |
| PRODUCTOS LAMINADOS DE MONTERREY ) S.A. DE C.V., PROLAMSA, INC., AND ) MAQUILACERO S.A. DE C.V., ) | |
| Defendant-Intervenors. ) | |

## **DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by defendant-intervenor Maquilacero S.A. de C.V. (Maquilacero) on the remand redetermination, ECF No. 54 (Maquilacero Cmts.), concerning the Department of Commerce's final results of redetermination filed in accordance with this Court's decision and remand order in *Nucor Tubular Products Inc. v. United States*, 619 F. Supp. 3d 1279 (Ct. Int'l Trade 2023). *See* Final Results of Redetermination Pursuant to Court Remand, Mar. 17, 2023 (Remand Redetermination), ECF No. 52.  For the reasons explained below, we respectfully request that the Court sustain Commerce's remand results and enter final judgment for the United States.

**BACKGROUND**

**I.     Underlying Administrative Review**

On August 2, 2021, Commerce published the final results of the administrative review of the antidumping duty order covering heavy-walled rectangular (HWR) pipes and tubes from Mexico.  *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico,* 86 Fed. Reg. 41,448 (Dep't of Commerce Aug. 2, 2021) (final results) (P.R. 252), and accompanying Issues and Decision Memorandum (IDM) (P.R. 243).[1]  In the final results, Commerce used the same home market and U.S. sales for Maquilacero cost recovery test as in the preliminary results, and further used the same currency conversion programming for Productos Laminados de Monterrey S.A. de C.V. (Prolamsa) in its final calculations.  *See* Maquilacero Final Calculation Memo at Attachment 1 (July 26, 2021) (P.R. 245; C.R. 381); IDM at 10-11; Prolamsa Final Results Calculation Memorandum at Attachment II (July 27, 2021) (P.R. 250; C.R. 391).

On August 2, 2021, plaintiff Nucor Tubular Products, Inc. (Nucor) submitted ministerial error allegations.  *See* Nucor Ministerial Error Comments (Aug. 2, 2021) (P.R. 253; C.R. 392). First, Nucor alleged that Commerce had inadvertently included Maquilacero's "pre-{period of review} window period sales for purposes of calculating a cost record for any products sold but not produced." *Id.* at 2.  Nucor alleged that "{i}t was not {Commerce's} intent to include all U.S. sales as demonstrated by {Commerce's} margin program, which limited the sales to the {period of review}," but the home market program included period "0" sales, which were sales from the window period *preceding* the period of review.  *Id.*

---

[1] Citations to the public record (P.R.R.) and confidential record (C.R.R.) refer to the record of the remand redetermination.  Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the administrative review.

Nucor also alleged that "Prolamsa's final calculations included certain inadvertent currency conversion errors that inappropriately lower the home market net price" because for the packing costs, Commerce "inadvertently failed to convert fields HMICC and HMPACK, reported in Mexican Pesos ('MXP'), to {U.S. dollars}." *Id.* at 6.  Nucor argued that Commerce should also correct the home market net price (HMNETPRI) so that it is on a consistent U.S. dollar basis, which required a correction to the calculation of the foreign unit price in dollars (FUPDOL).  *Id.* at 6-7.  Commerce determined that the allegations were untimely because the alleged ministerial errors were present in the preliminary results, and, thus, Commerce would not make changes to the final results.  *See* Ministerial Error Determination (Aug. 20, 2021) (P.R. 259); *see also* 19 U.S.C. § 1675(h) (ministerial errors are defined as "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial."); 19 C.F.R. § 351.224(f) (explaining that "{a} party to the proceeding to whom {Commerce} has disclosed calculations performed in connection with a preliminary determination may submit comments concerning a significant ministerial error in such calculations.").

## II.    The Court's Remand Order

On January 18, 2023, this Court held that the errors raised by Nucor with respect to Maquilacero and Prolamsa were ministerial in nature and remanded Commerce's determination to reconsider its decision.  *See Nucor*, 619 F. Supp. 3d at 1284-87.  First, with respect to the alleged errors in calculating Maquilacero's margin by including the "0" period in the U.S. home market sales, the Court held that it is "apparent" that "the errors alleged by Nucor more closely resemble arithmetic errors in a computer programming mistake (*i.e.*, unintentional errors)

3

because there is no evidence that Commerce deliberately chose to use zeros in its cost calculations that would support methodological or factual considerations outside the meaning of 'ministerial.'" *Id.* at 1285.  The Court also held that the allegation was timely because the errors only arose after Commerce completed its constructed cost calculations for normal value in the final results.  *Id.* at 1286.

Second, at oral argument, we requested a voluntary remand for Commerce to reconsider its rejection of Nucor's ministerial error allegation with respect to Prolamsa's currency calculations, which the Court granted.  *Id.* at 1286-87.

### III.  Commerce's Remand Results

On March 1, 2023, Commerce issued draft remand results to interested parties for comment.  *See* Draft Remand Determination (P.R.R. 3).  All parties timely commented.  *See* Prolamsa Cmnts. on Draft Remand Results (P.R.R. 6, C.R.R. 11); *Nucor Comments on Draft Remand Results* (P.R.R. 8, C.R.R. 12); Maquilacero Cmnts. on Draft Remand Results (P.R.R. 7).

On March 17, 2023, Commerce issued the remand results.  *See* Remand Results.  With respect to the error pertaining to Prolamsa, Commerce found that the alleged error was ministerial in nature, reanalyzed its calculations, and corrected the double-conversion currency error.  *Id.* at 4-8.

Turning to Maquilacero, Commerce determined that "the programming error described in Nucor's ministerial allegation constitutes a ministerial error because {it} did not intend to include pre-{period of review} window period sales in {its} full {period of review} averaging calculation (*i.e.*, covering only the four quarters contained within the {period of review})." *Id.* at 9.  Also, in Commerce's analysis of Maquilacero's data, it had "inadvertently included pre-{period of review} U.S. sales in determining the quarters for which costs would be needed;

however, {it} did not rely on pre-{period of review} U.S. sales in {its} margin calculations and thus did not intend to calculate costs for any pre-{period of review} sales." *Id.* Thus, Commerce revised its "programming language to limit the quarters under consideration to only those within the {period of review}." *Id.* at 10.

## ARGUMENT

### I. Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

### II. Commerce's Remand Results Comply With The Remand Order

Commerce has complied with the Court's remand instructions, which ordered it to "reconsider Nucor's ministerial error comments and respond accordingly." *Nucor*, 619 F. Supp. 3d at 1286. Maquilacero's arguments to the contrary are without merit, as we explain below.

#### A. Substantial Evidence Supports Commerce's Correction To Prolamsa's Currency Conversion, Which No Party Contests

Commerce determined that the currency conversion errors that Nucor had alleged for Prolamsa were ministerial errors and acknowledged that it had inadvertently "made changes to the SAS margin program after the preliminary results to disregard a certain section of

programming language in the SAS margin program," which had "inadvertently failed to convert HMPACK from Mexican pesos (MXP) to USD correctly." Remand Results at 6. Also, "the HMNETPRI variable, with the exception of HMPACK, was already stated in USD as a result of the programming language changes made after the *Preliminary Results*." *Id.* at 7.

To correct these errors, Commerce "removed the double conversion of the HMPACK and LOTADJMT variables into USD for Prolamsa's margin calculation." *Id.* at 8. No party contests this currency conversion correction in the remand results, and the Court should sustain this issue because it is supported by substantial evidence and in accordance with law. *See id.* at 4-8; Maquilacero Cmts.; *MacLean-Fogg*, 100 F. Supp. 3d at 1355; *Nucor*, 619 F. Supp. 3d at 1286-87.

### B. Substantial Evidence Supports Commerce's Adjustments To Maquilacero's Quarterly Cost Methodology

The Court should sustain Commerce's remand results with respect to the Maquilacero issue because it complies with the remand order. *See Nucor*, 619 F. Supp. 3d at 1285-86. In its remand results, Commerce, consistent with the remand order, found that the programming error described in Nucor's ministerial allegation constituted a ministerial error because Commerce did not intend to include pre-period of review window sales in its full period of review averaging calculation, but had inadvertently done so in its final margin calculation, and therefore had inadvertently created a computer programming error. *See* Remand Results at 9, 13. Commerce then revised the programming language to limit the period of review quarters under consideration. *Id.* at 10.

Pursuant to 19 C.F.R. § 351.224(f), and in accordance with the remand order, Commerce determined that the error Nucor alleged with respect to Maquilacero was a ministerial error, specifically an unintentional computer programming error, because Commerce did not intend to

include pre-period of review sales in its averaging calculation. Remand Results at 9. Due to the programming error, Commerce inadvertently included pre-period of review costs in its calculations, which were assigned a zero value, that resulted in an undervaluing of the total cost of manufacturing. *Id.* Moreover, on remand, Commerce determined that the allegation of this error was timely because the error became apparent only in the final results. *Id.* at 13.

Specifically, Commerce explained that it relied on two SAS programs to calculate Maquilacero's final dumping margin, the comparison market program and margin program. *Id.* at 14. In the preliminary results, Commerce removed the pre-period of review sales from the *margin program* but inadvertently failed to remove the pre-period of review sales from the *comparison market program*. *Id.* at 14-15 (further explaining the mechanics of the programs and how the pre-period of review sales are tied to pre-period of review costs). This caused pre-period of review costs to be used in the cost recovery test, which, while a minor oversight, runs counter to Commerce's current practice of its "quarterly cost methodology." *See id.*

Moreover, Commerce, in the final results, had attempted to address the initial error present in the preliminary results (*i.e.*, the assigning of sequential numbers for pre-period of review costs) by assigning these same costs a "zero" in order to exclude these costs from the programs' analysis. *See id.* at 15. However, this attempt to remedy the error created a new separate and distinct error because the effect of the "zero" still resulted in inaccurate costs which were then used as part of the cost recovery test. *See id.* ("Therefore, the SAS comparison market program created unnecessary cost data in that it calculated costs for a pre-{period of review} time period (*i.e.*, quarter 0), and it also incorrectly calculated Commerce's cost recovery test by including the pre-{period of review} cost data (*i.e.*, quarter 0) which resulted in an undervaluing of the total cost of manufacturing used in the cost recovery test."). Therefore, on remand, to fix

this programming error, Commerce removed pre-period of review sales (and, importantly, the corresponding costs) from the comparison market program, which, through the sequential progression of the program, correctly removed pre-period of review costs from the cost recovery test, in line with Commerce's established practice. *Id.* at 15-16; *id.* at 16 ("Commerce *intended* to exclude pre-{period of review} costs by its exclusion of pre-{period of review} U.S. sales in the SAS margin program.") (emphasis added).

Maquilacero argues that Commerce "acted under the misunderstanding that it was required by this Court to correct the ministerial error . . . and recalculate the dumping margin." Maquilacero Cmts. at 2. While the Court did not explicitly *direct* Commerce to recalculate Maquilacero's margin, *Nucor*, 619 F. Supp. 3d at 1285-86, we disagree with Maquilacero's assertion that Commerce did not "correctly" comply with the remand order, when Commerce determined both that the error was ministerial and it was necessary to, thus, recalculate Maquilacero's margin. *See* Maquilacero Cmts. at 6. Indeed, Commerce explained in the remand results that it understood the Court remanded this issue to reconsider whether the error was ministerial in nature and, then, whether it required correction. *See* Remand Results at 4 ("{W}e have *reconsidered* the ministerial error allegations…"), 9 ("Commerce has *considered whether* the error raised . . . was a ministerial error and *whether* Maquilacero's quarterly cost methodology required correction.") (emphasis added).

Maquilacero next argues that Commerce failed to remove the pre-period of review sales from the comparison market program, which Maquilacero argues is an error that was present in the preliminary results. Maquilacero Cmts. at 4. Maquilacero contends that the real issue here is not the selection of sequential numbers or zeros as the cost value, but rather the failure of Commerce to exclude pre-period of review sales from *both* programs, which was discoverable

8

before the final results.  *Id.*  However, Maquilacero misunderstands the nature of the error which Commerce sought to remedy in the remand results.

Maquilacero simply cannot separate the programming error into two parts, *i.e.*, the numerical value assigned to pre-period of review costs and the inclusion of pre-period of review sales, because the inclusion of pre-period of review *sales* is inherently tied to the inclusion of pre-period of review *costs*.  *See* Remand Results at 15 ("Because the SAS comparison market program was based on a universe of U.S. sales that included sales made prior to the {period of review}, it incorrectly created a corresponding pre-{period of review} cost record to assign to these sales.").  Thus, there were *two* separate errors in the preliminary results and the final results: the inclusion of pre-period of review sales with pre-period of review costs assigned a sequential number, and the inclusion of pre-period of review sales with pre-period of review costs assigned a zero, respectively.  *Id.*; *id.* at 9 ("Due to an inadvertent programming error, the costs associated with the pre-{period of review} quarters were incorrectly assigned a zero value.").

Maquilacero incorrectly attempts to simplify the error in stating that the only part Commerce should focus on is the inclusion of pre-period of review sales when the error actually consists of the inclusion of pre-period of review sales *and thus* the inclusion of pre-period of review costs (to which Commerce assigned two different values in the preliminary and final results).  *See* Maquilacero Cmts. at 4.  However, contrary to Maquilacero's assertions, Nucor timely raised a separate and distinct ministerial error after the final results, which Commerce remedied on remand in line with its quarterly cost methodology, because it was Commerce's intent to *not* include pre-period of review sales in the comparison market and margin programs.  *See generally* Remand Results at 13-17, *id.* at 17 (explaining that it "examined the record and

9

concluded that the error was not in line with {its} intended results or with Commerce's quarterly cost methodology.").

Nonetheless, Maquilacero argues that Commerce is being too lenient and not strictly applying the regulations, which state that comments concerning ministerial errors made in the preliminary results should be included in a parties' case brief. *See* Maquilacero Cmts. at 7 (*citing* 19 C.F.R. § 351.224(c)(1)). But this situation is distinguishable from the cases Maquilacero cites, *id.* at 8, because the issue in this case was *not* present in the preliminary results. *See* Remand Results at 13-17. Again, Maquilacero's argument is predicated on Maquilacero's oversimplification of Commerce's calculation and its belief that the issues can be separated, thus requiring Commerce to apply the rule in 19 C.F.R. § 351.224(c)(1). *See* Maquilacero Cmts. at 7-8.

However, as noted above, there were two distinct issues: one in the preliminary results, and one in the final results. *See* Remand Results at 13-17. The fact that *part* of the programming error was similar in both results does not render the issue one and the same. Therefore, substantial evidence supports both Commerce's determination that Nucor's ministerial error allegation was timely and Commerce's correction to the quarterly cost methodology. *See id.*

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

10

|  |  |
|---|---|
|  | PATRICIA M. MCCARTHY<br>Director |
|  | /s/Tara K. Hogan<br>TARA K. HOGAN<br>Assistant Director |
| OF COUNSEL:<br>AYAT MUJAIS<br>Attorney<br>Office of the Chief Counsel<br>  for Trade Enforcement and Compliance<br>U.S. Department of Commerce | /s/Kara M. Westercamp<br>KARA M. WESTERCAMP<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Tel: (202) 305-7571<br>Email:<br>kara.m.westercamp@usdoj.gov |
| May 25, 2023 | Attorneys for Defendant |

## THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NUCOR TUBULAR PRODUCTS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | Court No. 21-00543 |
| ) | |
| and ) | |
| ) | |
| PRODUCTOS LAMINADOS DE MONTERREY ) | |
| S.A. DE C.V., PROLAMSA, INC., AND ) | |
| MAQUILACERO S.A. DE C.V., ) | |
| ) | |
| Defendant-Intervenors. ) | |

## **ORDER**

Upon consideration of defendant-intervenor's comments regarding the Department of Commerce's final results of redetermination pursuant to remand, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety and judgment is entered in favor of the United States.

_____
Judge

Dated: _____
      New York, New York

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 2,713 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

/s/Kara M. Westercamp